IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HUMAN GENOME SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 07-780 (***) |
| AMGEN, INC. and IMMUNEX CORP., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**DECLARATION OF CHAD S.C. STOVER, ESQ.
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT WITH
PREJUDICE PURSUANT TO RULE 12(b)(1) FOR LACK OF SUBJECT MATTER
JURISDICTION AND RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM**

I, Chad S.C. Stover, declare as follows:

1.    I am an attorney with Young Conaway Stargatt & Taylor, LLP, counsel for Defendants Amgen, Inc. and Immunex Corp. I make this declaration in support of Defendants' Opening Brief in support of their Motion to Dismiss Complaint With Prejudice Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction and Rule 12(b)(6) for Failure to State a Claim.

2.    Attached hereto as Exhibit A is a true and correct copy of the Board of Patent Appeals and Interferences' ("Board's") "Order-Rule 123(a) Times for substantive motions; priority deferred" in Interference No. 105,240, Paper 4.

3.    Attached hereto as Exhibit B is a true and correct copy of the "Order-Priority Times" in Interference No. 105,240, Paper 134.

4.    Attached hereto as Exhibit C is a true and correct copy of Decision on Substantive Motions in Interference No. 105,240, Paper 133.

5.    Attached hereto as Exhibit D is a true and correct copy of "Redeclaration—Bd. R. 203(c)" in Interference No. 105,240, Paper 135.

6.    Attached hereto as Exhibit E is a true and correct copy of HGS' paper entitled "Party Ni's Request for Adverse Judgment to Initiate Review under 35 U.S.C. § 146" in Interference No. 105,240, Paper 138.

7.    Attached hereto as Exhibit F is a true and correct copy of the Board's "Order-Miscellaneous-Bd. R. 104(a)" in Interference No. 105,240, Paper 139.

8.    Attached hereto as Exhibit G is a true and correct copy of HGS' paper entitled "HGS'S Response to Paper 139," in Interference No. 105,240, Paper 140.

9.    Attached hereto as Exhibit H is a true and correct copy of the Board's "Judgment—Order to Show Cause" in Interference No. 105,240, Paper 141.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed this 16th day of January, 2008, at Wilmington, Delaware.

Chad S.C. Stover

## CERTIFICATE OF SERVICE

I, Chad S.C. Stover, Esquire, hereby certify that on January 16, 2008, I caused to be

electronically filed a true and correct copy of Declaration of Chad S. C. Stover, Esq. In Support

of Defendants' Motion to Dismiss Complaint With Prejudice Pursuant to Rule 12(b)(1) for Lack

of Subject Matter Jurisdiction and Rule 12(b)(6) for Failure to State a Claim with the Clerk of

the Court using CM/ECF, which will send notification that such filing is available for viewing

and downloading to the following counsel of record:

John G. Day
Steven J. Balick
Lauren E. Maguire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

I further certify that on January 16, 2008, I caused a copy of the foregoing

document to be served by hand delivery on the above-listed counsel of record and on the

following non-registered participants in the manner indicated.

## BY E-MAIL (by agreement of counsel):

Richard L. DeLucia
John R. Kenny
A. Antony Pfeffer
Kenyon & Kenyon LLP
One Broadway
New York, NY  10004-1007

Chad S.C. Stover (No. 4919)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE  19801
(302) 571-5018
cstover@ycst.com

# EXHIBIT A

Paper 4

Filed by: Richard E. Schafer
Administrative Patent Judge
Mail Stop Interference
P.O. Box 1450
Alexandria Va 22313-1450
Tel: 571-272-9797
Fax: 571-273-0042

Filed
August 31, 2005

## UNITED STATES PATENT AND TRADEMARK OFFICE

## BEFORE THE BOARD OF PATENT APPEALS
## AND INTERFERENCES
(Administrative Patent Judge Richard E. Schafer)

Human Genome Sciences, Inc.
Junior Party
(Patent 6,872,568;
Inventors: Jian Ni, Reiner L. Gentz, Guo-Liang Yu, Craig A. Rosen),

v.

Immunex Corp.
Senior Party
(Application 09/378,045;
Inventors: Charles Rauch, Henning Walczak).

**\*MAILED\***

**AUG 3 1 2005**

PAT. & T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

Patent Interference No. 105,240 (RES)

## ORDER - RULE 123(a)
### (Times for substantive motions; priority deferred)

### A. Time periods associated with motions

The TIME PERIODS described below are set out in an Appendix to this ORDER. Action specified for each TIME PERIOD must be completed by the date specified for the TIME PERIOD.

The parties are authorized to stipulate different times (earlier or later, but not later than TIME PERIOD 7) for TIME PERIODS 1 through 6.[1] A notice of the stipulation must be promptly filed.

---

[1] In stipulating different times, the parties should consider the effect of the stipulation on times (1) to object to evidence (5 business days, Bd. R. 155(b)(1)), (2) to supplement evidence (10 business days, Bd. R. 155(b)(2)), (3) to begin cross examination (no earlier than 21 days after service, SO ¶ 22.1.1) and (4) to conclude cross examination (at least 10 days

The notice must be in the form of a photocopy of the Appendix attached to this ORDER with old dates crossed out and new dates inserted by hand. <u>The parties may not stipulate an extension of TIME PERIODS 7 or 8</u>.

    **1.**    **TIME PERIOD 1**

        a.    File and serve all authorized motions and

        b.    Serve <u>but do not file</u> evidence in support of these motions.

If no party files a motion, arrange a conference call to the administrative patent judge so that appropriate adjustments to the schedule may be made.

    **2.**    **TIME PERIOD 2**

        a.    File and serve responsive motions (Bd. R. 121(a)(2)) in response to an opponent's motion filed during TIME PERIOD 1 and

        b.    Serve <u>but do not file</u> evidence in support of these responsive motions.

    **3.**    **TIME PERIOD 3**

        a.    File and serve oppositions to all motions, including responsive motions and

        b.    Serve <u>but do not file</u> evidence in support of these oppositions.

    **4.**    **TIME PERIOD 4**

        a.    File and serve replies to all oppositions and

        b.    Serve <u>but do not file</u> evidence in support of these replies.

    **5.**    **TIME PERIOD 5**

        a.    File and serve any request for oral argument on motions,

        b.    File and serve motions to exclude evidence (Bd. R. 155(c); SO ¶ 21.3), and

        c.    File and serve observations on cross examination (SO ¶ 22.7) of reply testimony.

---

before opposition or reply is due, SO ¶ 22.1.2).

6. **TIME PERIOD 6**

    a.    File and serve oppositions to an opponent's motion to exclude evidence and

    b.    File and serve any response to observations.

7. **TIME PERIOD 7**

    File and serve replies to oppositions to motions to exclude evidence.

**B. Deposition transcripts**

Transcripts of cross examinations and depositions taken under 35 U.S.C. § 24 must be served, but not filed, until the exhibits are filed.

**C. Serving exhibits relied upon in motions**

An exhibit, including an affidavit, cited in connection with a motion, opposition, reply, or affidavit, must be served, but not filed,[2] with the motion, opposition, reply or affidavit in which the exhibit is first mentioned.

**D.    TIME PERIOD 8:  Filing the record for decision on motions**

1.    File an original set of your exhibits and one working copy (or three copies if an oral argument is set) of your exhibits;

2.    For each of your motions, file one folder (or three folders if an oral argument is set each) containing:

    a.    The motion,

    b.    Any corresponding opposition,

    c.    Any corresponding reply,

    d.    Any corresponding observations, and

    e.    Any corresponding response to the observations.

3.    File any ZIP® 100 Mb disk or CD-ROM a party elects to file.

**E. Priority statements**

1.    At TIME PERIOD 1:

---

[2] Except when the Board sets an expedited schedule for a particular motion, in which case, all exhibits mentioned in that motion or the corresponding opposition or reply must be filed with the motion, opposition, reply, or affidavit in which the exhibit is first mentioned.

a.  File but do not serve a priority statement (Bd. R. 120; Bd. R. 204(a)).

b.  File and serve a notice advising each opponent of the filing of the priority statement.

2.  A junior party who does not file a priority statement shall not have access to the priority statement of any other party.

3.  **Within one (1) week** after TIME PERIOD 1, serve a copy of the priority statement upon each opponent who served a notice under ¶ G.1.b above.


/ss/ Richard E. Schafer
RICHARD E. SCHAFER
Administrative Patent Judge


Date: _____
Arlington, VA


cc (via Federal Express):

Attorney for Human Genome Sciences:

STERNE KESSLER GOLDSTEIN & FOX PLLC
1100 New York Avenue
Suite 600
Washington, DC 20005-3934

Tel:  202-371-2600
Fax:  202-371-2540

Attorney for Immunex:

IMMUNEX CORPORATION
Law Department
1201 Amgen Court West
Seattle, WA 98119

Tel:  206-265-7000

### Appendix--ORDER - RULE 123(a)
### (Times for substantive motions; priority deferred)

Interference 105,361 (RES)

TIME PERIOD 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **December 7, 2005**
    File motions
    File (but serve one week later) priority statements

TIME PERIOD 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **January 4, 2006**
    File responsive motions to motions
    filed in TIME PERIOD 1

TIME PERIOD 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **February 8, 2006**
    File oppositions to all motions

TIME PERIOD 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **March 22, 2006**
    File all replies

TIME PERIOD 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **May 3, 2006**
    File request for oral argument
    File motions to exclude
    File observations

TIME PERIOD 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **May 24, 2006**
    File oppositions to motions to exclude
    File response to observations

TIME PERIOD 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **June 7, 2006**
    File replies to oppositions to motions to exclude

TIME PERIOD 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **June 14, 2006**
    File exhibits
    File sets of motions
    File any ZIP® disks or CD-ROMs

# EXHIBIT B

Paper 134

Filed: July 27, 2007

Mail Stop Interference
P.O. Box 1450
Alexandria , VA 22313-1450
Tel: 571-272-9797
Fax: 571-273-0042

## UNITED STATES PATENT AND TRADEMARK OFFICE

-----

## BEFORE THE BOARD OF PATENT APPEALS
## AND INTERFERENCES
(Administrative Patent Judge Richard E. Schafer)

-----

Human Genome Sciences, Inc.
Junior Party
(Patent 6,872,568;
Inventors: Jian Ni, Reiner L. Gentz, Guo-Liang Yu, Craig A. Rosen),

v.

Immunex Corp.
Senior Party
(Application 09/378,045;
Inventors: Charles Rauch, Henning Walczak).

-----

Patent Interference No. 105,240 (RES)

-----

**FAXED**

JUL 2 7 2007

U.S. PATENT AND TRADEMARK OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

**Order - Priority Times - Bd.R. 104(c)**

**A.    Conference Call**

A conference call to discuss priority matters is scheduled for **August 24, 2007 at 4:00 p.m.** (PTO time). The call will be placed by the PTO.

**B.    Time periods associated with priority**

The TIME PERIODS described below are set out in an Appendix to this ORDER. Action specified for each TIME PERIOD must be completed by the date specified for the TIME PERIOD.

The parties are authorized to stipulate different times (earlier or later, but not later than TIME PERIOD 17) for TIME PERIODS 11 through 16.[1] A notice of the stipulation must be promptly filed. The notice must be in the form of a photocopy of the Appendix attached to this ORDER with old dates crossed out and new dates inserted by hand. The parties may not stipulate an extension of TIME PERIODS 17-19.

### 1.    TIME PERIOD 11

The junior party must:

       a.    File and serve a motion on priority and

       b.    Serve but not file evidence in support of the junior party priority case.

If the junior party does not file a priority motion, the junior party must arrange a conference call to the administrative patent judge so that appropriate action may be taken.

### 2.    TIME PERIOD 12

The senior party must:

       a.    File and serve a motion on priority and

---

[1] In stipulating different times, the parties should consider the effect of the stipulation on times (1) to object to evidence (5 business days, Bd.R. 155(b)(1)), (2) to supplement evidence (10 business days, Bd.R. 155(b)(1)), (3) to begin cross-examination (no earlier than 21 days after service, SO ¶ 157.3.1) and (4) to conclude cross examination (at least 10 days before opposition or reply is due, SO ¶157.3.2).

      b.     Serve <u>but not file</u> evidence in support of the senior party priority case.

### 3.    TIME PERIOD 13

      a.     File and serve oppositions to all priority motions and

      b.     Serve <u>but do not file</u> evidence in support of these oppositions.

### 4.    TIME PERIOD 14

      a.     File and serve replies to all oppositions and

      b.     Serve <u>but do not file</u> evidence in support of these replies.

### 5.    TIME PERIOD 15

      a.     File and serve any request for oral argument on priority,

      b.     File and serve motions to exclude evidence (Bd.R. 155(c); SO ¶ 155.2),

      c.     File and serve observations on cross examination (SO ¶ 157.7) of reply testimony, and

      d.     File and serve a list of any issues other than priority that should be considered in rendering a final decision in the interference.[2]

### 6.    TIME PERIOD 16

      a.     File and serve oppositions to an opponent's motion to exclude evidence and

      b.     File and serve any response to observations.

### 7.    TIME PERIOD 17

File and serve replies to oppositions to motions to exclude evidence.

---

[2] There is no need to list an issue previously resolved by a decision entered by a panel of at least three administrative patent judges inasmuch as these decisions merge with the judgment when a final decision is entered.

**C.    Deposition transcripts**

Transcripts of cross examinations and depositions taken under 35 U.S.C.

§ 24 must be served, but not filed until the exhibits are filed.

**D.    Serving priority exhibits**

An exhibit, including an affidavit, relied upon in connection with priority

must be served <u>but not filed</u> with the motion, opposition, reply or affidavit in which

the exhibit is first mentioned.

**F.    TIME PERIOD 18:  Filing the priority record**

    1.    File original set of your exhibits and one copy of your exhibits;

    2.    For your priority motion, file one folder (three folders if an oral

        argument is set each) containing a set of motion documents

        consisting of:

        a.    The priority motion,

        b.    Any corresponding opposition,

        c.    Any corresponding reply,

        d.    Any corresponding observations, and

        e.    Any corresponding response to the observations.

    3.    File any CD-ROM.

**G.    TIME PERIOD 19: Default oral argument date**

If a request for oral argument (Bd.R. 124(a); TIME PERIOD 15) is granted,

the default date for such oral argument is TIME PERIOD 19.  No oral argument

will occur if either no oral argument is requested or granted.

cc (via FAX):

Counsel for HUMAN GENOME
SCIENCES, INC:
    Jorge A. Goldstein, Esq.
    STERNE, KESSLER,
     GOLDSTEIN & FOX PLLC
    1100 New York Avenue, N.W.
    Washington, D.C. 20005-3934
       Tel: 202-371-2600
      Fax: 202-371-2540

Counsel for IMMUNEX
CORPORATION:

    Michael J. Wise, Esq.
    PERKINS COIE LLP
    1620 26 Street, 6 Floor,
    South Tower
    Santa Monica, CA 90404-4013
      Tel: 310-788-3210
      Fax: 310-788-3399

Revised 6 November 2006

## Appendix--ORDER - RULE 123(a)
### (Times for priority motions)

Interference 105,240 (RES)

TIME PERIOD 11 ............................................................................**October 5, 2007**
    <u>Junior party only</u> file priority motion and serve
    (but do not file) priority evidence

TIME PERIOD 12 .........................................................................**November 16, 2007**
    <u>Senior party only</u> file priority motion and serve
    (but do not file) priority evidence

TIME PERIOD 13 ............................................................................ **January 7, 2008**
    File opposition to priority motions
    Serve (but do not file) opposition evidence

TIME PERIOD 14 .......................................................................... **February 18, 2008**
    File reply
    Serve (but do not file) reply evidence

TIME PERIOD 15 ............................................................................**March 31, 2008**
    Request oral argument
        File list of issues to be considered
        File observations
        File motion to exclude

TIME PERIOD 16 ............................................................................ **April 21, 2008**
    File response to observations
    File opposition to motion to exclude

TIME PERIOD 17 ..............................................................................**May 5, 2008**
    File reply to opposition to motion to exclude

TIME PERIOD 18 ............................................................................**May 12, 2008**
    File and serve exhibits
    File sets of priority motions
    File CD-ROMs

TIME PERIOD 19 ............................................................................**June 9, 2008**
    Default oral argument date (if ordered)

# EXHIBIT C

The opinion in support of the decision being
entered today is *not* binding precedent of the Board.

Paper 133

By:    Trial Section Merits Panel
       Board of Patent Appeals and Interferences          Filed:  July 26, 2007
       Mail Stop Interference
       P.O. Box 1450
       Alexandria, VA 22313-1450
       Tel:    571-272-9797
       Fax:    571-273-0042


## UNITED STATES PATENT AND TRADEMARK OFFICE


## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

(Administrative Patent Judge Richard E. Schafer)

MAILED

[JUL 2 6 2007

PAT. & T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

### Human Genome Sciences, Inc.
Junior Party
(Patent 6,872,568;
Inventors:  Jian Ni, Reiner L. Gentz, Guo-Liang Yu and Craig A. Rosen),

v.

### Immunex Corp.
Senior Party,
(Application 09/378,045;
Inventors:  Charles Rauch and Henning Walczak).


Patent Interference 105,240 (RES)


Before:  SCHAFER, HANLON and SPIEGEL, *Administrative Patent Judges.*

SPIEGEL, *Administrative Patent Judge.*


## DECISION - MOTIONS - Bd.R. 125(a)

1    **I.    Introduction**

2         This is a decision on the motions remaining in interference 105,240.

3    Junior party Ni has filed seven motions, three of which have been previously

4    decided.[1]  Senior party Rauch has filed eight motions, one of which has been

5    previously decided.[2]

6         Ni motion 3 for benefit is **dismissed** as to Ni proposed count 2 and

7    otherwise **denied**.  Ni motion 4 to substitute the count is **denied**.  Ni motion 6 for

8    benefit as to Rauch proposed counts 1 and 2 is **dismissed**.  Ni motion 7 to

9    exclude evidence is **denied**.

10        Rauch motion 2 to substitute the count and add a second count is **denied**.

11   Rauch motion 3 for benefit is **dismissed** as to Rauch proposed count 1 and

12   otherwise **granted**.  Rauch motion 4 to add claims to its involved application is

13   **denied**.  Rauch motion 5 to designate Ni '568 patent claims 7, 20, 33 and 46 as

14   corresponding to Count 1 is **denied**.  Rauch motion 6 that all of Ni's involved

15   claims are unpatentable over the prior art is **denied**.  Rauch motion 7 to exclude

16   evidence is **denied**.

17   **II.    Findings of Fact (FF)**

18        The following findings of fact are supported by a preponderance of the

19   evidence.

---

[1] Ni motion 1 (Paper 26) to synchronize time periods in interferences 105,240 and 105,361 has already been granted (Paper 34).  Ni motion 2 (Paper 32) requesting additional discovery has already been denied (Papers 59 and 78).  Ni motion 5 (Paper 42) to hold all of Rauch's involved claims unpatentable under 35 U.S.C. § 102(e) over U.S. Patent 6,872,568 or under § 102(e)/103 over U.S. Patent 6,872,568 in view of secondary references has already been denied (Papers 65 and 96).
[2] Rauch motion 1 (Paper 28) to synchronize time periods in interferences 105,240, 105,380 and 105,381 has already been denied (Paper 35).

1   [1]   The junior party is Jian NI, Reiner L. GENTZ, Guo-Liang YU and Craig A.

2       ROSEN ("**Ni**").

3   [2]   Ni is involved in the interference on the basis of U.S. Patent 6,872,568

4       ("the '568 patent," NX 2004), granted 29 March 2005, based on

5       application 09/565,009, filed 4 May 2000.

6   [3]   Ni's real party-in-interest is Human Genome Sciences, Inc. ("HGS").

7   [4]   The senior party is Charles RAUCH and Henning WALCZAK ("**Rauch**").

8   [5]   Rauch is involved on the basis of application 09/378,045 ("the '045

9       application," RX 1004), filed 20 August 1999.

10   [6]   Rauch's real party-in-interest is Immunex Corp. ("Immunex").

11   [7]   The subject matter of the interference is defined by one count.

12   [8]   Count 1 is "Claim 21 of Ni U.S. Patent 6,872,568 or Claim 84 of Rauch

13       Application 09/378,045" (Paper 1, p. 3).

14   [9]   Claim 21 of the '568 patent, written in independent form, reads:

15             An isolated monoclonal antibody or fragment thereof
16             that specifically binds to a protein consisting of amino
17             acid residues 1 to 133 of SEQ ID NO:2, wherein said
18             antibody or fragment thereof is an antagonist of the
19             protein of SEQ ID NO:2.

20   [10]   According to the '568 patent, SEQ ID NO:1 and SEQ ID NO:2 are the

21       nucleotide and deduced amino acid sequences, respectively, of a human

22       Death Domain Containing Receptor 5 polypeptide ("DR5") (NX 2004, col.

23       4, ll. 53-54).

24   [11]   Amino acid residues 1 to 133 of SEQ ID NO:2 are said to represent the

25       extracellular domain ("ECD") of DR5 (NX 2004, col. 4, ll. 57-60).

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 5 of 74

Interference No. 105,240                                    Page 4
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)    Paper 133

1   [12]   Further according to the '568 patent, DR5 is said to bind TRAIL (NX 2004,

2          col. 6, ll. 60-61).

3   [13]   TRAIL (**T**NF-**R**elated **A**poptosis-**I**nducing **L**igand) is a member of the

4          tumor necrosis factor ("TNF") ligand family known to be capable of

5          inducing apoptosis[3] when added to certain cells, e.g., Jurkat cells (NX

6          2096[4]).

7   [14]   The '568 patent defines antibodies which inhibit DR5 activities as DR5

8          antagonists (NX 2004, col. 79, ll. 53-56).

9   [15]   Claim 84 of the '045 application, written in independent form, reads:

10                 A composition comprising a plurality of isolated
11                 antibodies or antigen-binding fragments thereof;
12                 wherein each of said antibodies or antigen-binding
13                 fragments of said plurality specifically binds to an
14                 isolated and purified human TRAIL-R receptor
15                 protein, wherein said isolated and purified human
16                 TRAIL-R receptor protein is a product made by the
17                 process comprising the steps of:

18                 (a)    isolating plasma membranes from Jurkat cells;

19                 (b)    solubilizing and homogenizing said isolated
20                        plasma membranes of step (a);

21                 (c)    centrifuging said solubilized and homogenized
22                        isolated plasma membranes of step (b) to yield
23                        a plasma membrane extract and a pellet;

24                 (d)    applying said plasma membrane extract of step
25                        (c) to an anti-ocatapeptide monoclonal
26                        antibody affinity chromatography column,
27                        whereby said column of step (d) adsorbs non-
28                        specifically bound material and wherein said

---

[3] Apoptosis refers to a programmed cell death, i.e., a cell, in response to specific physiological or developmental signals undergoes a regulated series of events that will lead to its death and removal from an organism.
[4] Wiley et al., "Identification and Characterization of a New Member of the TNF Family that Induces Apoptosis," *Immunity*, Vol. 3, pp. 673-682 (December 1995) (NX 2096).

1         octapeptide has the sequence presented in
2         SEQ ID NO:5;

3    (e)  applying column flow-through from step (d) to
4         an octapeptide-TRAIL ligand affinity
5         chromatography column, whereby said column
6         of step (e) specifically binds said TRAIL-R
7         receptor protein and wherein said octapeptide-
8         TRAIL ligand is a fusion protein of said
9         octapeptide having the sequence presented in
10        SEQ ID NO:5 and TRAIL ligand;

11   (f)  eluting fractions with TRAIL ligand binding
12        activity from said column of step (e); and

13   (g)  purifying said fractions of step (f) by reverse-
14        phase HPLC to yield said isolated and purified
15        TRAIL-R receptor protein, wherein said
16        isolated and purified TRAIL-R receptor protein
17        has a molecular weight of about 50 to 55
18        kilodaltons as determined by SDS
19        polyacrylamide gel electrophoresis, and
20        comprises the amino acid sequence
21        VPANEGD (amino acids 327-333 of SEQ ID
22        NO:2),

23        wherein said antibodies or antigen-binding fragments
24        specifically bind to membranes of Jurkat cells and
25        also block binding of TRAIL ligand to said TRAIL-R
26        receptor protein.

27   [16]  The protein referred to as "TRAIL-R" in the '045 application is also referred

28        to as TRAIL-R2, TR-2, Apo-2, TRICK2, KILLER or DR5 in the art and will

29        be referred to as "TRAIL-R2" in this decision.

30   [17]  TRAIL-R2 and DR5 are isoforms of the same protein.[5]

---

[5] Wang et al., "Coordinated regulation of two TRAIL-R2/KILLER/DR5 mRNA isoforms by DNA
damaging agents, serum and 17ß-estradiol in human breast cancer cells," *Breast Cancer
Research and Treatment*, Vol. 61, pp. 87-96 (2000) (copy enclosed). Isoforms are variants of the
same protein between various tissues, developmental stages, etc. with some small differences,
usually a splice variant or the product of some posttranslational modification). TRAIL-R2 is the
440 amino acid "long" isoform; DR5 is the 411 amino acid "short" isoform.

1    [18]    Thus, the subject of Count 1 encompasses (a) not only isolated

2            monoclonal antibodies or fragments thereof which specifically bind to the

3            ECD of DR5 and antagonize DR5 activity, (b) but also compositions of

4            isolated antibodies or fragments thereof which specifically bind to the

5            membranes of Jurkat cells and simply block the binding of TRAIL to

6            TRAIL-R2.

7    [19]    The claims of the parties are:

8                    Ni              1-52
9                    Rauch           82-94, 100-103, 105-117

10   [20]    The claims of the parties which correspond to Count 1 are:

11                   Ni              1-6, 8-19, 21-32, 34-45, 47-52
12                   Rauch           82-94, 100-103, 105-117

13   [21]    The claims of the parties which do not correspond to Count 1, and

14           therefore are not involved in the interference, are:

15                   Ni              7, 20, 33, 46
16                   Rauch           none

17           Other findings of fact follow below.

18   **III.    Ni Motion 4**

19           Pursuant to 37 CFR § 41.121(a)(1)(i), Ni moves to redefine the scope of

20   the interference by substituting Ni proposed count 2 for current Count 1 (Paper

21   41).  Rauch opposes (Paper 74); Ni replies (Paper 82).

22   [22]    Ni proposed count 2 reads (Paper 41, p. 1, ¶1):

23                   An isolated antibody or fragment thereof that
24                   specifically binds to a protein consisting of amino acid
25                   residues 1 to 133 of SEQ ID NO:2, wherein said
26                   antibody or fragment thereof is an antagonist of the
27                   protein of SEQ ID NO:2,

1          or

2          Claim 84 of Rauch Application 09/378,045.

3          It is our understanding that the source of SEQ ID NO:2 in Ni proposed

4    count 2 is Ni's involved '568 patent. With this understanding, we now address Ni

5    motion 4. According to Ni, its proposed count 2 simply incorporates Ni claims 15

6    and 21, as does the current count, and deletes the limitation that the antibody is

7    "monoclonal" (Paper 41, p. 1, ¶1). Ni argues that its best proofs of conception of

8    the subject matter of Count 1 do not specifically refer to "monoclonal" antibodies

9    (*id.*, p. 3, ¶¶2-3).

10         A party seeking to change the count in an interference must demonstrate

11    a genuine need to change the count. As stated in *Louis v. Okada*, 59 USPQ2d

12    1073, 1076 (Bd. Pat. App. & Int. 2001),

13              [a]t a minimum, . . . a preliminary motion to broaden
14              out the count on the basis that a party's best or
15              earliest proofs are outside the current count (1)
16              should make a proffer of the party's best proofs, (2)
17              show that such best proofs do indeed lie outside of
18              the scope of the current count, and (3) further show
19              that the proposed new count is not excessively broad
20              with respect to what a party needs for its best proofs.

21         Ni seeks to change Count 1 by deleting the limitation that the antibody is

22    "monoclonal" because "[[t]he phrase 'monoclonal antibodies' is not used

23    specifically in reference to the subject matter of the count by any one of Party

24    Ni's best proofs" (Paper 41, p. 3, ¶3).

25         Ni has not demonstrated a genuine need to change the count. Ni stated

26    that its best proofs do not show a "monoclonal" antibody. However, Ni has not

27    proffered what its best proofs and/or other evidence will show, e.g., Ni has not

1   alleged that they will show an embodiment within the scope of Ni proposed count

2   2.  Without knowing what Ni's best proofs and/or other evidence are alleged to

3   show, there is an insufficient basis to determine whether a genuine need to

4   change the count exists or to give Rauch a fair opportunity to address the need

5   for a substitute count as proposed by Ni.

6        "The party filing the motion has the burden of proof to establish that it is

7   entitled to the requested relief."  37 CFR § 41.121(b).  Ni has not satisfied its

8   burden here.  Therefore, based on the foregoing, Ni motion 4 is **denied**.

9   **IV.    Ni Motion 3**

10       Pursuant to 37 CFR § 41.121(a)(1)(ii), Ni moves to be accorded benefit of

11  the filing dates of six certain priority applications for the subject matter of Count 1

12  and, contingent upon the granting of Ni motion 4, for the subject matter of Ni

13  proposed count 2 (Paper 40).  Rauch opposes (Paper 73); Ni replies (Paper 81).

14  In view of our denying Ni motion 4, Ni motion 3 is **dismissed** as moot as to Ni

15  proposed count 2 since the contingency has not been met.  Therefore, we

16  address Ni motion 3 as it relates to current Count 1.

17       To be accorded benefit for the purpose of priority in an interference

18  proceeding "means Board recognition that a patent application provides a proper

19  constructive reduction to practice under 35 U.S.C. 102(g)(1)."  37 CFR § 41.201.

20  A constructive reduction to practice "means a described and enabled anticipation

21  under 35 U.S.C. 102(g)(1) in a patent application of the subject matter of a

22  count."  *Id*.  Benefit for the purpose of priority focuses on the subject matter of a

23  count and only requires a constructive reduction to practice of a single

Case 1:07-cv-00780-SLR   Document 10-4   Filed 01/16/2008   Page 10 of 74

Interference No. 105,240                                                    Page 9
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                  Paper 133

1   embodiment within the scope of the count. *Faulkner v. Inglis*, 463 F.3d 1376,

2   1379, 79 USPQ2d 1001, 1004 (Fed. Cir. 2006); *Hunt v. Treppschuh*, 523 F.2d

3   1385, 1389, 187 USPQ 426, 429 (CCPA 1975).[6]  To fulfill the written description,

4   the patent specification must describe an invention in sufficient detail that one of

5   ordinary skill in the art can clearly conclude that the inventor invented what is

6   claimed. *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1572, 41 USPQ2d 1961,

7   1966 (Fed. Cir. 1997).  Furthermore, the earliest constructive reduction to

8   practice "means the first constructive reduction to practice that has been

9   continuously disclosed through a chain of patent applications including the

10  involved patent application or patent." 37 CFR § 41.201.  "For the chain to be

11  continuous, each subsequent application must have been co-pending under 35

12  U.S.C. 120 or 121 or timely filed under 35 U.S.C. 119 or 365(a)." *Id.*

13      "The party filing a motion has the burden of proof to establish that it is

14  entitled to the requested relief." 37 CFR § 41.121(b).  As part of its burden of

15  proof Ni must present admissible evidence and explain how the evidence

16  supports the relief requested.  Ni has failed to meet its burden both procedurally

17  and substantively.  Ni has failed to show that any of the six certain applications,

18  i.e., applications 60/040,846; 60/054,021; 09/042,583; 60/132,498; 60/133,238;

19  60/148,939; 60/054,021; and, 60/040,846, describes a constructive reduction to

20  practice of a single embodiment within the scope of Count 1.

---

[6] In contrast, benefit for the purpose of 35 U.S.C. § 120 and related statutes focuses on the subject matter of a claim and requires the application for which benefit is sought to describe and enable the entire scope of the claim.

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 11 of 74

Interference No. 105,240                                                                Page 10
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                              Paper 133

1        Ni's involved '568 patent issued from its '009 application (FF 2).

2   [23]  Ni's '009 application was not accorded benefit for the purpose of priority of

3        any earlier filed applications when the interference was declared.

4   [24]  The '009 application is said to be a continuation-in-part of application

5        09/042,583 ("the '583 application," NX 2024, title page, § 63).

6   [25]  When the '583 application was filed, it claimed benefit of the filing dates of

7        provisional applications 60/054,021 ("the '021 application," NX 2056) and

8        60/040,846 ("the '846 application," NX 2042) under 35 U.S.C. § 119(e)

9        (NX 2024, p. 1, ll. 12-14).

10  [26]  When the '009 application was filed, it also claimed benefit of the filing

11       dates of provisional applications 60/132,498 ("the '498 application," NX

12       2063), 60/133,238 ("the '238 application," NX 2064) and 60/148,939 ("the

13       '939 application," NX 2065) (NX 2004, col. 1, ll. 7-10).

14       Thus, Ni motion 3 requires analysis of five "chains" of applications:

15       (1)    the '009 application back to the '939 application,

16       (2)    the '009 application back to the '238 application,

17       (3)    the '009 application back to the '498 application,

18       (4)    the '009 application back through the '583 application to the '021

19  application, and

20       (5)    the '009 application back through the '583 application to the '846

21  application for an embodiment within the scope of Count 1. The fourth and fifth

22  chains contain a common intermediate "link," the '583 application. Hence, we

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 12 of 74

Interference No. 105,240                                                    Page 11
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                  Paper 133

1    group the first three chains together and the last two chains together for

2    discussion purposes.

3       **A.    Group I:  applications '498, '238 and '939**

4       First, Ni has made no attempt whatsoever to identify where the disclosure

5    of the '939, '238 or '498 applications provide a constructive reduction to practice

6    of the subject matter of Count 1.  Ni argued *in toto*:

7               HGS's later filed priority applications (09/042,583,
8               filed March 17, 1998; 60/132,498, filed May 4, 1999;
9               60/133,238, filed May 7, 1999; and 60/148,939, filed
10              August 13, 1999) **contain at least the same**
11              **disclosure as is found in the March 17 and July**
12              **29, 1997 priority applications**.  Moreover, nothing in
13              the later filed priority applications provides any basis
14              for doubting the assertions of the March 17, 1997 and
15              July 29, 1997 priority applications.  Thus, **for at least**
16              **the same reasons** that the March 17, 1997 and July
17              29, 1997 priority applications enable and describe
18              embodiments of count 1 and of proposed count 2, it
19              follows that the later filed priority applications also
20              enable and describe embodiments of count 1 and
21              proposed count 2.  [Paper 40, ¶ bridging pp. 22-23,
22              emphasis added.]

23      Ni should have shown where each of the '498, '238 and '939 applications

24   described an enabled embodiment of the subject matter of Count 1 and how that

25   description was carried forward into the '009 application.  The '498, '238 and '939

26   applications are lengthy documents.

27   [27]  The '568 patent (NX 2004), which Ni submitted in lieu of the '009

28        application, includes an abstract, twelve sheets of drawings, one hundred

29        fifty-eight columns of text (including sequences) and fifty-two claims.

30   [28]  Since Ni did not enter a copy of the originally filed '009 application into

31        evidence, the '568 patent cannot be used to establish whether the '009

1    application contained any original claims directed to antagonist anti-ECD

2    DR5 antibodies.

3    [29]    The '498 application (NX 2063) includes an abstract, seven sheets of

4          drawings, one hundred sixty-six pages of text (including sequences) and

5          thirty-four claims.

6    [30]    The '238 application (NX 2064) includes an abstract, one hundred sixty-

7          four pages of text (including sequences), fourteen sheets of drawings and

8          thirty-four claims.

9    [31]    The '939 application (NX 2065) includes an abstract, one hundred eighty-

10          three pages of text and thirty-four claims.

11    [32]    The '021 application (NX 2065) includes an abstract, fifty-one pages of

12          text, seven sheets of drawings and twenty-four claims.

13    [33]    The '846 application (NX 2042) includes an abstract, forty-four pages of

14          text (including sequences), four sheets of drawings and nineteen claims.

15          It is not the job of the Board to pour through hundreds of pages of text and

16    sheets of drawings to find disclosure alleged to be "at least the same disclosure

17    as is found in the March 17 and July 29, 1997 priority applications." *See United*

18    *States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("[j]udges are not like pigs

19    hunting for truffles buried in briefs"). It is not the fact finder's burden to search

20    through lengthy technology-intense documents for possible evidence which may

21    support Ni's "at least the same reasons." The descriptive text and figures in each

22    of the '009 (to the extent shown in the '568 patent), '498, '238 and '939

23    application is anywhere from approximately three to five times greater than that

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 14 of 74

Interference No. 105,240                                                    Page 13
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                  Paper 133

1    in either the '846 or '021 application. Ni has failed to provide any guidance as to

2    where any of the specifications and/or figures of the '009, '498, '238 or '939

3    applications contain disclosure corresponding to the particular disclosure relied

4    upon by Ni in either the '846 or '021 application. Ni has failed to provide any

5    explanation as to why "at least the same reasons" said to apply to the '846 and

6    '021 applications would be equally applicable to the disclosures of any of the

7    '009, '498, '238 or '939 applications.

8        Given the substantially greater amount of text and figures in each of the

9    '009, '498, '238 and '939 applications, any one or more of these applications may

10   or may not support any one of more of Ni's "at least the same reasons." Ni

11   cannot simply piggyback the disclosure of one provisional application upon that

12   of another provisional application for purposes of priority any more than one

13   provisional application can claim priority benefit of another provisional

14   application. *Compare* 35 U.S.C. § 111(b)(7). The disclosure of each provisional

15   application stands on its own footing. It is Ni's burden to present substantive

16   reasons as to why specifically identified disclosure in each of the '498, '238 and

17   '939 applications provide a constructive reduction to practice of the subject

18   matter of Count 1. Otherwise, Ni has failed to show that the '009 application is

19   *prima facie* entitled to benefit for the purpose of priority of the filing date of the

20   '498, '238 and/or '939 application(s).

21       Based on the foregoing, Ni has not established that it is *prima facie*

22   entitled to benefit for the purpose of priority of (i) the 4 May 1999 filing date of the

23   '498 application, (ii) the 7 May 1999 filing date of the '238 application, or (iii) the

1    13 August 1999 filing date of the '939 application as to the subject matter of

2    Count 1.

3        **B.    Group II:  linked applications '583/'846 and '583/'021**

4        Ni has failed to identify where the disclosure of the '583 application

5    provides a constructive reduction to practice of the subject matter of Count 1.

6    Since the '583 application is the parent application of the '009 application, it is

7    proper to address the disclosure in the '583 application before addressing the

8    disclosure in either the '846 or '021 application.  If the '583 application does not

9    provide a constructive reduction to practice of the subject matter of Count 1

10   which was carried forward into the '009 application, the chain is broken and we

11   do not reach either earlier filed '846 or '021 application.

12       As noted above (FF 24), the '009 application is said to be a continuation-

13   in-part of the '583 application and, therefore, presumptively includes subject

14   matter different from its parent '583 application.  Ni has failed to identify where

15   the '583 application describes an enabled embodiment within the scope of Count

16   1 and how this disclosure was carried forward into the '009 application.  Instead,

17   just as with the '498, '238 and '939 applications, Ni simply argued that the '583

18   application contains "at least the same disclosure as found in" the '846 and '021

19   applications and, therefore described and enabled embodiments within the scope

20   of Count 1 (Paper 40, ¶ bridging pp. 22-23).

21   [34]   The '583 application includes an abstract, sixty-seven pages of text

22          (including sequences), thirty-four originally submitted claims and seven

23          sheets of drawings.

1    Ni has failed to provide any guidance as to where the '583 application

2    provides disclosure corresponding to specific disclosures relied upon by Ni in

3    either the '846 or '021 applications.  Ni has not explained why "at least the same

4    reasons" said to apply to the '846 and '021 applications are equally applicable to

5    the '583 application.  In other words, Ni has not addressed the disclosure of the

6    '583 application in any meaningful way either substantively or procedurally.

7    Ergo, we need not consider whether either the '846 or '021 provisional

8    application describes an enabled embodiment within the scope of Count 1.

9    Based on the foregoing, Ni has not established that it is *prima facie*

10   entitled to benefit for the purpose of priority of (i) the 17 March 1998 filing date of

11   the '583 application, (ii) the 17 March 1997 filing date of the '846 application or

12   (iii) the 29 July 1997 filing date of the '021 application.

13   In summary, Ni motion 3 is **dismissed** as moot as to benefit for the

14   purpose of priority **as to Ni proposed count 2 and otherwise denied**.

15   **V.      Rauch Motion 7**

16   Contingent on the grant of Ni motion 4, Rauch moves pursuant to 37 CFR

17   § 41.121(a)(1)(ii), to be accorded benefit of the filing dates of five certain priority

18   documents for the subject matter of Ni proposed count 2 (Paper 58).  Ni opposes

19   (Paper 71); Rauch replies (Paper 90).  Since the contingency has not been met,

20   we **dismiss** Rauch motion 7 as moot.

21   **VI.     Rauch Motions 2 and 4**

22   Pursuant to 37 CFR § 41.121(a)(1)(i), Rauch moves to redefine the scope

23   of the interference.  Rauch seeks to substitute Rauch proposed count 1 for

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 17 of 74

Interference No. 105,240                                                    Page 16
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                  Paper 133

1    current Count 1 and to add Rauch proposed count 2 in its motion 2 (Paper 45).

2    Rauch seeks to add proposed claims 118, to be designated as corresponding to

3    Count 1 or Rauch proposed count 1, and 119, to be designated as corresponding

4    to Count 1 or Rauch proposed count 2, to its involved '045 application in its

5    motion 4 (Paper 47).   Ni opposes (Papers 66 and 68); Rauch replies (Papers 85

6    and 87).

7         **A.     Rauch proposed count 1**

8    [35]   Rauch proposed count 1 reads "Ni '568 Patent claim 1 or Rauch '045

9           Application claim 82" (Paper 45, p. 1).

10   [36]   Ni '568 patent claim 1 reads:

11               An isolated antibody or fragment thereof that
12               specifically binds to a protein consisting of amino acid
13               residues 1 to 133 of SEQ ID NO:2.

14   [37]   Rauch '045 application claim 82 reads:

15               A composition comprising a plurality of isolated
16               antibodies or antigen-binding fragments thereof,
17               wherein each of said antibodies or antigen-binding
18               fragments of said plurality specifically binds to an
19               isolated and purified human TRAIL-R receptor
20               protein, wherein said isolated and purified human
21               TRAIL-R receptor protein is a product made by the
22               process comprising the steps of:

23               (a)    isolating plasma membranes from Jurkat cells;

24               (b)    solubilizing and homogenizing said isolated
25                      plasma membranes of step (a);

26               (c)    centrifuging said solubilized and homogenized
27                      isolated plasma membranes of step (b) to yield
28                      a plasma membrane extract and a pellet;

29               (d)    applying said plasma membrane extract of step
30                      (c) to an anti-octapeptide monoclonal antibody
31                      affinity chromatography column, whereby said
32                      column of step (d) adsorbs non-specifically

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 18 of 74

Interference No. 105,240                                    Page 17
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)   Paper 133

1           bound material and wherein said octapeptide
2           has the sequence presented in SEQ ID NO:5;

3    (e)    applying column flow-through from step (d) to
4           an octapeptide-TRAIL ligand affinity
5           chromatography column, whereby said column
6           of step (e) specifically binds said TRAIL-R
7           receptor protein and wherein said octapeptide-
8           TRAIL ligand is a fusion protein of said
9           octapeptide having the sequence presented in
10          SEQ ID NO:5 and TRAIL ligand;

11    (f)    eluting fractions with TRAIL ligand binding
12          activity from said column of step (e); and,

13    (g)    purifying said fractions of step (f) by reverse-
14          phase HPLC to yield said isolated and purified
15          TRAIL-R receptor protein,

16    wherein said isolated and purified TRAIL-R receptor
17    protein has a molecular weight of about 50 to 55
18    kilodaltons as determined by SDS polyacrylamide gel
19    electrophoresis and comprises the amino acid
20    sequence VPANEGD (amino acids 327-333 of SEQ
21    ID NO:2).

22       Rauch argues that its proposed count 1 "reflects the scope of the broadest

23  patentable claims between the parties" (Paper 45, p. 6).  Rauch further argues

24  that its

25    best priority proofs for Count 1 include conception and
26    constructive reduction to practice of antibodies that
27    specifically bind to TR-2 but do not recite a specific
28    effect on TR-2, such as antagonizing TR-2 (Ni claim
29    21), or blocking TRAIL binding to TR-2, and binding to
30    Jurkat cell membranes (Rauch claim 84) (Paper 45, p.
31    11).

32       First, there is no *per se* rule that a count must be as broad as the parties'

33  broadest patentable claims corresponding to the count.  *Lee v. McIntyre*, 55

34  USPQ2d at 1412.

1    Second, it is accepted interference practice to permit the substitution of a

2    broader count when a party's best proofs lie outside the scope of the present

3    count. *Theeuwes v. Bogentoft*, 2 USPQ2d 1378, 1379 (Comm'r Pat. 1986);

4    *Kondo v. Martel*, 220 USPQ 47, 49 (Bd. Pat. Int. 1983); *Nelson v. Drabek*, 212

5    USPQ 98 (Comm'r Pat. 1979). However, a broader count cannot be substituted

6    where it is broadened to include another separately patentable invention. For

7    example, if the count were drawn to species A and one party's best proofs were

8    allegedly to species B, it would be improper to broaden the count to a Markush

9    group of species A and B if species B was a patentably distinct invention from

10   species A. If the count was broadened to cover species A and B, the anomalous

11   possibility would arise that the one party could prove priority as to both

12   patentably distinct inventions (A and B) merely by proving priority as to one of

13   them (B). *Cf. Godtfedsen v. Banner*, 598 F.2d at 589, 202 USPQ (D.D.C. 1980);

14   *Theeuwes*, 2 USPQ2d at 1380.

15       Furthermore, there is a rebuttable presumption that a claim which is not

16   designated as corresponding to the count is not directed to the same patentable

17   invention as the count. *Chiong v. Roland*, 17 USPQ2d 1541, 1544 (Bd. Pat. App.

18   & Int. 1990). Here, Ni claims 7, 20, 33 and 46, which expressly recite antibodies

19   that specifically bind to the ECD of DR5 (i.e., amino acids 1-133 of SEQ ID NO:2

20   of the '568 patent) and have agonistic activity, have been designated as *not*

21   corresponding to Count 1 (FF 11 and 20). Count 1, in relevant part, is directed to

22   antibodies that specifically bind to the ECD of DR5 and have antagonistic activity

23   (FF 18). Thus, in order for Rauch to meet its burden of proving that it is entitled

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 20 of 74

Interference No. 105,240                                                    Page 19
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                   Paper 133

1      to the requested relief, i.e., substituting Rauch proposed count 1 for Count 1,

2      Rauch would have to show that antibodies which specifically bind to the ECD of

3      DR5 and *agonize* the activity of DR5 define the same patentable invention as

4      antibodies which specifically bind to the ECD of DR5 and *antagonize* the activity

5      of DR5.  To the contrary, Rauch itself argues that antibodies that *agonize* the

6      activity of DR5 define a *separate patentable invention* from antibodies that

7      *antagonize* the activity of DR5 (Paper 45, p. 12).

8          Therefore, Rauch has not met its burden and Rauch motion 2 is **denied to**

9      **the extent** it seeks to substitute Rauch proposed count 1 for current Count 1.

10         **B.    Rauch proposed claim 118**

11     [38]   Rauch proposed claim 118 reads:

12                 An antibody that specifically binds to a TRAIL-R
13                 polypeptide selected from the group consisting of:

14                 (a)    a polypeptide that binds TRAIL and can be
15                        isolated from human cell membranes, wherein
16                        the TRAIL-R is characterized as comprising the
17                        amino acid sequence VPANEGD (amino acids
18                        327-333 of SEQ ID NO:2); and

19                 (b)    a fragment of (a), wherein said fragment is
20                        capable of binding TRAIL,

21                 or an antigen-binding fragment of said antibody.

22         "A party moving to add . . . a claim must show the claim is patentable."  37

23     CFR § 41.208(c)(1).

24     [39]   In an Office action mailed 7 February 2005 during prosecution of the '045

25         application, the Examiner rejected claim 43 "under 35 U.S.C. 102(e) as

26         being anticipated by Ni *et al.*, Publication No. 20020098550, July 25,

1    2002, Application No. 09/005842 [sic, 10/005,842] (IDS item A20)" (RX

2    1019, pp. 488-489).

3    [40]    In response to the 7 February 2005 Office action, Rauch argued that claim

4    43 was entitled to an effective filing date which antedated the applied prior

5    art, cancelled claim 43 and presented claims reciting additional limitations

6    for the Examiner's consideration (RX 1019, pp. 509-519).

7    [41]    By way of an Examiner's amendment mailed 26 July 2005, the Examiner

8    indicated that the then pending claims, i.e., Rauch's currently involved

9    claims, were allowable (RX 1019, pp. 628-635).

10    [42]    Rauch admits that "[p]roposed claim 118 contains fewer limitations than

11    the pending claims involved in the interference and is identical to claim 43,

12    which was added then cancelled during the prosecution of the '045

13    Application" (Paper 47, p. 4, ¶3).

14        Rauch's proposed claim 118, i.e., cancelled claim 43, is broader than any

15    of its claims involved in this interference.  During prosecution of the involved '045

16    application, Rauch argued cancelled claim 43 was patentable over the applied

17    prior art, but nonetheless cancelled the claim and replaced it with claims having

18    additional limitations.  It was unnecessary for the examiner to consider the

19    arguments that cancelled claim 43 would be patentable over the applied prior art.

20    Thus, it is unclear on this record whether the Examiner considered cancelled

21    claim 43 to be allowable over the applied prior art or not.  Rauch's involved

22    replacement claims are directed to antibodies which specifically bind to TRAIL-

23    R2 antigen characterized as a product-by-process having a particular molecular

1   weight range.  The Examiner might have considered the product-by-process

2   steps and/or the approximate molecular weight limitations of the replacement

3   claims to distinguish over the applied prior art.  Alternatively, Rauch might have

4   chosen to appeal the Examiner's decision to reject claim 43 over the applied prior

5   art rather than canceling it and replacing it with narrower subject matter.  In any

6   event, we are not here to look over the Examiner's shoulder or to review his/her

7   decision on patentability.  Therefore, we decline Rauch's invitation to determine

8   the patentability of its proposed claim 118 over the prior art applied by the

9   Examiner *sua sponte*, particularly since proposed claim 118 is broader than any

10  of Rauch's involved claims and would not affect the scope of Count 1 or Rauch's

11  proposed count 1 or 2.

12         Based on the foregoing, Rauch motion 4 is **denied** to the extent it seeks to

13  add Rauch proposed claim 118 to its involved '045 application.

14         **C.    Rauch proposed count 2**

15  [43]   Rauch proposed count 2 reads "Ni '568 Patent claim 7 or Rauch '045

16         Application Proposed claim 119" (Paper 45, p. 1).

17  [44]   Ni '568 patent claim 7, written in independent form, reads:

18                 An isolated antibody or fragment thereof that
19                 specifically binds to a protein consisting of amino acid
20                 residues 1 to 133 of SEQ ID NO:2, wherein said
21                 antibody or fragment thereof is an agonist of the
22                 protein of SEQ ID NO:2.

23         As noted above, amino acid residues 1 to 133 of SEQ ID NO:2 of the '568

24  patent is said to be the ECD of DR5 (FF 11).

25  [45]   Rauch '045 application proposed claim 119 reads:

26                 An isolated antibody or fragment thereof that
27                 specifically binds to the extracellular domain of a

1          protein of SEQ ID NO:2, wherein the isolated antibody
2          or fragment thereof is an agonist of said protein.

3    [46]  SEQ ID NO:2 of the '045 application is said to be the 440 amino acid

4          sequence of a human TRAIL-R2 protein encoded by the cDNA of SEQ ID

5          NO:1 derived from human foreskin fibroblast  (RX 1004, p. 2, II. 28-29; p.

6          3, II. 27-30; p. 40, "Example 3;" pp. 57-58).

7          "Where there is more than one count, each count must describe a

8    patentably distinct invention."  37 CFR § 41.201.  Rauch maintains that its

9    proposed count 2 defines a patentably distinct invention from Count 1 for two

10   reasons.

11         First, Rauch argues that generating agonistic antibodies to TR-2 was not

12   routine in 1997 (Paper 45, p. 7).  However, Rauch has not explained why the

13   subject matter of proposed count 2 would not have been obvious over the subject

14   matter of Count 1.  The subject matter of Count 1 relates to antibodies which

15   specifically bind to DR5/TRAIL-R2 receptor protein and decrease (antagonize) its

16   function, while the subject matter of proposed count 2 relates to antibodies which

17   specifically bind to the same protein and increase (agonize) its function.  There is

18   no difference in the cognate ligand or signal used to induce activity of the TNF

19   receptor protein of the counts.  The only difference is whether the antibody turns

20   the activity of the protein "up" (proposed count 2) or "down" (Count 1).  Rauch

21   has not shown why a skilled artisan could not generate the former antibody,

22   given that he presumably knows how to generate the latter antibody.

23         Secondly, Rauch argues that a separate interference 105,361 involving all

24   of Ni's '568 patent claims was declared with two counts, one directed to

1    antibodies that antagonize the activity of DR5/TRAIL-R2 and the other directed to

2    antibodies that agonize the activity of DR5/TRAIL-R2 (Paper 45, p. 13).  The '361

3    interference was declared based on a different record.  Different facts lead to

4    different conclusions.

5        Therefore, since Rauch has not shown that the subject matter of its

6    proposed count 2 is separately patentable from the subject matter of Count 1,

7    Rauch motion 2 is **denied** to the extent it seeks to add Rauch proposed count 2

8    to the interference.

9        **D.    Rauch proposed claim 119**

10       Since Rauch has not shown that the subject matter of its proposed count 2

11   is separately patentable from the subject matter of Count, there is no reason to

12   add proposed claim 119 to the '045 application.  In other words, Rauch has failed

13   to show that it is entitled to the relief requested.  37 CFR § 41.121(b).

14       Therefore, based on the foregoing, Rauch motion 4 is **denied** to the extent

15   it seeks to add Rauch proposed claim 119 to its '045 application.

16       **E.    Summary**

17       In summary, Rauch motion 2 to substitute Rauch proposed count 1 for

18   current Count 1 and to add Rauch proposed count 2 is **denied**.  Further, Rauch

19   motion 4 to add Rauch proposed claims 118 and 119 to its involved '045

20   application is **denied**.

21   **VII.   Ni Motion 6**

22       Contingent on the grant of Rauch motion 2, Ni moves pursuant to 37 CFR

23   § 41.121(a)(1)(ii), to be accorded benefit of the filing dates of "its priority

1    applications" for the subject matter of Rauch proposed counts 1 and 2 (Paper

2    57). Rauch opposes (Paper 75); Ni replies (Paper 83). Since the contingency

3    has not been met, we **dismiss** Ni motion 6 as moot.

4    **VIII.   Rauch Motion 5**

5          Contingent on the denial of Rauch motion 2 to add Rauch proposed count

6    2 to the interference, Rauch moves pursuant to 37 CFR § 41.121(a)(1), to

7    designate Ni '568 patent claims 7, 20, 33 and 46 as corresponding to Count 1

8    (Paper 48). Ni opposes (Paper 69); Rauch replies (Paper 88).

9    [47]   Ni '568 patent claim 7, written in independent form, reads:

10                  An isolated antibody or fragment thereof that
11                  specifically binds to a protein consisting of amino acid
12                  residues 1 to 133 of SEQ ID NO:2, wherein said
13                  antibody or fragment thereof is an agonist of the
14                  protein of SEQ ID NO:2.

15   [48]   Ni '568 patent claim 20, written in independent form, reads:

16                  An isolate monoclonal antibody or fragment thereof
17                  that specifically binds to a protein consisting of amino
18                  acid residues 1 to 133 of SEQ ID NO:2, wherein said
19                  antibody or fragment thereof is an agonist of the
20                  protein of SEQ ID NO:2.

21         Amino acid residues 1 to 133 of SEQ ID NO:2 are said to represent the

22   extracellular domain of DR5 (FF 11).

23   [49]   Ni '568 patent claim 33, written in independent form, reads:

24                  An isolated antibody or fragment thereof that
25                  specifically binds to the extracellular domain of the
26                  protein encoded by the cDNA contained in ATCC
27                  Deposit No. 97920, wherein said antibody or fragment
28                  thereof is an agonist of the protein encoded by the
29                  cDNA contained in ATCC Deposit No. 97920.

30   [50]   Ni '568 patent claim 46, written in independent form, reads:

31                  An isolated monoclonal antibody or fragment thereof
32                  that specifically binds to the extracellular domain of

1    the protein encoded by the cDNA contained in ATCC
2    Deposit No. 97920, wherein said antibody or fragment
3    thereof is an agonist of the protein encoded by the
4    cDNA contained in ATCC Deposit No. 97920.

5    [51]    The amino acid sequence of the protein encoded by the cDNA contained

6    in ATCC Deposit No. 97920 is purportedly the same as SEQ ID NO:2 in

7    the '568 patent (NX 2004, col. 7, ll. 10-14).

8    [52]    According to the '568 patent specification, protein agonist antibodies

9    "potentiate or activate either all or a subset of the biological activities of

10    the ligand-mediated receptor activation," such as increasing DR5/TRAIL

11    mediated apoptosis (NX 2004, col. 4, ll. 14-20; col. 64, ll. 18-21).

12    Thus, the subject matter of Ni claims 7, 20, 33 and 46 is directed to

13    isolated antibodies/fragments which perform two functions.  First, they

14    specifically bind to the ECD (amino acid residues 1 to 133 of SEQ ID NO:2) of

15    TRAIL-binding receptor protein DR5.  Second, as a result of binding the ECD of

16    DR5, they either enhance at least one biological activity of DR5 that occurs as

17    result of DR5 binding TRAIL or act as a "pseudo" TRAIL and activate at least one

18    biological activity of DR5.

19    "A claim corresponds to a count if the subject matter of the count, treated

20    as prior art, to the claim, would have anticipated or rendered obvious the subject

21    matter of the claim." 37 CFR §41.207(b)(2).  Furthermore, there is a rebuttable

22    presumption that a claim which is not designated as corresponding to the count

23    is not directed to the same patentable invention as the count. *Chiong v. Roland*,

24    17 USPQ2d at 1544.  Ni claims 7, 20, 33 and 46 have been designated as *not*

25    corresponding to Count 1 (FF 11 and 20).  In other words, the subject matter of

1   Ni claims 7, 20, 33 and 46 presumably are not anticipated or rendered obvious

2   by the subject matter of Count 1 and it is Rauch's burden to show otherwise by

3   an appropriate anticipation or obviousness analysis.

4           Count 1 is defined in the alternative by Rauch '045 application claim 84

5   (FF 8). The "wherein" clause of claim 84 recites "wherein said antibodies or

6   antigen-binding fragments specifically bind to membranes of Jurkat cells and also

7   block binding of TRAIL ligand to said TRAIL-R receptor protein" (FF 15). Rauch

8   argues that antibodies which block binding of TRAIL to TRAIL-R2 ("blocking

9   antibodies") generically encompass TRAIL-R2 agonistic and antagonistic

10  antibodies (Paper 48, p. 4).

11          Rauch's entire anticipation and/or obviousness analysis is
12                  if used as prior art against Ni claims 7, 20, 33 or 46,
13                  Count 1, which recites antibodies which "block binding
14                  of TRAIL ligand to said TRAIL-R receptor protein" and
15                  includes both antagonistic or agonistic antibodies to
16                  TR2, would render Ni claims 7, 20, 33, or 46, directed
17                  to an antibody or fragment thereof which "is an
18                  agonist of the protein of SEQ ID NO:2" unpatentable
19                  as anticipated and/or obvious. As such, Ni claims 7,
20                  20, 33, and 46 should be designated as
21                  corresponding to Count 1. [Paper 48, p. 6, ¶1.]

22          Assuming *arguendo* that the "blocking antibodies" of Count 1

23  encompassed both agonistic and antagonistic antibodies and antigen-binding

24  fragments thereof as alleged by Rauch, the subject matter of Count 1 as defined

25  by Rauch '045 application claim 84 is generic to and, therefore, does not

26  necessarily anticipate, the subject matter of any one of Ni claims 7, 20, 33 or 46.

27  However, the analysis does not end there. Simply because a species falls within

28  a genus disclosed by the prior art (here the subject matter of Count 1) does not

1    necessarily make that species *per se* obvious.  The genus and the species may

2    be separately patentable.  *In re Jones*, 958 F.2d 347, 350, 21 USPQ2d 1941,

3    1943 (Fed. Cir. 1992) (rejecting Commissioner's argument that "regardless [ ]

4    how broad, a disclosure of a chemical genus renders obvious any species that

5    happens to fall within it").  Moreover, here, there is a rebuttable presumption that

6    the subject matter of Ni claims 7, 20, 33 and 46 are separately patentable from

7    the allegedly generic "blocking antibodies" of Count 1.  Rauch has not attempted

8    to overcome that presumption in any meaningful way.

9         Secondly, more than mere conclusory statements are required to reach a

10   conclusion of obviousness.  *In re Kahn*, 441 F.3d 977, 988, 78 ISPQ2d 1329,

11   1336 (Fed. Cir. 2006).  The ultimate determination of whether an invention would

12   have been obvious is a legal conclusion based on the evidence.  *Richardson-*

13   *Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1483, 44 USPQ2d 1181, 1187 (Fed.

14   Cir. 1997), including underlying factual inquiries such as (1) the scope and

15   content of the prior art, (2) the level of ordinary skill in the art, (3) the differences

16   between the claimed invention and the prior art, and (4) objective evidence of

17   nonobviousness.  *Graham v. John Deere Co.*, 383 U.S. 1, 7-8, 148 USPQ 459,

18   467 (1969).  Thus, the evaluation of obviousness is not made in a vacuum, but

19   requires consideration of the pertinent prior art and the level of ordinary skill in

20   the art.  Therefore, Rauch must provide some evidentiary basis for considering

21   the obviousness of the subject matter in light of the scope and content of the

22   prior art, including the subject matter of Count 1, and the level of ordinary skill in

Case 1:07-cv-00780-SLR   Document 10-4   Filed 01/16/2008   Page 29 of 74

Interference No. 105,240                                                           Page 28
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                          Paper 133

1   the art. This might be done by testimony of a person familiar with the relevant art

2   at the relevant time.

3       Rauch cites to an article by Adams, RX 1037[7], for the proposition that "an

4   antibody that binds to a receptor and prevents ligand binding may also act as an

5   agonist of receptor function" (Paper 48, pp. 4-5).

6   [53]   Adams describes "a chimeric mouse anti-human CD40 monoclonal

7          antibody (Chi220) which both blocks CD154 binding and has partial

8          agonist properties, potentially circumventing the thromboembolic

9          complications associated with the inadvertent targeting of platelets during

10         anti-CD154 therapy" (RX 1037, p. 543, first sentence).

11      However, Rauch does not address the level of ordinary skill in the art or

12  what a skilled artisan would understand from the subject matter of Count 1 or

13  Adams. For one thing, Adams and Count 1 are directed to two different

14  ligand/receptor pairs, CD154/CD40 and TRAIL/TRAIL-R2 and Adams' antibody is

15  a chimeric antibody. It may be that one of ordinary skill in the art would have

16  reasonably expected a "blocking antibody" to enhance or potentiate receptor

17  protein activity by blocking ligand binding as found in the case of Adams' Chi220

18  chimeric antibody. Alternatively, it may be that one of ordinary skill in the art

19  would not have reasonably expected a "blocking antibody" to enhance or

20  potentiate receptor protein activity and that Adams' Chi220 chimeric antibody

21  was a totally unexpected, unique antibody. Rauch might have cited to expert

22  testimony to address these questions. Alternatively, Rauch might have

---

[7] Adams et al. (Adams), "Development of a Chimeric Anti-CD40 Monoclonal Antibody That
Synergizes with LEA29Y to Prolong Islet Allograft Survival," *Journal of Immunology*, vol. 174, pp.
542-550 (2005).

1    introduced evidence that an expected percentage of antibodies that block

2    cognate ligand from binding to its receptor protein agonize receptor protein's

3    activity.  In short, Rauch's arguments cannot substitute for factual evidence

4    sufficient to support a conclusion of obviousness.

5        Based on the foregoing, Rauch motion 5 is **denied**.

6    **IX.    Rauch Motion 3**

7        Pursuant to 37 CFR § 41.121(a)(1)(ii), Rauch moves to be accorded

8    benefit for the purpose of priority of the filing dates of five specified priority

9    applications for the subject matter of Count 1 and, contingent upon the grant of

10   Rauch motion 2, for the subject matter of Rauch proposed count 1 (Paper 46).

11   Ni opposes (Paper 67); Rauch replies (Paper 86).  In view of our denying Rauch

12   motion 2 to the extent it sought to substitute Rauch proposed count 1 for current

13   Count 1, Rauch motion 3 is **dismissed** as moot since the contingency has not

14   been met.  Therefore, we address Rauch motion 3 as it relates to Count 1.

15   [54]  Rauch's involved '045 application was not accorded benefit for the

16        purpose of priority of any earlier filed application when the interference

17        was declared.

18   [55]  Rauch's involved '045 application is said to be

19        (1)    a continuation-in-part of application 08/833,036 ("the '036

20        application," RX 1018), filed 26 June 1997, which is said to be

21        (2)    a continuation-in-part of application 08/869,852 ("the '852

22        application," RX 1017), filed 4 June 1997, which is said to be

1       (3)    a continuation-in-part of application 08/829,536 ("the '536

2       application," RX 1016), filed 28 March 1997, which is said to be

3       (4)    a continuation-in-part of application 08/815,255 ("the '255

4       application," RX 1015), filed 12 March 1997, which is said to be

5       (5)    a continuation-in-part of application 08/799,861 ("the '861

6       application," RX 1014), filed 13 February 1997 (RX 1004, p. 1, ll. 10-16).

7       Rauch seeks benefit for the purpose of priority of the filing dates of each of

8 the '036, '852, '536, '255 and '861 applications as to the subject matter of Count 1

9 (Paper 46, p. 1, ¶1).  Ni requests that Rauch motion 3 be denied with respect to

10 the filing dates of the '255 and '861 applications (Paper 67, p. 1, ¶1).

11       A party is entitled to benefit for the purpose of priority of its earliest

12 constructive reduction to practice.  Earliest constructive reduction to practice

13 "means the first constructive reduction to practice that has been continuously

14 disclosed through a chain of patent applications including the involved application

15 or patent." 37 CFR § 41.201.  Here, Rauch seeks benefit of the filing date of the

16 '861 application as its earliest constructive reduction to practice of the subject

17 matter of Count 1.  Thus, Rauch must establish that each application in the

18 priority chain describes an enabled embodiment within the scope of Count 1 that

19 was carried forward from its immediate parent application.  As noted above

20 (FF 47), each application in Rauch's priority chain is a continuation-in-part of its

21 immediate parent application and, therefore, presumptively includes subject

22 matter different from its respective immediate parent application.  Thus, if any

23 immediate parent fails to provide a constructive reduction to practice of the

Case 1:07-cv-00780-SLR   Document 10-4   Filed 01/16/2008   Page 32 of 74

Interference No. 105,240                                              Page 31
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)            Paper 133

1   subject matter of Count 1 which was carried forward into its respective child

2   application, the chain is broken and we do not reach any earlier application.

3       Rauch has provided an Appendix for each of the '861, '255, '536, '852 and

4   '036 applications particularly pointing out the disclosure in each application being

5   relied upon as describing an enabled embodiment within the scope of Count 1

6   (Paper 46, Appendices C-G, pp. 36-96).

7       The subject matter of Count 1 is defined in one alternative by the claim 84

8   of Rauch's involved '045 application (FF 8). Claim 84 of the '945 application is

9   directed to a composition comprising isolated antibodies or binding fragments

10  thereof ("antibodies/fragments") which specifically bind to a defined antigen, a

11  TRAIL-R2 receptor protein characterized as binding TRAIL, having a molecular

12  weight of about 50 to 55 kD, comprising the amino acid sequence VPANEGD,

13  and as being obtained from Jurkat cell membranes by a defined method, wherein

14  the antibodies/fragments specifically bind Jurkat cell membranes and block

15  binding of ligand to TRAIL-R2 receptor protein (FF 15-16).

16      **A.    The '036 application (RX 1018)**

17  [56]   Example 1 of the '036 specification is said to describe isolating and

18         purifying a human TRAIL-R2 receptor protein having a molecular weight of

19         about 52 kD from the membranes of Jurkat cells using the same method

20         steps recited in claim 84 of the '045 application (RX 1018, p. 4, ll. 9-12; p.

21         31, l. 7 - p. 32, l. 35).

22  [57]   Example 2 of the '036 specification is said to describe a tryptic fragment of

23         the TRAIL-R2 protein of Example 1 obtained from Jurkat cell membranes

1    as having the amino acid sequence VPANEGD (i.e., amino acids 327-333

2    of SEQ ID NO:2 of the '045 application) (RX 1018, p. 2, ll. 23-25; p. 33, ll.

3    25-30).

4    [58]  SEQ ID NO:2 of the '036 specification is said to be the amino acid

5    sequence encoded by a full length human TRAIL-R2 protein cDNA

6    obtained from human foreskin fibroblasts (RX 1018, p. 3, ll. 10-14; p. 36, ll.

7    1-36) and discloses the same 440 amino acid TRAIL-R2 sequence

8    designated as SEQ ID NO:2 in the '045 application.

9    [59]  According to the '036 specification, antibodies or fragments thereof that

10   specifically bind TRAIL-R2 may be obtained by conventional techniques

11   (RX 1018, p. 26, l. 25 - p. 27, l. 21).

12   [60]  Example 4 of the '036 specification is said to describe using conventional

13   monoclonal antibody techniques and purified TRAIL-R2 immunogens to

14   obtain monoclonal antibodies that specifically bind to TRAIL-R2 (RX 1018,

15   p. 34, l. 29 - p. 35, l. 26).

16   [61]  According to Example 4 of the '036 specification, antibodies that bind

17   TRAIL-R2 may be detected by dot blot assay, enzyme-linked

18   immunosorbent assay or inhibition of TRAIL binding (RX 1018, p. 35, ll. 5-

19   8).

20   [62]  Further according to the '036 specification

21   antibodies that additionally can block binding of
22   TRAIL-R to TRAIL may be used to inhibit a biological
23   activity that results from such binding.  Such blocking
24   antibodies may be identified using any suitable assay
25   procedure, such as by testing antibodies for the ability
26   to inhibit binding of TRAIL to cells expressing TRAIL-
27   R[2].  Examples of such cells are the Jurkat cells and

1              PS1 cells described in example 2 below.
2              Alternatively, blocking antibodies may be identified in
3              assays for the ability to inhibit a biological effect that
4              results from the binding of TRAIL to target cells.
5              Antibodies may be assayed for the ability to inhibit
6              TRAIL-mediated lysis of Jurkat cells, for example.
7              [RX 1018, p. 27, ll. 25-33, bracketed text added.]

8  [63]  Thus, the '036 specification describes an enabled embodiment within the

9        scope of Count 1, i.e., isolated antibodies/fragments that specifically bind

10       to Jurkat cell membranes and block binding of TRAIL ligand to a TRAIL-

11       R2 protein, wherein the TRAIL-R2 protein is characterized as binding

12       TRAIL, having a molecular weight of about 50 to 55 kD, comprising the

13       amino acid sequence VPANEGD, and obtained from Jurkat cell

14       membranes using method steps as recited in claim 84 of the '045

15       application (FF 56-63).

16  [64]  Ni does not dispute Rauch's claim to benefit for the purpose of priority of

17       the filing date of the '036 application for the subject matter of Count 1

18       (Paper 67, p. 1, ¶1).

19       Based on the foregoing and the evidence submitted by Rauch in support

20  of its motion, we accord Rauch benefit for the purpose of priority of the 26 June

21  1997 filing date of its '036 application (RX 1018) as to the subject matter of Count

22  1 as defined by claim 84 of the '045 application.  It is unnecessary to address

23  whether the '036 application also provides a constructive reduction to practice of

24  the alternative definition of Count 1.

25       **B.    The '852 application (RX 1017)**

26  [65]  Example 1 of the '852 specification is said to describe isolating and

27       purifying human TRAIL-R2 receptor protein having a molecular weight of

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 35 of 74

Interference No. 105,240                                                    Page 34
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                  Paper 133

1       about 52 kD from the membranes of Jurkat cells using the same method

2       steps recited in claim 84 of the '045 application (RX 1017, p. 4, ll. 11-12; p.

3       30, l. 1 - p. 31, l. 16).

4  [66]  Example 2 of the '852 specification is said to describe a tryptic fragment of

5       the TRAIL-R2 protein of Example 1 isolated from Jurkat cell membranes

6       as having the amino acid sequence VPANEGD (i.e., amino acids 327-333

7       of SEQ ID NO:2 of the '045 application) (RX 1017, p. 32, ll. 18-24).

8  [67]  SEQ ID NO:2 of the '852 specification is said to be the amino acid

9       sequence encoded by a full length human TRAIL-R2 protein cDNA

10      obtained from human foreskin fibroblasts (RX 1017, p. 2, ll. 13-15; p. 35, ll.

11      5-31) and discloses the same 440 amino acid TRAIL-R2 sequence

12      designated as SEQ ID NO:2 in the '045 specification.

13  [68]  According to the '852 specification, antibodies or fragments thereof that

14      specifically bind to TRAIL-R2 may be obtained by conventional techniques

15      (RX 1017, p. 25, l. 16 - p. 26, l. 13).

16  [69]  Example 4 of the '852 specification is said to describe using conventional

17      monoclonal antibody techniques and purified TRAIL-R2 immunogens to

18      obtain monoclonal antibodies that specifically bind to TRAIL-R2 (RX 1017,

19      p. 33, l. 23 - p. 34, l. 21).

20  [70]  According to Example 4 of the '852 specification, antibodies that bind

21      TRAIL-R2 may be detected by dot blot assay, enzyme-linked

22      immunosorbent assay or inhibition of TRAIL binding (RX 1017, p. 33, l. 36

23      - p. 34, l. 3).

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 36 of 74

Interference No. 105,240                                                    Page 35
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                   Paper 133

1    [71]    Further according to the '852 specification,

2                antibodies that additionally can block binding of
3                TRAIL-R[2] to TRAIL may be used to inhibit a
4                biological activity that results from such binding. Such
5                blocking antibodies may be identified using any
6                suitable assay procedure, such as by testing
7                antibodies for the ability to inhibit binding of TRAIL to
8                cells expressing TRAIL-R[2]. Examples of such cells
9                are the Jurkat cells and PS1 cells described in
10               example 2 below. Alternatively, blocking antibodies
11               may be identified in assays for the ability to inhibit a
12               biological effect that results from binding of TRAIL to
13               target cells. Antibodies may be assayed for the ability
14               to inhibit TRAIL-mediated lysis of Jurkat cells, for
15               example. [RX 1017, p. 26, ll. 17-25, bracketed text
16               added.]

17   [72]    Thus, the '852 application describes an enabled embodiment within the

18           scope of Count 1, i.e., isolated antibodies/fragments that specifically bind

19           to Jurkat cell membranes and block binding of TRAIL ligand to a TRAIL-

20           R2 protein, wherein the TRAIL-R2 protein is characterized as binding

21           TRAIL, having a molecular weight of about 50 to 55 kD, comprising the

22           amino acid sequence VPANEGD, and obtained from Jurkat cell

23           membranes using the same method steps recited in claim 84 of the '045

24           application (FF 65-71).

25   [73]    Ni does not dispute Rauch's claim to benefit for the purpose of priority of

26           the filing date of the '852 application (Paper 67, p. 1, ¶1).

27           Based on the foregoing and the evidence submitted by Rauch in support

28   of its motion, we accord Rauch benefit for the purpose of priority of the 4 June

29   1997 filing date of the '852 application (RX 1017) as to the subject matter of

30   Count 1 as defined by claim 84 of the '045 application. It is unnecessary to

Case 1:07-cv-00780-SLR   Document 10-4   Filed 01/16/2008   Page 37 of 74

Interference No. 105,240                                          Page 36
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)        Paper 133

1    address whether the '852 application also provides a constructive reduction to

2    practice of the alternative definition of Count 1.

3        **C.    The '536 application (RX 1016)**

4    [74]   Example 1 of the '536 specification is said to describe isolating and

5           purifying human TRAIL-R2 receptor protein having a molecular weight of

6           about 52 kD from the membranes of Jurkat cells using the same method

7           steps recited in claim 84 of the '045 application (RX 1016, p. 3, ll. 18-19; p.

8           21, l. 5 - p. 23, l. 15).

9    [75]   Example 2 of the '536 specification is said to describe a tryptic fragment of

10          the TRAIL-R2 protein isolated from Jurkat cells by the method of Example

11          1 as having the amino acid sequence VPANEGD (i.e., amino acids 327-

12          333 of SEQ ID NO:2 of the '045 application) (Rx 1016, p. 23, ll. 24-32).

13   [76]   Figure 3 of the '536 specification is said to be the amino acid sequence

14          encoded by a full length human TRAIL-R2 protein cDNA obtained from

15          human foreskin fibroblasts (RX 1016, p. 2, ll. 1-5; p. 24, ll. 14-33) and

16          discloses the same 440 amino acid sequence designated as SEQ ID NO:2

17          in the '045 application.

18   [77]   According to the '536 specification, antibodies or fragments thereof that

19          specifically bind to TRAIL-R2 may be obtained by conventional techniques

20          (RX 1016, p. 19, ll.1-24).

21   [78]   Example 4 of the '536 specification is said to describe using conventional

22          monoclonal antibody techniques and purified TRAIL-R2 immunogens to

1       obtain monoclonal antibodies that specifically bind to TRAIL-R2 (RX 1016,

2       p. 24, l. 35 - p. 25, l. 32).

3   [79]  According to Example 4 of the '536 specification, antibodies that bind

4       TRAIL-R2 may be detected by dot blot assay, enzyme-linked

5       immunosorbent assay or inhibition of TRAIL binding (RX 1016, p. 25, ll.

6       11-14).

7   [80]  Further according to the '536 specification,

8               antibodies that additionally can block binding of
9               TRAIL-R[2] to TRAIL may be used to inhibit a
10              biological activity that results from such binding.  Such
11              blocking antibodies may be identified using any
12              suitable assay procedure, such as by testing
13              antibodies for the ability to inhibit binding of TRAIL to
14              cells expressing TRAIL-R[2].  Examples of such cells
15              are the Jurkat cells and PS1 cells described in
16              example 2 below.  Alternatively, blocking antibodies
17              may be identified in assays for the ability to inhibit a
18              biological effect that results from binding of TRAIL to
19              target cells.  Antibodies may be assayed for the ability
20              to inhibit TRAIL-mediated lysis of Jurkat cells, for
21              example.  [RX 1016, p. 19, ll. 28-36, bracketed text
22              added.]

23   [81]  Thus, the '536 application describes an enabled embodiment within the

24       scope of Count 1, i.e., isolated antibodies/fragments that specifically bind

25       to Jurkat cell membranes and block binding of TRAIL ligand to a TRAIL-

26       R2 protein, wherein the TRAIL-R2 protein is characterized as binding

27       TRAIL, having a molecular weight of about 50 to 55 kD, comprising the

28       amino acid sequence VPANEGD, and obtained from Jurkat cell

29       membranes using the same method steps recited in claim 84 of the '045

30       application (FF 74-80).

1    [82]    Ni does not dispute Rauch's claim to benefit for the purpose of priority of

2            the filing date of the '536 application (Paper 67, p. 1, ¶1).

3            Based on the foregoing and the evidence submitted by Rauch in support

4    of its motion, we accord Rauch benefit for the purpose of priority of the 28 March

5    1997 filing date of the '536 application (RX 1016) as to the subject matter of

6    Count 1 as defined by claim 84 of the '045 application.  It is unnecessary to

7    address whether the '536 application also provides a constructive reduction to

8    practice of the alternative definition of Count 1.

9            D.    The '255 application (RX 1015)

10   [83]    Example 1 of the '255 specification is said to describe isolating and

11           purifying human TRAIL-R2 receptor having a molecular weight of about 52

12           kD from the membranes of Jurkat cells using the same method steps

13           recited in claim 84 of the '045 specification (RX 1015, p. 2, ll. 22-23; p. 16,

14           l. 6 - p. 18, l. 2).

15   [84]    Example 2 of the '255 specification is said to describe a tryptic fragment of

16           the TRAIL-R2 protein of Example 1 obtained from Jurkat cell membranes

17           as having the amino acid sequence VPANEGD (i.e., amino acids 327-333

18           of SEQ ID NO:2 of the '045 application) (RX 1015, p. 18, ll. 26-31).

19   [85]    Example 2 of the '255 specification is also said to describe three tryptic

20           fragments of TRAIL-R2 protein isolated from PS-1 cells as having amino

21           acid sequences VPANEGD, VCEC and SGEVELSSV (RX 1015, p. 19, ll.

22           1-12).

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 40 of 74

Interference No. 105,240                                                    Page 39
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                   Paper 133

1   [86]   The '255 specification, unlike the later filed '536 (Figure 3), '852 (SEQ ID

2          NO:2), '036 (SEQ ID NO:2) and '045 (SEQ ID NO:2) applications, does

3          not provide a complete amino acid sequence for TRAIL-R2.

4   [87]   According to the '255 specification, antibodies or fragments thereof that

5          specifically bind to TRAIL-R2 may be obtained by conventional techniques

6          (RX 1015, p. 14, ll. 3-26).

7   [88]   Example 4 of the '255 specification is said to describe using conventional

8          monoclonal techniques and purified TRAIL-R2 immunogens to obtain

9          monoclonal antibodies that specifically bind to TRAIL-R2 (RX 1015, p. 19,

10         l. 28 - p. 20, l. 31).

11  [89]   According to Example 4 of the '255 specification, antibodies that bind

12         TRAIL-R2 may be detected by dot blot assay, enzyme-linked

13         immunosorbent assay or inhibition of TRAIL binding (RX 1016, p. 20, ll.

14         10-13).

15  [90]   Further according to the '255 specification,

16                 antibodies that additionally can block binding of
17                 TRAIL-R[2] to TRAIL may be used to inhibit a
18                 biological activity that results from such binding.  Such
19                 blocking antibodies may be identified using any
20                 suitable assay procedure, such as by testing
21                 antibodies for the ability to inhibit binding of TRAIL to
22                 cells expressing TRAIL-R[2].  Examples of such cells
23                 are the Jurkat cells and PS1 cells described in
24                 example 2 below.  Alternatively, blocking antibodies
25                 may be identified in assays for the ability to inhibit a
26                 biological effect that results from binding of TRAIL to
27                 target cells.  Antibodies may be assayed for the ability
28                 to inhibit TRAIL-mediated lysis of Jurkat cells, for
29                 example.  [RX 1015, p. 14, l. 30 - p. 15, l. 2, bracketed
30                 text added.]

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 41 of 74

Interference No. 105,240                                                                         Page 40
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                      Paper 133

1    [91]    Thus, the '255 specification describes an enabled embodiment within the

2            scope of Count 1, i.e., isolated antibodies/fragments which specifically

3            bind to Jurkat cell membranes and block binding of TRAIL ligand to

4            TRAIL-R2 receptor protein, wherein the TRAIL-R2 protein is characterized

5            as binding TRAIL, having a molecular weight of about 50 to 55 kD,

6            comprising the amino acid sequence VPANEGD, and obtained from

7            Jurkat cell membranes using the same method steps recited in claim 84 of

8            the '045 application (FF 83, 85 and 87-90).

9            Ni contends that Rauch's priority chain breaks at the '255 application

10    because it allegedly fails to show possession of an isolated, purified TRAIL-R2

11    protein. According to Ni, absent disclosure of a complete amino acid sequence

12    for TRAIL-R2 protein or a method of isolating TRAIL-R2 to homogeneity, the

13    '255 application fails to describe a fully characterized antigen that would enable

14    one of ordinary skill in the art to make antibodies that specifically bind to the

15    antigen.    See Noelle v. Lederman, 355 F.3d 1343, 1349, 69 USPQ2d 1508,

16    1514 (Fed. Cir. 2004) ("as long as an applicant has disclosed a 'fully

17    characterized antigen,' either by its structure, formula, chemical name, or

18    physical property, or by depositing the protein in a public depository, the

19    applicant can claim an antibody by its binding affinity to that described antigen"

20    (original emphasis)). Ni asserts that the antigen of the antibodies of Count 1 is

21    the ECD of TRAIL-R2 or an antigenic fragment thereof. [Paper 67, pp. 8-13 and

22    16-19.]

1    The '255 application does not provide a complete amino acid sequence for

2    a TRAIL-R2 protein (FF 86).  Thus, the crux of Ni's position is essentially that

3    Jurkat cells express multiple TRAIL-binding proteins and, therefore, processing

4    Jurkat cells according to the method of Example 1 of the '255 specification yields

5    a mixture of TRAIL-binding proteins and intracellular contaminants.  Ni notes that

6    the '255 specification characterizes TRAIL-R2 protein obtained from PS-1 cells

7    as containing amino acid sequences not found in TRAIL-R2.  Therefore, Ni

8    concludes that this mixture of TRAIL-binding proteins and contaminants would

9    not have enabled a skilled artisan to obtain and identify antibodies/fragments that

10   specifically bind to the ECD of TRAIL-R2 without undue experimentation.  [Paper

11   67, pp. 8-13 and 16-19.]

12   [92]  Ni relies on the direct testimony of Andrew D. Badley, M.D., F.R.C.P.

13         (C)/F.A.C.P. (NX 2122) in support of its position.

14   [93]  Dr. Badley has been qualified as an expert to give opinions on the

15         expression and purification of TRAIL receptors from human cells, including

16         Jurkat cells.

17   [94]  Dr. Badley testified that there are five currently known TRAIL-binding

18         proteins, i.e., TRAIL-R1, TRAIL-R2, TRAIL-R3, TRAIL-R4 and

19         osteoprotegerin ("OPG")[8] (NX 2122, ¶25).

20   [95]  Dr. Badley further testified that his own research and that of others have

21         shown both intracellular and cell surface expression of at least four of

---

[8] TRAIL-R1, TRAIL-R2, TRAIL-R3 and TRAIL-R4 are also referred to as DR4, DR5, DcR1 and
DcR2, respectively, in the literature, see e.g., NX 2122, ¶25.

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 43 of 74

Interference No. 105,240                                                    Page 42
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                   Paper 133

1    these receptors, i.e., TRAIL-R1, TRAIL-R2, TRAIL-R3 and TRAIL-R4, by

2    Jurkat cells (NX 2122, ¶26).

3    [96]  Thus, Dr. Badley opined that the method described in Example 1 of the

4    '255 specification would have likely resulted in a mixture of TRAIL-binding

5    proteins, rather that in an isolated, purified TRAIL-R2 protein (NX 2122,

6    ¶¶33-38).

7    [97]  According to Dr. Badley, TRAIL-R1, TRAIL-R2 and OPG all have similar

8    apparent molecular weights within the range of 50 to 55 kD (NX 2122,

9    ¶27).

10   [98]  Further according to Dr. Badley, it is now known that TRAIL-R2 protein

11   does not include the amino acid sequences VCEC and SGEVELSSV,

12   rather VCEC is found in another TRAIL-binding protein, OPG (NX 2122,

13   ¶31).

14   [99]  Still further according to Dr. Badley, without knowing the correct full length

15   amino acid sequence of TRAIL-R2, a skilled artisan would not have

16   realized that the VCEC and SGEVELSSV sequences were not part of

17   TRAIL-R2, but rather were the result of either contamination by other

18   proteins or sequencing error (NX 2122, ¶32).

19   [100] Dr. Badley stated that the original method of Maeda *et al.*, which was

20   modified by Rauch in its Example 1 of the '255 (and '861) applications,

21   yielded membrane preparations containing intracellular contaminants (NX

22   2122, ¶¶33-34).

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 44 of 74

Interference No. 105,240                                                    Page 43
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                  Paper 133

1    [101] Dr. Badley opined that, absent a purified TRAIL-R2 protein or its ECD, one

2        of ordinary skill in the art would not have been able to produce

3        antibodies/fragments that specifically bound to TRAIL-R2 or its ECD

4        without undue experimentation (NX 2122, ¶¶39-40).

5    [102] Dr. Badley also stated the amino acid sequence VPANEGD was located

6        within the intracellular domain of TRAIL-R2 and, therefore, could not be

7        used to produce antibodies that specifically bound to the ECD of TRAIL-

8        R2 (NX 2122, ¶41).

9    [103] However, Dr. Badley also testified that "[a]n antibody that specifically

10       binds to a TRAIL-R2 receptor in a Jurkat cell membrane and that blocks

11       binding of TRAIL ligand to TRAIL-R2 would bind to the extracellular

12       domain of TRAIL-R2" (NX 2122, ¶42).

13       In rebuttal, Rauch points out that the "fully characterized" antigen of the

14   antibodies of Count 1, as defined by Rauch claim 84, is a TRAIL-R2 protein with

15   a molecular weight of about 50-55 kD that binds TRAIL, contains the amino acid

16   sequence VPANEGD, is localized in the plasma membranes of Jurkat cells and

17   is isolated and purified according to steps a-g and that the '255 applications

18   describe and enable such an antigen (Paper 86, pp. 3 and 10-11). Rauch argues

19   that Count 1, as defined by Rauch claim 84, is limited to TRAIL-R2 obtained from

20   Jurkat cells and, therefore, partial amino acid sequences obtained from PS-1

21   cells are not relevant to the subject matter of the count, although the amino acid

22   sequence VPANEGD is common to TRAIL-R2 isolated from both Jurkat and PS-

23   1 cells (id., pp. 4-5). Moreover, Rauch contends that the preponderance of the

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 45 of 74

Interference No. 105,240                                                      Page 44
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                     Paper 133

1    evidence shows that Jurkat cells do not express TRAIL-R1, TRAIL-R4 or OPG

2    (*id.*, p. 6-9). Furthermore, Rauch notes that the molecular weights of TRAIL-R3

3    and TRAIL-R4 fall outside the 50-55 kD range recited in Count 1 (*id.*, pp. 6-7).

4    Rauch maintains that the preponderance of the evidence shows the membrane

5    preparations of Example 1 to be free of contaminants, particularly since the

6    method steps of Example 1 does not involve stimulation of Jurkat cells (*id.*, p. 9).

7    Finally, Rauch maintains that not only is 100% protein purity not required for

8    production of antibodies, but also it is questionable whether 100% purity of

9    anything can be achieved (*id.*, p. 11).

10   [104] Rauch relies on the direct testimony of Gavin R. Screaton, Ph.D. (RX

11          1074), in support of its position.

12   [105] Dr.Screaton has been qualified as an expert to give opinions on the TNFR

13          (tumor necrosis factor receptor) family of proteins, including cloning and

14          sequencing of TRAIL-R2 and generating antibodies against TRAIL-R1,

15          TRAIL-R2, TRAIL-R3 and TRAIL-R4 (RX 1074, ¶ 3).

16   [106] Dr. Screaton acknowledged the apparently conflicting results in the prior

17          art regarding which TRAIL-receptor protein(s) are expressed by Jurkat

18          cells (RX 1074, ¶¶11-13 and 16-23).

19   [107] Dr. Screaton stated that TRAIL-receptor protein expression by Jurkat cells

20          has been measured using a variety of techniques, including (1)

21          messenger RNA ("mRNA") detection by either reverse transcription

22          polymerase chain reaction ("RT-PCR") or RNase assay, (2) Western

23          blotting, (3) flow cytometry and (4) cell death assays (RX 1074, ¶17).

1  [108] Dr. Screaton explained that measurement of mRNA does not indicate that

2  a cell is actually expressing protein on its membrane because translation

3  of mRNA into protein expression and protein transport to the cell

4  membrane are not measured (RX 1074, ¶22).

5  [109] Dr. Badley agreed that determining mRNA is not always predictive of

6  protein (RX 1072, p. 114, ll. 13-15; p. 160, l. 19 - p. 161, l. 1).

7  [110] Dr. Screaton further explained that one had to be aware of cross-reactivity

8  issues when using antibody-based techniques, e.g., flow cytometry,

9  Western blotting and cell death induction assays, to detect the presence of

10  a TRIAL receptor protein on a Jurkat cell membrane (RX 1074, ¶¶18-21).

11  [111] In particular, Dr. Screaton testified that

12  [w]hen using antibodies to TRAIL receptors for flow
13  cytometry, Western blotting, or a death inducing
14  assay, one must be aware of cross-reactivity,
15  particularly when using polyclonal antibodies (R&D
16  Systems product specification sheet for anti-human
17  TRAIL R1/DR4/TNFRSF10A antibody (Exhibit 1086)).
18  Cross-reactivity to other TRAIL receptors is a
19  common occurrence among antibodies that bind a
20  particular TRAIL receptor (see, e.g., Daniels et al.,
21  Cell Research, vol. 15(6), 430-438 (2005) (Exhibit
22  1078); R&D Systems product specification sheet for
23  anti-human TRAIL R1/DR4/TNFRSF10A antibody
24  (Exhibit 1086); and Mühlenbeck et al., J. Biol. Chem.,
25  vol. 275(41), 32208-32213 (2000) (Exhibit 2144).
26  This cross-reactivity is due in large part to the
27  sequence similarity between TRAIL-R1, TRAIL-R2,
28  TRAIL-R3, and TRAIL-R4.  In other words, since
29  TRAIL-R1 and TRAIL-R2 share significant sequence
30  homology, antibodies that bind TRAIL-R1 can cross
31  react with TRAIL-R2 and generate a false positive for
32  the presence of TRAIL-R1.  Similarly, since TRAIL-R3
33  and TRAIL-R4 share significant sequence homology,
34  antibodies that bind TRAIL-R4 can cross react with
35  TRAIL-R3 (Daniels et al., Cell Research, vol. 15(6),
36  430-438 (2005) (Exhibit 1078)) and generate a false

1    positive result for the presence of TRAIL-R4.  Thus,
2    cross-reactivity likely explains why certain
3    investigators may have reported that Jurkat cells
4    express TRAIL-R1.  Those investigators that have
5    reported TRAIL-R1 expression typically did not
6    account for cross-reactivity and did not include
7    positive controls in their experiments.  [RX 1074, ¶21.]

[112]    During cross-examination, Dr. Badley testified that he had been told that

the anti-TRAIL receptor protein antibodies he used were not cross-

reactive, but if, for example, the TRAIL-R1 antibody was cross-reactive

with TRAIL-R2, he would question whether or not TRAIL-R1 is expressed

on Jurkat cells (see e.g., RX 1072, p. 115, l. 15 - p. 116, l. 18; p. 122, l. 16

- p. 123, l. 1; p. 130, l. 12 - p. 131, l. 6; p. 136, ll. 3-9; p. 150, ll. 6-12; p.

162, ll. 2-19; p. 186, l. 18 - p. 187, l. 2).

[113]    "[S]pecificity does not preclude cross-reactivity," according to Dr. Badley

(RX 1072, p. 132, ll. 13-18).

[114]    However, relying on Griffith (NX 2160[9]) and Matysiak (NX 2138[10]), Dr.

Badley is of the opinion that the anti-TRAIL-R1 monoclonal antibody M271

he used in his work has low, if any, cross-reactivity with TRAIL-R2 protein

(RX 1073, p. 290, l. 11 - p. 321, l. 1).

[115]    Griffith reported that monoclonal antibodies M271, M413, M431 and M445

were specific for TRAIL-R1, TRAIL-R2, TRAIL-R3 and TRAIL-R4,

respectively, and did not demonstrate cross-reactivity with the other three

---

[9] Griffith et al. (Griffith), "Functional Analysis of TRAIL Receptors Using Monoclonal
Antibodies," *The Journal of Immunology*, vol. 162, pp. 2597-2605 (1999) (NX 2160).
[10] Matysiak et al. (Matysiak), "TRAIL induces death of human oligodendrocytes isolated from
adult brain," *Brain*, vol. 125, pp. 2469-2480 (2002) (NX 2138).

1       TRAIL receptor proteins in experiments involving human melanoma cell

2       lines (NX 2160, p. 2599, col. 1, ¶1 and Figure 1A).

3   [116] Matysiak used flow cytometry to measure expression of TRAIL receptor

4       proteins on cell membranes using the monoclonal antibodies M271, M413,

5       M431 and M444 characterized by Griffith and found "the Jurkat cell line

6       expressed only TRAIL-R2 and a low level of TRAIL-R3 both on the cell

7       surface and intracellularly" (NX 2138, p. 2470, col. 1, ¶3; p. 2475, col. 1,

8       ¶2).

9   [117] Dr. Screaton testified that based on his own research, and consistent with

10      the work of others, including Matysiak (NX 2138), Jurkat cells express

11      TRAIL-R2 and TRAIL-R3, but not TRAIL-R1 or TRAIL-R4 (RX 1074, ¶¶11-

12      13).

13  [118] Dr. Screaton also testified that

14              [i]t is possible that different Jurkat cell lines express
15              different TRAIL receptors. However, all of the journal
16              articles discussed above that address the expression
17              of TRAIL receptors (TRAIL-R1, R2, R3 and R4) in
18              Jurkat cells conclude that Jurkat cells express TRAIL-
19              R2. One article (Jang et al., Cancer Letters, vol. 194,
20              107-117 (2003) (Exhibit 1076)) investigated the
21              differential expression of TRAIL receptors in 25
22              different Jurkat cell clones. Notably, this study found
23              no expression of TRAIL-R1 in any of the 25 clones.
24              Sprick et al., Immunity, vol. 12, 599-600 (2000)
25              (Exhibit 2137) examined several Jurkat cell lines and
26              concluded that TRAIL-R1 was not present in Jurkat
27              cells. [RX 1074, ¶23.]

28      To summarize the foregoing, as testified to by Dr. Badley, specificity and

29  cross-reactivity are distinct properties an antibody displays towards a given

30  antigen (FF 113). As testified to by Dr. Screaton, antibodies may cross-react

Case 1:07-cv-00780-SLR   Document 10-4   Filed 01/16/2008   Page 49 of 74

Interference No. 105,240                                                  Page 48
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                Paper 133

1    with related antigens sharing significant sequence homology (FF 111). Thus, if

2    an anti-X antibody was specific for X and cross-reactive with Y because X and Y

3    shared significant sequence homology and if anti-X antibody bound to a cell

4    expressing a protein on its surface, it would be questionable whether that protein

5    was X or Y (see e.g., FF 112). After consideration of the testimony of Dr.

6    Screaton and its supporting evidence, particularly Matysiak (NX 2138), Jang (RX

7    1076) and Sprick (NX 2137), and the issues potential antibody cross-reactivity

8    raises in evaluating results of TRAIL receptor protein expression by Jurkat cells

9    testified to by both Drs. Screaton and Badley, we find that Rauch has established

10   by a preponderance of the evidence that even if a mixture of TRAIL-binding

11   receptor proteins was obtained from Jurkat cell membranes processed by the

12   method of Example 1 of the '255 specification, that mixture would not include

13   TRAIL-R1 protein.

14   [119] Dr. Screaton also testified that TRAIL-R3 and TRAIL-R4 have

15        approximate molecular weights of 65 kD and 35 kD, respectively, and thus

16        would be separated from TRAIL-R2 having an approximate molecular

17        weight of 50-55 kD by SDS-PAGE electrophoresis (RX 1074, ¶14).

18        Thus, again in response to Ni's argument that the method of Example 1 of

19   the '255 specification would yield a mixture of TRAIL-binding proteins from Jurkat

20   cell membranes, Rauch has established by a preponderance of the evidence,

21   that said method would separate TRAIL-R3 and TRAIL-R4, assuming arguendo

22   that one or both were present, from TRAIL-R2 based on their respective

23   molecular weights.

1    [120] Dr. Screaton further testified that

2                      it has been suggested the purified protein resulting
3                      from the methods of Example 1 of the '861 and '255
4                      Applications could have been contaminated with OPG
5                      and/or procaspase 8. Contamination by either of
6                      these proteins is unlikely. First, OPG is a soluble
7                      receptor, which by definition would not be found in cell
8                      membranes. Second, the work of others has shown
9                      that OPG is not expressed in Jurkat cells (Yun *et al.,*
10                     *J. Immunol.* 161:6113-6121 (1998) (Exhibit 1083)).
11                     Even assuming that OPG is expressed in Jurkat cells,
12                     it is unlikely that OPG would have been present in
13                     isolated protein produced by the methods of Example
14                     1, since these methods utilized Jurkat cell membrane
15                     preparations. Procaspase 8 is a protein that binds to
16                     TRAIL-R2 when cells have been stimulated to induce
17                     apoptosis. Since the procedures of Example 1 do not
18                     involve stimulation of Jurkat cells, it is unlikely that
19                     procaspase 8 would have been present in the purified
20                     protein resulting from Example 1. [RX 1074, ¶25.]

21   [121] Genhong Cheng, Ph.D., a witness for Rauch who has been qualified as an

22       expert to give opinions on the subjects of signal transduction and gene

23       expression networks through the TNFR, Toll-like receptor (TLR) and Nod

24       receptor families during immune responses, also testified that "if purified

25       protein was the size of 50 to 55 kD and a membrane protein, then very

26       unlikely would it be OPG" (NX 2124, p. 48, ll. 17-19).

27           Again, assuming without deciding that the method of Example 1 of the

28       '255 specification resulted in a mixture of proteins, Rauch has established by a

29       preponderance of the evidence that neither OPG nor procaspase 8 would be

30       present in the mixture as contaminants because OPG is a soluble (not

31       membrane-bound) protein and because stimulated Jurkat cells were not used in

32       the method.

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 51 of 74

Interference No. 105,240                                                                Page 50
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                        Paper 133

1        Finally, the fact that Example 2 of the '255 specification recites three

2    tryptic fragments of a TRAIL-R2 protein isolated from PS-1 cells said to have

3    amino acid sequences VPANEGD, VCEC and SGEVELSSV (FF 86) is not

4    persuasive that the method of Example 1 of the '255 specification fails to yield an

5    isolated, purified TRAIL-R2 protein having a molecular weight in the range of 50-

6    55 kD and a partial amino acid sequence of VPANEGD.  First, the partial amino

7    acid sequence VPANEGD was said to be found in the protein isolated from

8    Jurkat cell membranes (as recited in the Rauch claim 84 alternative of Count 1),

9    whereas the partial amino acid sequences VPANEGD, VCEC and SGEVELSSV

10   were said to be found in the protein isolated from PS-1 cells (outside the Rauch

11   claim 84 alternative of Count 1).

12   [122] Moreover, according to Dr. Screaton, one of ordinary skill in the art would

13          have been confident that TRAIL-R2 comprised the VPANEGD sequence

14          given that it was found in two different cell lines (RX 1074, ¶7).

15   [123] Dr. Badley also indicated that one of ordinary skill in the art would have

16          been fairly confident that the VPANEGD was present in TRAIL-R2 based

17          on the proteins isolated from Jurkat cells and PS-1 cells (RX 1072, p. 90, l.

18          1 - p. 91, l. 1).

19   [124] In addition, Dr. Screaton testified that the SGEVELSSV sequence is very

20          similar to a portion of the TRAIL-R2 amino acid sequence and is most

21          likely the result of a sequencing error and that the VCEC sequence is too

22          short of a sequence to be meaningful (RX 1074, ¶7).

Case 1:07-cv-00780-SLR   Document 10-4   Filed 01/16/2008   Page 52 of 74

Interference No. 105,240                                    Page 51
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)   Paper 133

1    [125] Dr. Cheng also testified that he felt SGEVELSSV and VCEC might be

2          sequencing errors because they were not commonly found in both Jurkat

3          and PS-1 cells (NX 2124, p. 47, ll. 10-24).

4          In summary, based on the foregoing, we find that method of Example 1 of

5    the '255 specification together with a molecular weight range of about 50-55 kD

6    as determined by SDS-PAGE and a partial amino acid sequence of VPANEGD is

7    sufficient to fully characterize and show possession of an isolated and purified

8    TRAIL-R2 protein and, thereby, describe and enable isolated

9    antibodies/fragments which (a) specifically bind the TRAIL-R2 protein, (b)

10   specifically bind Jurkat cell membranes (on which is expressed TRAIL-R2) and

11   (c) are chosen to block binding of TRAIL to the TRAIL-R2 protein.  In short, we

12   find that the '255 application describes an enabled embodiment within the Rauch

13   claim 84 alternative of Count 1.

14        **E.    The '861 application (RX 1014)**

15   [126] Example 1 of the '861 specification is said to describe isolating and

16         purifying human TRAIL-R2 receptor protein having a molecular weight of

17         about 52 kD from the membranes of Jurkat cells using the same method

18         steps recited in claim 84 of the '045 specification (RX 1014, p. 2, ll. 3-6; p.

19         15, l. 26 - p. 18, l. 5).

20   [127] Example 2 of the '861 specification is said to describe a tryptic fragment of

21         the TRAIL-R2 protein of Example 1 obtained from Jurkat cell membranes

22         as having the amino acid sequence VPANEGD (i.e., amino acids 327-333

23         of SEQ ID NO:2 of the '045 application) (RX 1014, p. 18, ll. 9-15).

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 53 of 74

Interference No. 105,240                                                    Page 52
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                  Paper 133

1    [128] According to Example 2 of the '861 specification, three tryptic fragments of

2         a TRAIL-R2 protein isolated from PS-1 cells using the method of Example

3         1 were said to contain the amino acid sequences VPANEGD, VCEC and

4         SGEVELSSV (RX 1014, p. 18, ll. 17-31).

5    [129] The '861 application, like the '255 application but unlike the '536 (Figure

6         3), '852 (SEQ ID NO:2), '036 (SEQ ID NO:2) and '045 (SEQ ID NO:2)

7         applications, does not provide a complete amino acid sequence for

8         TRAIL-R2.

9    [130] According to the '861 specification, antibodies or fragments thereof that

10        specifically bind to TRAIL-R2 may be obtained by conventional techniques

11        (RX 1014, p. 13, l. 22 - p. 14, l. 9).

12   [131] Example 3 of the '861 specification is said to describe using conventional

13        monoclonal antibody techniques and purified TRAIL-R2 immunogens to

14        obtain monoclonal antibodies that specifically bind to TRAIL-R2 (RX 1014,

15        p. 18, l. 34 - p. 19, l. 31).

16   [132] According to Example 3 of the '861 specification, antibodies that bind

17        TRAIL-R2 may be detected by dot blot assay, enzyme-linked

18        immunosorbent assay or inhibition of TRAIL binding (RX 1014, p. 19, ll.

19        10-13).

20   [133] In particular, according to the '861 specification,
21            antibodies that additionally can block binding of
22            TRAIL-R[2] to TRAIL may be used to inhibit a
23            biological activity that results from such binding. Such
24            blocking antibodies may be identified using any
25            suitable assay procedure, such as by testing
26            antibodies for the ability to inhibit binding of TRAIL to
27            cells expressing TRAIL-R[2]. Examples of such cells

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 54 of 74

Interference No. 105,240                                                    Page 53
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                  Paper 133

1    are the Jurkat cells and PS1 cells described in
2    example 2 below. Alternatively, blocking antibodies
3    may be identified in assays for the ability to inhibit a
4    biological effect that results from binding of TRAIL to
5    target cells. Antibodies may be assayed for the ability
6    to inhibit TRAIL-mediated lysis of Jurkat cells, for
7    example. [RX 1014, p. 14, ll. 13-21, bracketed text
8    added.]

9    [134] Thus, the '861 application describes an enabled embodiment within the

10   scope of Count 1, i.e., isolated antibodies/fragments which specifically

11   bind to Jurkat cell membranes and block binding of TRAIL ligand to a

12   TRAIL-R2 protein, wherein the TRAIL-R2 protein is characterized as

13   binding TRAIL, having a molecular weight of about 50 to 55 kD,

14   comprising the amino acid sequence VPANEGD, and obtained from

15   Jurkat cell membranes using the same method steps recited in claim 84 of

16   the '045 application (FF 126-127 and 130-134).

17        Ni contends that the '861 application fails to provide a constructive

18   reduction to practice of the subject matter of Count 1 for the same reasons set

19   forth above in regard to the '255 application, i.e., because it allegedly fails to

20   show possession of an isolated, purified TRAIL-R2 protein (Paper 67, pp. 8-13

21   and 16-19). Therefore, for the same reasons that the '255 application describes

22   an enabled embodiment within the scope of Count 1 (as defined in the alternative

23   by Rauch '045 application claim 84), the '861 application also describes an

24   enable embodiment within the scope of Count 1 (as defined in the alternative by

25   Rauch '045 application claim 84). See § IX.D. supra.

26   **F.    Summary**

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 55 of 74

Interference No. 105,240                                                    Page 54
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                  Paper 133

1    In summary, Rauch motion 3 is **granted** and Rauch is accorded benefit for

2    the purpose of priority of (1) the 26 June 1997 filing date of the '036 application,

3    (2) the 4 June 1997 filing date of the '852 application, (3) the 28 March 1997 filing

4    date of the '536 application, (4) the 12 March 1997 filing date of the '255

5    application and (5) the 13 February 1997 filing date of the '861 application as to

6    the subject matter of Count 1.

7    **X.    Rauch Motion 6**

8         Pursuant to 37 CFR § 41.121(a)(1)(iii), Rauch moves for judgment that all

9    of Ni's involved '568 patent claims, i.e., claims 1-6, 8-19, 21-32, 34-45 and 47-52,

10   are unpatentable under 35 U.S.C. §§ 102(a), 102(e) and/or 103 over one or more

11   of U.S. Patent 6,072,047 ("the '047 patent," RX 1018); WO 98/35986 ("WO '986,"

12   RX 1032); U.S. Patent 6,569,642 ("the '642 patent," RX 1008); and, U.S. Patent

13   6,642,358 ("the '358 patent," RX 1012) (collectively, "the Rauch references)

14   (Paper 49, pp. 1 and 3). According to Rauch, the Rauch references "describe

15   and enable antibodies which specifically bind to the extracellular domain of TR-2

16   as recited in independent claims 1, 15, 27 and 41, and because the additional

17   limitations of the dependent claims are disclosed and/or obvious over the

18   references" (Paper 49, p. 3).[11]  Ni opposes (Paper 70); Rauch replies (Paper 89).

19   [135] According to the '358 patent, it issued 4 November 2003 based on

20        application 09/578,392, filed 25 May 2000, which is a divisional of

---

[11] In an ORDER issued 29 November 2005 (Paper 38), the parties were authorized to limit
discussion to the independent claims in motions asserting the claims of the opponent are
unpatentable over the prior art with the exception that dependent claims which further limit the
core inventive features should also be discussed in the motion. The remaining dependent claims
are presumed to stand or fall with claims from which they depend. However, the claim charts
must still address all claims at issue.

1   application 08/883,036, filed 26 June 1997, which is a continuation-in-part

2   of application 08/869,852, filed 4 June 1997, which is a continuation-in-

3   part of application 08/829,536, filed 28 March 1997, which is a

4   continuation-in-part of application 08/815,255, filed 12 March 1997, which

5   is a continuation-in-part of application 08/799,861, filed 13 February 1997

6   (RX 1012, title page).

7   [136] According to the '047 patent, it issued 6 June 2000 based on application

8   08/883,036, filed 26 June 1997, which is a continuation-in-part of

9   application 08/869,852, filed 4 June 1997, which is a continuation-in-part

10  of application 08/829,536, filed 28 March 1997, which is a continuation-in-

11  part of application 08/815,255, filed 12 March 1997, which is a

12  continuation-in-part of application 08/799,861, filed 13 February 1997 (RX

13  1018, p. 186).

14  [137] According to the '642 patent, it issued 27 May 2003 based on application

15  09/536,201, filed 27 March 2000, which is a continuation of application

16  08/883,036, filed 26 June 1997, which is a continuation-in-part of

17  application 08/869,852, filed 4 June 1997, which is a continuation-in-part

18  of application 08/829,536, filed 28 March 1997, which is a continuation-in-

19  part of application 08/815,255, filed 12 March 1997, which is a

20  continuation-in-part of application 08/799,861, filed 13 February 1997 (RX

21  1008, title page).

22  [138] WO '986 published 20 August 1998, based on international application

23  PCT/US98/02239, filed 11 February 1998 (RX 1032, title page).

1          According to the relevant paragraphs of 35 U.S.C. § 102:

2                  [a] person shall be entitled to a patent unless --

3                          (a)  the invention was known or used by others
4                  in this country, or patented or described in a printed
5                  publication in this or a foreign country before the
6                  invention thereof by the applicant for patent, or

7                                     * * * * * *

8                          (e)  the invention was described in (1) an
9                  application for a patent, published under section
10                 122(b), by another filed in the United States before
11                 the invention by the applicant for patent or (2) a
12                 patent granted on an application for patent by another
13                 filed in the United States before the invention by the
14                 applicant for patent, except that an international
15                 application filed under the treaty defined in section
16                 351(a) shall have the effects for the purpose of this
17                 subsection of an application filed in the United States
18                 only if the international application designated the
19                 United States and was published under Article 21(2)
20                 of such treaty in the English language, or

21                                    * * * * * *.

22         References based on international applications that were filed prior to 29

23    November 2000 are subject to the former version of 35 U.S.C. § 102(e),[12] i.e.,

24                 [a] person shall be entitled to a patent unless --

25                         (e)  the invention was described in a patent
26                 granted on an application for patent by another filed in
27                 the United States before the invention thereof by the
28                 applicant for patent, or on an international application
29                 by another who has fulfilled the requirements of
30                 paragraphs (1), (2), and (4) of section 371(c) of this
31                 title before the invention thereof by the applicant for
32                 patent.

33         A *prima facie* case is made out under § 102(a) if, within a year of the filing

34    date, the invention, or an obvious variant thereof, is described in a "printed

---

[12] Pursuant to § 13205 of Pub. L. 107-273.

1    publication" whose authorship differs from the inventive entity unless it is stated

2    within the publication itself that the publication is describing the applicant's work.

3    *In re Katz*, 687 F.2d 450, 215 USPQ 14 (CCPA 1982).

4    [139] None of the Rauch references issued or published prior to the 17 March

5           1998 filing date of Ni claims 1-6, 8-19, 21-32, 34-45 and 47-52.[13]

6    [140] None of the Rauch references qualify as prior art under § 102(a) vis-à-vis

7           Ni claims 1-6, 8-19, 21-32, 34-45 and 47-52.

8           Therefore, to the extent Rauch motion 6 seeks a judgment that any of Ni

9    claims 1-6, 8-19, 21-32, 34-45 and 47-52 are unpatentable under § 102(a) as

10   anticipated by any of the Rauch references, the motion is **denied**.  We now

11   consider whether any of the Rauch references qualify as prior art under § 102(e).

12          WO '986 is based on an international application filed prior to 29

13   November 2000 (FF 138).  Therefore, it must satisfy the requirements of the then

14   applicable former § 102(e) to qualify as prior art thereunder.[14]  Rauch has neither

15   argued nor shown that WO '986 satisfies the requirements of the former § 102(e)

16   (see Paper 49, pp. 18-19).  Thus, Rauch has failed to establish that WO '986

17   qualifies as prior art under the applicable § 102(e) vis-à-vis Ni's involved '568

18   patent claims.  Consequently, to the extent Rauch motion 6 seeks a judgment

19   that any of Ni claims 1-6, 8-19, 21-32, 34-45 and 47-52 are unpatentable under

20   § 102(e) as anticipated by WO '986, the motion is **denied**.

---

[13] Rauch has not argued prior knowledge or use of the subject matter of any of Ni's involved '568 patent claims.

[14] In its motion, Rauch argues that WO '986 is entitled to the 11 February 1998 filing date of its underlying international application as its effective filing date (Paper 49, pp. 18-19).

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 59 of 74

Interference No. 105,240                                                Page 58
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)              Paper 133

1    As indicated above (FF 135-137), the '358, '047 and '642 patents are

2    related. The '047 patent issued based on application 08/883,036. The '358 and

3    '642 patents issued based on applications said to a divisional and a continuation-

4    in-part, respectively, of application 08/883,036. Application 08/883,036 was filed

5    26 June 1997, prior to the 17 March 1998 filing date of Ni's involved claims and,

6    therefore, *prima facie* qualifies as prior art under § 102(e) vis-à-vis Ni's involved

7    claims. Accordingly, if Ni's involved claims are anticipated and/or obvious over

8    the '047 patent, it is not necessary to consider whether the claims are anticipated

9    and/or obvious over the '358 or '642 patent.

10    [141] Four of Ni's '568 patent claims are independent claims, i.e., claims 1, 15,

11        27 and 41.

12    [142] Ni claim 1 reads:

13            An isolated antibody or fragment thereof that
14            specifically binds to a protein consisting of amino acid
15            residues 1 to 133 of SEQ ID NO:2.

16    [143] Ni claim 27 reads:

17            An isolated antibody or fragment thereof that
18            specifically binds to the extracellular domain of the
19            protein encoded by the cDNA contained in ATCC
20            Deposit No. 97920.

21    [144] Independent Ni claims 15 and 41 bind the same antigen as recited in

22        claims 1 and 27, respectively, but limit the antibody to a "monoclonal."

23        Amino acid residues 1 to 133 of SEQ ID NO:2 of the '568

24    patent are said to represent the ECD of DR5 (FF 11).

25    [145] According to the '568 patent, the ECD of the protein encoded

26        by the cDNA contained in ATCC Deposit No. 97920

1     constitutes SEQ ID NO:2 amino acid residues from about 1

2     to about 133, wherein "about" denotes values larger or

3     smaller by 1, 2, 3, 4 or 5 residues (NX 2004, col. 2, ll. 58-60;

4     col. 4, ll. 57-60; col. 7, ll. 10-14; c. 23, ll. 63-66).

5     [146] Rauch's 047 patent discloses a TRAIL-binding protein said to contain a

6     death domain, induce apoptosis and have the 440 amino acid sequence

7     shown in SEQ ID NO:2 (RX 1018, p. 190, col. 1, ll. 57-67 and col. 2, ll. 32-

8     34; p. 203, col. 28, ll. 24-27; p. 204, col. 29, ll. 14-15; pp. 206-207, cols.

9     33-36).

10    [147] Amino acid residues 1 to 440 of SEQ ID NO:2 of Rauch's '047 patent

11    (TRAIL-R2) are identical to amino acid residues -51 to 360 of SEQ ID

12    NO:2 of Ni's '568 patent (DR5) except for the inclusion of additional

13    residues 185 to 213 (RX 1018, pp. 206-207 and NX 2003, cols. 141-143).

14    [148] Rauch's '047 patent predicts that the ECD of TRAIL-R2 extends from

15    about amino acid residue 52 to about amino acid residue 210 (RX 1018, p.

16    190, col. 2, ll. 51-57; p. 191, col. 4, ll. 52-61; p. 192, col. 5, ll. 54-62).

17    [149] Amino acid residues 52 to 184 of SEQ ID NO:2 of Rauch's '047 patent are

18    identical to amino acid residues 1 to 133 of SEQ ID NO:2 of Ni's 568

19    patent (RX 1018, pp. 206-207 and NX 2004, cols. 141-143).

20    [150] Thus, the ECD of TRAIL-R2 contains about an additional 26 amino acid

21    residues (i.e., residues 185 to 210 of SEQ ID NO:2 of the '047 patent) than

22    the ECD of DR5.

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 61 of 74

Interference No. 105,240                                                          Page 60
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                         Paper 133

1      Rauch essentially argues that any antibody that binds the ECD of DR5 will

2   bind the ECD of TRAIL-R2 as well and, therefore, independent claims 1, 15, 27

3   and 41 of Ni's '568 patent are anticipated by the disclosure of the Rauch '047

4   patent (Paper 49, p. 13, ¶2).  However, the issue is whether any antibody that

5   binds the ECD of TRAIL-R2, as described in the '047 patent, necessarily binds

6   the ECD of DR5.  The ECD of TRAIL-R2 as described in the '047 patent

7   essentially consists of the 133 amino acids which define the ECD of DR5 *plus*

8   approximately 26 additional amino acid residues (FF 148-150).  Thus, an anti-

9   ECD antibody as described by the '047 patent might specifically bind to a

10  common epitope[15] within the ECDs of TRAIL-R2 and DR5, e.g., an epitope found

11  within residues 52 to 184 of SEQ ID NO:2 of the '047 patent or within residues 1

12  to 133 of SEQ ID NO:2 of the '568 patent, or to an epitope not present in the

13  ECD of DR5, e.g., an epitope found within TRAIL-R2 residues 185 to 210 of SEQ

14  ID NO:2 of the '047 patent.  Rauch has not pointed to where the '047 patent

15  describes an antibody that specifically binds to an epitope within residues 52 to

16  184 of its SEQ ID NO:2 (i.e., within the ECD of DR5).  Rauch has not pointed to

17  evidence of record showing that an antibody that specifically binds the ECD of

18  TRAIL-R2 always and necessarily binds an epitope within residues 52 to 184, but

19  not within residues 185-210, of its SEQ ID NO:2.

20      Anticipation requires that "each and every element as set forth in the claim

21  is found, either expressly or inherently described, in a single prior art reference."

22  *Verdegaal Bros., Inc. v. Union Oil Co.*, 814 F.2d 628, 631, 2 USPQ2d 1051, 1053

23  (Fed. Cir. 1987).  The doctrine of inherency may not be used to establish

---

[15] An epitope is the portion of an antigen that is recognized by a specific antibody.

1    anticipation unless a prior inherency can be established as a certainty.

2    Probabilities or possibilities will not suffice to establish an inherent event.

3    *Continental Can Co. U.S.A., Inc. v. Monsanto, Co.*, 948 F.2d 1264, 1269, 10

4    USPQ2d 1746, 1749 (Fed. Cir. 1991).  Rauch has not established that the '047

5    patent describes, either expressly or inherently, an antibody that specifically

6    binds the ECD of DR5 as required by each of Ni's independent claims, i.e.,

7    claims 1, 15, 27 and 41.  Therefore, we find that Ni's independent claims 1, 15,

8    27 and 41, and claims 2-6, 8-14, 16-19, 21-26, 28-32, 34-40, 42-45 and 47-52

9    dependent thereon, are not anticipated under § 102(e) by the '047 patent.

10   *Hartness International, Inc. v. Simplimatic Engineering Co.*, 819 F.2d 1100, 1108,

11   2 USPQ2d 1826, 1831 (Fed. Cir. 1987) (a dependent claim is nonobvious (and

12   novel) if the independent claim from which it depends is nonobvious); *Minnesota*

13   *Minning & Manufacturing Co. v. North American Science Associates Inc.*, 55

14   USPQ2d 1348, 1350 (D. Minn. 2000) ("If an independent claim . . . is not

15   anticipated, then none of the claims depending from that claim are anticipated.").

16          We next consider whether Ni claims 1-6, 8-19, 21-32, 34-45 and 47-52,

17   are anticipated under § 102(e) by either of Rauch's '642 or '358 patents.  Rauch

18   reiterates its arguments made above in regard to the '047 patent as to both of

19   these patents.  For example,

20                 The Rauch '642 Patent discloses the same 440
21          amino acid TRAIL-R as the Rauch '047 Patent with
22          the same predicted extracellular domain.  Like the
23          Rauch '047 Patent, the Rauch '642 Patent discloses
24          monoclonal antibodies that bind the extracellular
25          domain of TRAIL-R.

1    . . .For the same reasons set forth above with
2    regards to the Rauch '047 Patent, the Rauch '642
3    Patent expressly or inherently anticipates claims 1-6,
4    8-19, 21-32, 34-45, and 47-52 of the Ni '568 Patent.
5    [Paper 49, pp. 19-20, citation to material facts
6    omitted.]

7    (See Paper 49, p. 21 for the analogous arguments for the '358 patent.)

8    For the same reasons given above in regard to the '047 patent, we find

9    that Ni claims 1-6, 8-19, 21-32, 34-45 and 47-52 are not anticipated under

10   § 102(e) by either the '642 or '358 patent.

11   Rauch has not argued that any of Ni claims 1-6, 8-19, 21-32, 34-45 and

12   47-52 are unpatentable under § 103(a) over any of the Rauch references.

13   Based on the foregoing, Rauch motion 6 is **denied**.

14   **XI.    Ni Motion 7 to Exclude Evidence**

15   Pursuant to 37 CFR § 41.155(c), Ni seeks to exclude from evidence:

16   (a)  exhibits related to Rauch's priority statement (RX 1025 and RX 1038);

17   (b) declaration (RX 1074) and deposition (NX 2179-2181) testimony of Dr.

18   Screaton; (c) declaration testimony of Mr. Boiani (RX 1075); and, (d) part of the

19   deposition testimony of Dr. Cheng (NX 2124, p. 132, l. 16 - p. 135, l. 5; p. 135, l.

20   9 - p. 136, l. 13) (Paper 113).  Rauch opposes (Paper 110); Ni replies (Paper

21   118).

22   Ni contends (Paper 113, pp. 16-17) that

23   RX 1025 and RX 1038 should be excluded under
24   FRE 901 for lack of authentication and lack of
25   foundation.  In addition, RX 1025 and RX 1038 should
26   be excluded under FRE 1001 (4), 1002, and 1003,
27   *inter alia*, because neither appear to be an original nor
28   an admissible duplicate of the original gels.
29   Furthermore, RX 1025 and RX 1038 should be
30   excluded under FRE 403, *inter alia*, because its

Interference No. 105,240
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)

Page 63
Paper 133

1   probative value, if any, is outweighed by
2   considerations of waste of time due to the poor quality
3   and unclear meaning of either RX 1025 and RX 1038.

4   Furthermore, RX 1074, the declaration of Dr.
5   Gavin R. Screaton, should be excluded under FRE
6   403 because its probative value, if any, is far
7   outweighed by confusion of the issues.  In addition,
8   RX 1074 should be excluded under 37 C.F.R. §
9   41.122(b) because the declaration does not respond
10  to arguments raised in an opposition but merely is an
11  attempt by Rauch to make additional arguments in a
12  reply that should have been raised in a motion.
13  Furthermore, contingent upon the Board excluding RX
14  1074, Party Ni moves to exclude NX 2179, NX 2180
15  and NX 2181 as being irrelevant under FRE 401 and
16  confusing the issues under FRE 403.

17  In addition, Party Ni moves to exclude RX
18  1075, the Declaration of Norman Boiani, under FRE
19  1002 because Exhibit A appears to be a photocopy,
20  not an original, of a laboratory notebook page.
21  Furthermore, Party Ni moves to exclude RX 1075
22  under FRE 403 because Exhibit A of RX 1075 is
23  taken out of context of the rest of the laboratory
24  notebook.  Party Ni's inability to determine the context
25  of Exhibit A is unfairly prejudicial and this prejudice far
26  outweighs any probative value of RX 1075.

27  Lastly, the above-cited portions of NX 2124
28  should be excluded under FRE 611(c), FRE 403, and
29  Cross Examination Guideline [3] of the Standing
30  Order.  The leading questions asked by Rauch's
31  counsel clearly suggested single answers to the
32  witness which resulted in the interjections of the
33  opinions of counsel for Rauch in place of Dr. Cheng's
34  opinions.  Clearly the prejudicial effect of such
35  testimony far outweighs its probative value, and the
36  above-cited evidence should be excluded or, at most,
37  accorded little weight by the Board.

38  We begin by addressing the exhibits related to Rauch's priority statement.

Case 1:07-cv-00780-SLR   Document 10-4   Filed 01/16/2008   Page 65 of 74

Interference No. 105,240                                                    Page 64
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                  Paper 133

1    [151] Exhibit 1025 is identified in Rauch's exhibit list as documents on which

2         Rauch will rely to prove earliest corroborated conception of the invention

3         defined by Count 1 (Paper 99, p. 4).

4    [152] Exhibit 1038 is identified in Rauch's exhibit list as high resolution copies of

5         documents on which Rauch will rely to prove earliest corroborated

6         conception of the invention defined by Count 1 (Paper 99, p. 5).

7         According to 37 CFR § 41.204(a)(2)(iv), a party filing a preliminary

8    statement must "[p]rovide a copy of the earliest document upon which the party

9    will rely to show conception." Exhibits 1025 and 1038 were submitted by Rauch

10   in fulfillment of that requirement (FF 151 and 152). Ni does not contend that

11   Rauch has relied upon either RX 1025 or RX 1038 in support of any of Rauch's

12   motion papers. The time for Rauch to lay a foundation for and authenticate its

13   exhibits RX 1025 and RX 1038 is when Rauch relies upon the exhibits, i.e., as

14   part of its priority motion. The time for us to weigh the reliability and probative

15   value of RX 1025 and RX 1038 is when they are submitted into evidence as part

16   of Rauch's priority motion when the motion is filed. Therefore, Ni motion 7 is

17   **denied** as to exhibits RX 1025 and 1038.

18        Turning to procedural matters, 37 CFR § 41.155(b) requires any objection

19   to evidence (other than deposition) to be filed within five business days of service

20   of the evidence (other than deposition) to which the objection is directed. Section

21   155(c) requires a motion to exclude evidence to explain the objections and

22   identify the objections in the record in order. As explained in Standing Order

23   ¶21.3(a), a motion to exclude evidence must (1) identify where in the record the

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 66 of 74

Interference No. 105,240                                                                    Page 65
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                                   Paper 133

1    objection was originally made, (2) identify where in the record the evidence was

2    relied upon by the opponent and (3) address objections to exhibits (in whole or in

3    part) in exhibit numerical order (Paper 2, p. 17). According to Standing Order

4    ¶21.1, the objection to the admissibility of evidence should be filed as part of a

5    motion to exclude the evidence (Paper 2, p. 16).

6        Ni contends that it timely objected to all of the exhibits it seeks to exclude.

7    [153] Exhibit 1074 was served on Ni on 21 April 2006 (Paper 99, p. 10).

8        According to Ni, it objected to RX 1074 (the declaration of Dr. Screaton) in

9    a conference call to the Board on 4 May 2006 (Paper 113, p. 5). However, a

10   "conference call objection" is not a written objection served on Rauch within five

11   business days of service of the exhibit. Furthermore, Ni has not provided

12   evidence that it timely objected to NX 2179, NX 2180 and NX 2181. Therefore,

13   Ni miscellaneous 7 is **denied** as to RX 1074, NX 2179, NX 2180 and NX 2181.

14       Ni states that RX 1075 (the declaration of Mr. Boiani) was relied upon by

15   Rauch in Rauch replies 2 and 4 (Paper 113, p. 6). Rauch motions 2 and 4, as

16   discussed in § VI. above, were denied because Rauch failed to meet its initial

17   burden of establishing that it was entitled to the relief requested. Consequently,

18   we did not reach either Rauch reply 2 or reply 4. Therefore, Ni miscellaneous

19   motion 7 is **denied** as to RX 1075.

20       The last evidence that Ni seeks to exclude is selected portions of the

21   deposition testimony of Dr. Cheng (NX 2124, p. 132, l. 16 - p. 135, l. 5; p. 135, l.

22   9 - p. 136, l. 13) (Paper 113, p. 6). According to Ni, "Party Rauch relied on NX

23   2124 in Rauch Reply 3" (Paper 113, p. 6). Ni contends that counsel for Rauch

1   asked Dr. Cheng leading questions, thereby blurring the line between Rauch's

2   opinions and those of Dr. Cheng in violation of FRE 611(c), FRE 403 and Cross

3   Examination Guideline [3] of the Standing Order (Paper 113, pp. 12-17).

4   [154] The first objected to portion of Dr. Cheng's testimony relates to his earlier

5        answer to a non-leading question posed by Ni's counsel, i.e., does Dr.

6        Cheng know which part of a patent application is its specification and

7        which part is its claims (NX 2124, p. 132, l. 16 - p. 135).

8   [155] The second objected to portion of Dr. Cheng's testimony asks him to

9        identify where the *specification* of the '861 application (RX 1014)

10       discusses anti-TRAIL-R2 antibodies (NX 135, l. 9 - p. 136, l. 13).

11       First, Ni has not explained where and how Rauch relied upon the two

12  objected to portions of Dr. Cheng's testimony in Rauch reply 3 to support its

13  position.  Simply stating that Rauch relied on NX 2124 in Rauch reply 3 does not

14  identify where in the record the objected to evidence was relied upon by Rauch.

15  Rauch may well have relied on other, non-objected to portions of Dr. Cheng's

16  deposition testimony in support of its position in Rauch reply 3.  And we have not

17  relied on the objected to portions in our decision.

18       .  Ni expressly directs our attention to the second objected to portion of Dr.

19  Cheng's testimony (Paper 113, pp. 12-13).

20  [156] The second objected to portion of Dr. Cheng's redirect testimony reads:

21       MR. WISE:  Okay.  Back on the record.

22       Q.  I want to have you focus on paragraph 10 [of your
23       declaration, RX 1022].  Paragraph 10 you said, "The
24       specification of the '861 application also contains additional
25       substantial disclosure regarding antibodies to TRAIL-R,

Interference No. 105,240
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)

Page 67
Paper 133

1   including methods for obtaining these antibodies and
2   methods of obtaining antigen binding fragments of these
3   antibodies.

4   And it says "'861 application, page 13, line 14 to page 15,
5   line 6."

6   Where in the specification of the '861 application would you
7   find additional substantial disclosure relating to the
8   antibodies of TRAIL-R?

9   A. You mean where I can find the information?

10   Q. Yes.

11   A. That's indicated here is the page 13 and the line 14 to 15,
12   line 14 through page 15 of line 6.

13   Q. Okay. Can you direct me to that, please.

14   A. Where is the --

15   Q. You have that there. You were looking at the claims and
16   you were going to show me support and specification.

17   MR. GOLDSTEIN:   Objection.

18   THE WITNESS:  So it's indeed in the page is 13, there is a
19   title, "Antibodies" section, and talking about how antibody
20   generated, including the monoclonal and polyclone
21   antibodies.

22   MR. GOLDSTEIN:  I am going to move to strike the question
23   and the answer.

24   [NX 2124, p. 135, l. 9 - p. 136, l. 13, bracketed text added.]

25       Ni's objection is improper because it fails to explain the legal basis of the

26   rejection.  37 CFR § 41.155(c).  Standing Order, Cross Examination Guideline [3]

27   (Paper 2, p. 29).  An adequate explanation is necessary to allow the party relying

28   on the evidence to cure the alleged problem.  37 CFR § 41.155(b)(2).

29       Therefore, Ni motion 7 is **denied** as to NX 2124 at page 132, line 16

30   through page 135, line 5 and page 135, line 9 through page 136, line 13.

1        Ni motion 7 to exclude exhibits RX 1025, RX 1038, RX 1074, RX 1075,

2    NX 2124 (p. 132, l. 16 - p. 135, l. 5; p. 135, l. 9 - p. 136, l. 13), NX 2179, NX 2180

3    and NX 2181 is **denied**.

4    **XII.    Rauch Motion 8 to Exclude Evidence**

5        Pursuant to 37 CFR § 41.155(c), Rauch seeks to exclude from evidence:

6        (1)  paragraphs 16, 21-28, 30-43, 45-46, 48 and 50-52 of the direct

7    testimony of Dr. Reed (NX 2057);

8        (2) (a) page 160, line 7 to page 161, line 7, (b) page 169, lines 2-21, and

9    (c) page 172, line 16 to page 173, line 13 of the deposition testimony of Dr. Reed

10   (NX 2123); and,

11       (3)  paragraphs 26-27, 31-32 and 34-40 of the direct testimony of Dr.

12   Badley (NX 2122 (represented as NX 2158 with corrections[16])).  Ni opposes

13   (Paper 108); Rauch replies (Paper 119).

14       Rauch seeks to exclude selected portions of the direct testimony of Dr.

15   Reed that reference a person of ordinary skill in the art (NX 2057, ¶¶16, 21-28,

16   30-43, 45-46, 48 and 50-52) (Paper 97, p. 1, ¶1), contending that his definition of

17   one of ordinary skill "is so broad that it fails to limit 'one of ordinary skill in the art'

18   to any substantive or realistic meaning of such person" (Paper 97, p. 5, ¶2).

19   Specifically, Rauch objects to the selected portions of Dr. Reed's direct testimony

20   which reference Dr. Reed's definition of one of ordinary skill in the art as

---

[16] This decision refers to the originally presented Declaration of Dr. Badley (NX 2122) submitted in support of Ni oppositions 3, 6 and 7 since none of these opposition have been resubmitted to reference to the corrected Declaration of Dr. Badley (NX 2158).  The corrections in NX 2158 consist of (a) adding to single-letter amino acid residues omitted from the quoted text in Exhibit 1015, page 2, lines 6-9, in ¶ 29); (b) correcting the exhibit no. associated with Pan *et al., Science,* 277, 815-818 (Aug 1997) from "2022" to "2031" in ¶ 31; and, (c) inserting the word "protein" before --mixture-- in reference to a mixture of proteins in ¶ 29).  None of these three minor obvious typographical errors changed the substance of the original Badley Declaration.

Case 1:07-cv-00780-SLR    Document 10-4    Filed 01/16/2008    Page 70 of 74

Interference No. 105,240                                                      Page 69
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)                    Paper 133

1    irrelevant under FRE 403, as lacking fair basis under FRE 703 and as prejudicial

2    and confusing under FRE 403 (Paper 97, pp. 4 and 6).

3        Rauch further seeks to exclude selected portions of the redirect deposition

4    testimony of Dr. Reed (NX 2123, p. 160, l. 7 - p. 161, l. 7; p. 169, ll. 2-21; and, p.

5    172, l. 16 - p. 173, l. 13) (Paper 97, p. 1, ¶1) as improper redirect under FRE

6    611(b), leading under FRE 611(c), irrelevant under FRE 401 and prejudicial

7    under FRE 403 (Paper 97, pp. 9-14).

8        Finally, Rauch seeks to exclude selected portions of the direct testimony

9    of Dr. Badley (NX 2122, ¶¶26-27, 31-32 and 34-40) (Paper 97, p. 1, ¶1), also

10    contending that Dr. Badley's definition of a "person of ordinary skill" is so flawed

11    that any statement by Dr. Badley regarding what one of ordinary skill in the art

12    would have known or understood in 1997 is irrelevant, lacking an adequate basis

13    for expert testimony (FRE 702 and 703), prejudicial and confusing (FRE 403)

14    (Paper 97, p. 17, ¶2).  Rauch further contends that Dr. Badley lacks sufficient

15    expertise on the subject matter of his testimony (Paper 97, pp. 18-24).

16        Rauch timely filed its objections to the evidence sought to be excluded

17    (RX 1091; RX 1092; and, NX 2122, p. 160, l. 10; p. 161 ll. 5-7; p. 166, ll. 1-2; p.

18    169, ll. 10 and 16; p. 172, l. 20; p. 173, ll. 7-8).  Rauch also identified where the

19    objected to evidence was relied upon by Ni (Paper 97, ¶ bridging pp. 8-9; ¶

20    bridging pp. 10-11; ¶ bridging pp. 12-13; Appendices D (pp. 49-92) and F (pp.

21    95-135)).

22        As indicated by Rauch, the objected to direct testimony of Dr. Reed was

23    submitted in support of Ni oppositions 2, 4 and 6.  Rauch motions 2, 4 and 6, as

1    discussed in §§ VI and X above, were denied because Rauch failed to meet its

2    initial burden of establishing that it was entitled to the relief requested.

3    Consequently, we did not reach any of Ni oppositions 2, 4 or 6.  The objected to

4    direct testimony of Dr. Reed was also submitted in support of Ni motions 3 and 6

5    and of Ni replies 3 and 6.  Ni motion 3, as discussed in § IV above, was

6    dismissed as moot as to Ni proposed count 2 and denied as to Count 1 on

7    procedural grounds.  Consequently, we did not reach Ni reply 3 or any evidence

8    submitted in support of Ni motion 3.  Ni motion 6, as discussed in § VII above,

9    was dismissed and, therefore, we did not reach either Ni motion 6 or Ni reply 6.

10   Therefore, Rauch motion 8 is **denied** as to the selected portions of Dr. Reed's

11   direct testimony (NX 2057, ¶¶16, 21-28, 30-43, 45-46, 48 and 50-52).

12        Rauch indicates that the objected to deposition testimony of Dr. Reed was

13   relied upon in support of Ni replies 3 and 6 and Ni oppositions 4 and 6 (Paper 97,

14   pp. 8-10, 12 and 14).  As stated in the above paragraph, we did not reach any of

15   Ni opposition 4, Ni opposition 6, Ni reply 3 or Ni reply 6.  Therefore, Rauch

16   motion 8 is **denied** as to the selected portions of Dr. Reed's deposition testimony

17   (NX 2123, p. 160, l. 7 - p. 161, l. 7; p. 169, ll. 2-21; and, p. 172, l. 16 - p. 173, l.

18   13).

19        As indicated by Rauch, the objected to direct testimony of Dr. Badley was

20   submitted in support of Ni oppositions 3, 6 and 7.  Rauch motion 6, as discussed

21   in § X above, was denied because Rauch failed to meet its initial burden of

22   establishing that it was entitled to the relief requested.  Consequently, we did not

23   reach Ni opposition 6.  Rauch motion 7, as discussed in § V above, was

1  dismissed and, therefore, we did not reach Ni opposition 7.  Finally, Rauch's

2  motion to exclude Dr. Badley's testimony in support of Ni opposition 3 is moot

3  because, after fully considering all of the evidence submitted with Rauch motion

4  3, Ni opposition 3 and Rauch reply 3, we granted the relief requested in Rauch

5  motion 3.  Therefore, Rauch motion 8 to exclude selected portions of the direct

6  testimony of Dr. Badley (NX 2122, ¶¶26-27, 31-32 and 34-40) is **denied**.

7        In summary, Rauch motion 8 is **denied**.

8  **XIII.   Order**

9        Based on the foregoing and for the reasons given, it is

10        ORDERED that Ni motion 4 is **denied**;

11        FURTHER ORDERED that Ni motion 3 is **dismissed** as to Ni proposed

12  count 2 and **denied** as to Count 1;

13        FURTHER ORDERED that Rauch motion 7 is **dismissed**;

14        FURTHER ORDERED that Rauch motion 2 is **denied**;

15        FURTHER ORDERED that Rauch motion 4 is **denied**;

16        FURTHER ORDERED that Ni motion 6 is **dismissed**;

17        FURTHER ORDERED that Rauch motion 5 is **denied**;

18        FURTHER ORDERED that Rauch motion 3 is **dismissed** as to Rauch

19  proposed count 1 and **granted** as to Count 1, i.e., Rauch is accorded benefit for

20  the purpose of priority of (1) the 26 June 1997 filing date of the '036 application,

21  (2) the 4 June 1997 filing date of the '852 application, (3) the 28 March 1997 filing

22  date of the '536 application, (4) the 12 March 1997 filing date of the '255

1    application and (5) the 13 February 1997 filing date of the '861 application as to

2    the subject matter of Count 1;

3          FURTHER ORDERED that Rauch motion 6 is **denied**;

4          FURTHER ORDERED that Ni motion 7 is **denied; and,**

5          FURTHER ORDERED that Rauch motion 8 is **denied**.



```
/ss/ Richard E. Schafer         )
RICHARD E. SCHAFER              )
Administrative Patent Judge     )
                                )
/ss/ Adriene Lepiane Hanlon     )   BOARD OF PATENT
ADRIENE LEPIANE HANLON          )     APPEALS AND
Administrative Patent Judge     )    INTERFERENCES
                                )
/ss/ Carol A. Spiegel           )
CAROL A. SPIEGEL                )
Administrative Patent Judge     )
```

Enc:  Wang et al., "Coordinated regulation of two TRAIL-R2/KILLER/DR5 mRNA isoforms by DNA damaging agents, serum and 17ß-estradiol in human breast cancer cells," *Breast Cancer Research and Treatment*, Vol. 61, pp. 87-96 (2000)

Interference No. 105,240
Human Genome Sciences, Inc. (Ni) v. Immunex Corp. (Rauch)

Page 73
Paper 133

cc: (Overnight Mail):

Counsel for HUMAN GENOME SCIENCES, INC.:
     Jorge A. Goldstein, Esq.
     STERNE, KESSLER, GOLDSTEIN & FOX PPLC
     1100 New York Avenue, N.W.
     Washington, DC 20005-3934
     Tel:   202-371-2600
     Fax:   202-371-2540

Counsel for IMMUNEX CORPORATION:
     Michael J. Wise, Esq.
     PERKINS COIE LLP
     1620  26th  Street
     6th Floor, South Tower
     Santa Monica, CA 90404-4013
     Tel:   310-788-3210
     Fax:   310-788-3399

# EXHIBIT D

Paper 135
Filed: August 24, 2007

Mail Stop Interference
P.O. Box 1450
Alexandria Va 22313-1450
Tel: 571-272-9797
Fax: 571-273-0042

## UNITED STATES PATENT AND TRADEMARK OFFICE

_____

## BEFORE THE BOARD OF PATENT APPEALS
## AND INTERFERENCES
(Administrative Patent Judge Richard E. Schafer)

_____

FAXED

AUG 2 4 2007

PAT. & T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

Human Genome Sciences, Inc.
Junior Party
(Patent 6,872,568;
Inventors: Jian Ni, Reiner L. Gentz, Guo-Liang Yu, Craig A. Rosen),

v.

Immunex Corp.
Senior Party
(Application 09/378,045;
Inventors: Charles Rauch, Henning Walczak).

_____

Patent Interference No. 105,240 (RES)

_____

### Redeclaration - Bd.R. 203(c)

1      A decision on motions was entered July 26, 2007, (Paper 133) that

2 motion, _inter alia_, granted Immunex's motion for benefit for five additional

3 applications. This redeclaration reflects the granting of that motion.

4      This interference is redeclared as follows with changes indicated in

5 bold:

1    Junior Party

2        Named inventors:          Jian Ni, Rockville, MD
3                                  Reiner L. Gentz, Rockville, MD
4                                  Guo-Liang Yu, Berkeley, CA
5                                  Craig A. Rosen, Laytonsville, MD

6        Patent:                   6,872,568, granted March 29, 2005, based
7                                  on Application 09/565,009, filed May 4,
8                                  2000
9

10       Title:                    Death domain containing receptor 5
11                                 antibodies

12       Assignee:                 Human Genome Sciences, Inc.

13       Accorded Benefit:         None

14
15   Senior Party

16       Named Inventors:          Charles Rauch, Bainbridge Island, WA
17                                 Henning Walczak, Heidelberg, Germany
18
19       Application:              09/378,045, filed August 20, 1999

20       Title:                    Receptor that binds trail

21       Assignee:                 Immunex Corp.

22       **Accorded Benefit:**     **08/883036    06/26/1997**
23                                 **08/869852    06/04/1997**
24                                 **08/829536    03/28/1997**
25                                 **08/815255    03/12/1997**
26                                 **08/799861    02/13/1997**
27   Count and claims of the parties

28       Count 1

29       Claim 21 of Ni U.S. Patent 6,872,568 or Claim 84 of Rauch
30   Application 09/378,045.

31       The claims of the parties are:
32            Ni:            1-52
33            Rauch:     82-94, 100-103, and 105-117

1    The claims of the parties which correspond to Count 1 are:

2    Ni:    1-6, 8-19, 21-32, 34-45 and 47-52
3    Rauch: 82-94, 100-103, and 105-117

4    The claims of the parties which do not correspond to Count 1, and are

5    therefore not involved in this interference, are:

6    Ni:    7, 20, 33, and 46
7    Rauch: None


/Richard E. Schafer/
RICHARD E. SCHAFER
Administrative Patent Judge

cc (FAX):

Counsel for HUMAN GENOME
SCIENCES, INC:
    Jorge A. Goldstein, Esq.
    STERNE, KESSLER,
     GOLDSTEIN & FOX PLLC
    1100 New York Avenue, N.W.
    Washington, D.C. 20005-3934
        Tel: 202-371-2600
        Fax: 202-371-2540

Counsel for IMMUNEX
CORPORATION:

        Michael J. Wise, Esq.
        PERKINS COIE LLP
        1620 26 Street, 6 Floor,
        South Tower
        Santa Monica, CA 90404-4013
            Tel: 310-788-3210
            Fax: 310-788-3399

# EXHIBIT E

Filed on behalf of:   Party Ni

By:              Richard L. Delucia

                   John R. Kenny

                   KENYON & KENYON LLP

                   One Broadway

                   New York, NY 10004

                   Tel.: 212-452-7000

                   Fax: 212-452-5288

Paper No. _____

## UNITED STATES PATENT AND TRADEMARK OFFICE

_____

### BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES
(Administrative Patent Judge Richard E. Schafer)

_____

**Human Genome Sciences, Inc.,**
Junior Party
(Patent 6,872,568;
Inventors: Jian Ni, Reiner L. Gentz, Guo-Liang Yu and Craig A. Rosen),

v.

**Immunex Corp.,**
Senior Party
(Application 09/378,045;
Inventors: Charles Rauch and Henning Walczak).

_____

Patent Interference No. 105,240 (RES)

_____

## PARTY NI'S REQUEST FOR ADVERSE JUDGMENT
## TO INITIATE REVIEW UNDER 35 U.S.C. § 146

In order to seek immediate review under 35 U.S.C. § 146 of the decisions rendered in this interference without proceeding with the scheduled priority phase, Ni requests adverse judgment under 37 C.F.R. § 41.127(b), since it is unlikely that Ni will prevail on priority during the scheduled priority phase in this proceeding due to the Board's earlier rulings. Ni concedes no other issue and preserves its rights regarding all issues.

Ni requests that the Board enter judgment as soon as it would be feasible and convenient to do so. The concession set forth above with the resulting entry of judgment will allow for prompt initiation of an action reviewing the earlier rulings. In the District of Delaware, Ni initiated an action under 35 U.S.C. § 146 with respect to the Board's decisions in Interference No. 105,381, a related interference involving the same parties.

With this request for adverse judgment, Ni does not concede the ultimate issue of priority. To the contrary, Ni provides the above concession to proceed more expeditiously to an action that will enable Ni to ultimately obtain judgment on priority and other issues in its favor (*e.g.*, by the reviewing body and/or by the Board after the review of the earlier rulings).

Dated: October 5, 2007

Respectfully Submitted,

John R. Kenny
Reg. No. 37,655
KENYON & KENYON LLP
One Broadway
New York, NY 10004
Tel.: (212) 452-7200
Fax: (212) 452-5288
jkenny@kenyon.com

Interference No. 105,240 (RES)

## CERTIFICATE OF FILING

I hereby certify that a copy of the foregoing PARTY NI'S REQUEST FOR ADVERSE

JUDGMENT TO INITIATE REVIEW UNDER 35 U.S.C. § 146 is being filed by Federal

Express on this 5th day of October 2007 in an envelope addressed to:

> The Board of Patent Appeals and Interferences
> Madison Building East 9th Floor
> 600 Dulany Street
> Alexandria, VA 22314

John R. Kenny
Reg. No. 37,655

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PARTY NI'S REQUEST FOR ADVERSE

JUDGMENT TO INITIATE REVIEW UNDER 35 U.S.C. § 146 is being served on the

following by Federal Express on this 5th day of October 2007:

Michael J. Wise, Esq.
Perkins Coie LLP
1620 26th Street
6th Floor, South Tower
Santa Monica, CA 9040-4013

and

Julie K. Smith, Esq.
Amgen Inc.
1201 Amgen Court West
Seattle, WA 98119

John R. Kenny
Reg. No. 37,655

# EXHIBIT F

Paper 139
Filed: October 16, 2007

Mail Stop Interference
P.O. Box 1450
Alexandria Va 22313-1450
Tel: 571-272-4683
Fax: 571-273-0042

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES
(Administrative Patent Judge Richard E. Schafer)

Human Genome Sciences, Inc.,
Junior Party
(Patent 6,872,568;
Inventors: Jian Ni, Reiner L. Gentz, Guo-Liang Yu, Craig A. Rosen),

v.

Immunex Corp.,
Senior Party
(Application 09/378,045;
Inventors: Charles Rauch, Henning Walczak).

Patent Interference No. 105,240 (RES)

### Order - Miscellaneous - Bd.R. 104(a)

1    A decision on preliminary motions in this interference was entered on

2    July 7, 2007. Paper 134. As a result, the interference was redeclared (Paper

3    135) and a schedule was set for filing priority motions (Paper 134). Human

4    Genome Sciences (HGS) has filed a paper titled "Party Ni's Request for

1  Adverse Judgment to Initiate Review under 37 CFR § 146." Paper 138.

2  That paper says that HGS requests adverse judgment "since it is unlikely

3  that Ni [(HGS)]will prevail on priority during the scheduled priority phase in

4  this proceeding due to the Board's earlier rulings." Paper 138, p. 1.

5  However, HGS also states that it "does not concede the ultimate issue of

6  priority." Paper 138, p. 1. Thus, it appears that HGS requests adverse

7  judgment solely to seek an interlocutory review of the board's decision on

8  motions without having a decision on priority.

9       The purpose of an interference is to determine the first to invent

10  between multiple parties claiming the same patentable invention at about the

11  same time. While decisions on interlocutory motions may affect the

12  outcome of a priority determination, or even render a decision on priority

13  unnecessary, the principle purpose of an interference is to decide who was

14  first inventor. In other words the "main event" of an interference is the

15  priority determination.

16       Since this interference has entered the priority phase, and HGS has

17  stated that it does not concede priority, it is inappropriate to enter adverse

18  judgment based upon HGS' request. However, HGS' priority case was due

19  October 5, 2007. Paper 134. HGS, as the junior party, has the burden of

20  proving an earlier date of invention. HGS has not presented a priority case

21  and no stipulation or motion to extend the time for filing is of record. The

22  failure of a junior party to submit a timely priority case may be construed as

23  an abandonment of the contest. Accordingly, on or before **October 30,**

24  **2007,** HGS shall show cause why judgment on priority should not be entered

25  against it for failing to present a priority case.

2

| | ORDER |
|---|---|
| 1 | |
| 2 | HGS' request for adverse judgment is dismissed. |
| 3 | On or before **October 30, 2007,** HGS shall show cause why a |
| 4 | judgment on priority should not be entered against it for failure to file a |
| 5 | timely priority case. |

/Richard E. Schafer/
RICHARD E. SCHAFER
Administrative Patent Judge

cc (FAX):

Counsel for HUMAN GENOME
SCIENCES, INC:

    Richard L. Delucia, Esq.
    KENYON & KENYON LLP
    One Broadway
    New York, NY 10004
    212-908-6217 (Tel.)
    212-425-5288 (Fax)
    rdelucia@kenyon.com (e-mail)

Counsel for IMMUNEX
CORPORATION:

    Michael J. Wise, Esq.
    PERKINS COIE LLP
    1620 26 Street, 6 Floor,
    South Tower
    Santa Monica, CA 90404-4013
    Tel: 310-788-3210
    Fax: 310-788-3399

# EXHIBIT G

Filed on behalf of:    Party Ni                        Paper No. _____
By:                    Richard L. Delucia
                      John R. Kenny
                      KENYON & KENYON LLP
                      One Broadway
                      New York, NY 10004
                      Tel.: 212-452-7000
                      Fax: 212-452-5288

## UNITED STATES PATENT AND TRADEMARK OFFICE

---

### BEFORE THE BOARD OF PATENT APPEALS
### AND INTERFERENCES
(Administrative Patent Judge Richard E. Schafer)

---

**Human Genome Sciences, Inc.,**
Junior Party
(Patent 6,872,568;
Inventors: Jian Ni, Reiner L. Gentz, Guo-Liang Yu and Craig A. Rosen),

v.

**Immunex Corp.,**
Senior Party
(Application 09/378,045;
Inventors: Charles Rauch and Henning Walczak).

---

Patent Interference No. 105,240 (RES)

---

**HGS'S RESPONSE TO PAPER 139**

1    Paper 139 (at p. 3) ordered HGS to show cause why judgment on priority should not be

2    entered against HGS.   In response, HGS notes that as a result of the Board's decisions on

3    motions in the interference to date, HGS concedes the priority phase as defined in this

4    interference, and accordingly the Board should enter judgment against HGS on priority.   While

5    HGS will initiate a review under 35 U.S.C. § 146 of the Board's decision on motions, if all of the

6    Board's decisions are ultimately affirmed, the priority phase of this interference will not be

7    briefed before the Board and the Board will not have to consider the issue of priority again.

8    Paper 139 addresses HGS's request for adverse judgment, filed October 5, 2007 (Paper

9    138).  The Board indicated that HGS appeared to be seeking interlocutory review of the Board's

10   decisions on motions without a decision on priority.  *See* Paper 139, p. 2, lines 6-8.  However, as

11   stated above, HGS concedes that based on the Board's decisions on motions the Board will enter

12   judgment adverse to HGS on priority.  In its request for adverse judgment, HGS was merely

13   noting that it reserves its rights concerning the decisions on motions and on the priority issues

14   that would result from any modification thereof.

15   The priority issue that was subject to ongoing briefing here is different from the priority

16   issues that would result if HGS's challenges to the decisions on motions succeed in the action

17   under 35 U.S.C. § 146.  For example, as a result of the decisions on motions, HGS is the junior

18   party with a constructive reduction to practice date that follows Immunex's constructive

19   reduction to practice by more than three years (*i.e.*, May 4, 2000 (HGS) versus February 13,

20   1997 (Immunex)).  *See* Paper 133, p. 3, lines 3-5; p. 15, lines 9-14; p. 54, lines 1-6.  If the

21   decisions on motions are altered, HGS reserves its rights to prove priority in a differently defined

22   priority contest.

2

1         HGS expects that administrative resources will be saved by avoiding unnecessary

2    briefing on the priority issue in the context of the decisions on motions.  In accordance therewith,

3    HGS respectfully requests that adverse judgment be entered.

4

5

6    Dated:  October 26, 2007                  Respectfully Submitted,

7

8

9

10                                  John R. Kenny

11                                  Reg. No. 37,655

12                                  KENYON & KENYON LLP

13                                  One Broadway

14                                  New York, NY 10004

15                                  Tel.:  (212) 452-7200

16                                  Fax:  (212) 452-5288

17                                  jkenny@kenyon.com

## CERTIFICATE OF FILING

I hereby certify that a copy of the foregoing paper is being filed by Federal Express on this 26th day of October 2007 in an envelope addressed to:

> The Board of Patent Appeals and Interferences
> Madison Building East 9th Floor
> 600 Dulany Street
> Alexandria, VA 22314

John R. Kenny
Reg. No. 37,655

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing paper is being served on the following by Federal Express on this 26th day of October 2007:

Michael J. Wise, Esq.
Perkins Coie LLP
1620 26th Street
6th Floor, South Tower
Santa Monica, CA 90404-4013

and

Julie K. Smith, Esq.
Amgen Inc.
1201 Amgen Court West
Seattle, WA 98119

John R. Kenny
Reg. No. 37,655

# EXHIBIT H

Paper 141
Filed: November 20, 2007

Mail Stop Interference
P.O. Box 1450
Alexandria Va 22313-1450
Tel: 571-272-4683
Fax: 571-273-0042

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES
(Administrative Patent Judge Richard E. Schafer)

————————

Human Genome Sciences, Inc.,
Junior Party
(Patent 6,872,568;
Inventors: Jian Ni, Reiner L. Gentz,
Guo-Liang Yu and Craig A. Rosen),

v.

Immunex Corp.,
Senior Party
(Application 09/378,045;
Inventors: Charles Rauch and Henning Walczak).

————————

Patent Interference No. 105,240 (RES)

————————

**Judgment – Order to Show Cause – Bd.R. 202(d)**

1      Human Genome Sciences' (HGS) brief on priority was due on

2   October 5, 2007.  HGS did not file a brief.  HGS was put under an Order to

3   Show Cause why judgment on priority should not be entered against it for

4   failing to file a priority brief.  Paper 139.  HGS responded and requested that

1    judgment on priority be entered against it. Paper 140, p. 2. HGS notes that

2    as a result of the decisions on motions, HGS can not prevail on priority and

3    will seek judicial review. Paper 140, p. 2.

4        Accordingly, it is

5        **ORDERED** that judgment on priority as to the subject matter of

6    Count 1 (Paper 135, p. 2) is awarded against Human Genome Sciences, Inc.;

7        **FURTHER ORDERED** that Human Genome Sciences, Inc. is not

8    entitled to a patent containing claims 1-6, 8-19, 21-32, 34-45 and 47-52

9    (corresponding to Count 1) of Patent 6,872,568;

10        **FURTHER ORDERED** that claims 1-6, 8-19, 21-32, 34-45 and 47-

11    52 of Patent 6,872,568 be CANCELED, 35 U.S.C. § 135(a);

12        **FURTHER ORDERED** that a copy of this judgment be made of

13    record in the file of Patent 6,872,568, and Application 09/378,045; and

14        **FURTHER ORDERED** that if there is any settlement agreement

15    which has not been filed, attention is directed to 35 U.S.C. § 135(c) and

16    37 CFR § 41.205.

/Richard E. Schafer/               )
RICHARD E. SCHAFER               )
Administrative Patent Judge       )
                                  )
                                  )
/Sally C. Medley/                 ) BOARD OF PATENT
SALLY C. MEDLEY                   )   APPEALS AND
Administrative Patent Judge       )  INTERFERENCES
                                  )
                                  )
/James T. Moore/                  )
JAMES T. MOORE                   )
Administrative Patent Judge       )

2

cc (FAX):

Counsel for HUMAN GENOME              Counsel for IMMUNEX
SCIENCES, INC:                        CORPORATION:

Richard L. Delucia, Esq.              Michael J. Wise, Esq.
KENYON & KENYON LLP                   PERKINS COIE LLP
One Broadway                          1620 26 Street, 6 Floor,
New York, NY 10004                    South Tower
212-452-7000 (Tel.)                   Santa Monica, CA 90404-4013
212-452-5288 (Fax)                    310-788-3210
rdelucia@kenyon.com (e-mail)          Fax: 310-788-3399