**EXHIBIT 1**

The opinion in support of the decision being
entered today is <u>not</u> binding precedent of the Board.

Paper 139

By:    Trial Section Merits Panel
       Board of Patent Appeals and Interferences
       U.S. Patent and Trademark Office
       P.O. Box 1450                                      Filed:  October 8, 2003
       Alexandria, VA  22313-1450
       Tel:    703-308-9797
       Fax:    703-305-0942

UNITED STATES PATENT AND TRADEMARK OFFICE
(Administrative Patent Judge Carol A. Spiegel)

_____

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

_____

GARY H. RASMUSSON and GLENN F. REYNOLDS

Junior Party,
Application 08/460,296

v.

SMITHKLINE BEECHAM CORPORATION

Senior Party,
U.S. Patent 5,637,310
U.S. Patent 5,496,556
Reissue Application 09/964,383
Reissue Application 09/984,083

_____

Patent Interference 104,646

_____

Before:  SCHAFER, TORCZON and SPIEGEL, <u>Administrative Patent Judges</u>.

SPIEGEL, <u>Administrative Patent Judge</u>.

**ORDER VACATING O.C. and ENTERING FINAL JUDGMENT**
**(37 CFR § 1.658)**

[MAILED

OCT  8 2003

PAT & T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES]

Interference No. 104,646                                          Paper 139
SKB (Johnson) v. Rasmusson, now Rasmusson v. SKB                  Page 2

## A.    Conference calls

Two telephone conference calls have been held as a result of the <u>ORDER TO SHOW CAUSE</u> ("O.C.," Paper 138) which issued September 24, 2003.

### 1.    September 30, 2003

A first telephone conference was held on September 30, 2003 at approximately 1:50 p.m., involving:

1.    Richard E. Schafer and Carol A. Spiegel, Administrative Patent Judges.

2.    Herbert H. Mintz, Esq. and Lara C. Kelley, Esq., counsel for SMITHKLINE BEECHAM CORPORATION (SKB).

3.    Daniel S. Glueck, Esq., counsel for RASMUSSON.

The primary purpose of the conference call was to discuss Rasmusson's position vis-a-vis the O.C. (Paper 138). Rasmusson has had the opportunity to and did (a) file preliminary and miscellaneous motions, (b) take testimony in regard thereto, (c) have a hearing on said motions and (d) receive a <u>MEMORANDUM OPINION and ORDER</u> ("Decision," Paper 122) thereon. Rasmusson also had the opportunity to and did (d) request reconsideration of the Order and (e) receive a decision thereon (<u>see</u> <u>DECISION ON RECONSIDERATION</u> and <u>ERRATA</u> (Papers 135 and 136). As confirmed by Mr. Glueck, Rasmusson has chosen not to assert a priority contest. When asked if there was <u>any other</u> matter necessary to decide before proceeding to final judgment, Mr. Glueck replied that Rasmusson could not think of anything else but requested until 12:00 p.m. on October 3, 2003 to bring any unresolved matter to the Board's attention.[1]

In short, there appeared to be no reason to continue the interference proceeding since Rasmusson has chosen not to present evidence on the issue of priority or derivation and Rasmusson has already taken testimony and had a hearing on motions and has received both a decision on motions and a reconsideration thereof by a three-

---

[1] According to the O.C. (Paper 138, p. 2), Rasmusson was ordered to "notify the Board of any other matter necessary to resolve the interference within **ten (10) days** of the filing of this order by filing a brief for final hearing in accordance with 37 CFR § 1.656" and to make "any request for a final hearing ... within **ten (10) days** of the filing of this order.

judge panel. It was proposed that the O.C. be vacated, that the Decision and the Decision on Reconsideration be merged into a final judgment and that the hearing on motions be deemed to be a final hearing for purposes of this interference proceeding. It was agreed that a final judgment would issue on October 3, 2003 unless Rasmusson brought any other unresolved matter to the Board's attention via a conference call before 12:00 p.m. on October 3, 2003.

### 2.    October 3, 2003

A second telephone conference call was held on October 3, 2003 at approximately 11:00 a.m., involving:

1.    Carol A. Spiegel, Administrative Patent Judge.

2.    Herbert H. Mintz, Esq. and Lara C. Kelley, Esq., counsel for SKB.

3.    Robert L. Baechtold, Esq. and Daniel S. Glueck, Esq., counsel for Rasmusson. Mr. Haiyan Chen was also present for Rasmusson.

According to Mr. Glueck, the aforementioned proposal was unacceptable to Rasmusson because it felt required to file a final brief and request a final hearing in order to have a "final" decision from the Board for purposes of appeal. Rasmusson stated that it would brief and argue the same issues it had raised in <u>RASMUSSON REQUEST FOR RECONSIDERATION</u> (Paper 127) for "final hearing," in particular the granting of SKB preliminary motion 3 which stripped Rasmusson of the priority benefit of its eight earlier filed applications. In other words, as pointed out by Mr. Mintz, no new issues or arguments would be briefed and argued that had not already been briefed and argued. SKB wondered what justification there was for expending any additional time, effort and money on what has already been decided ("heard") and reconsidered ("reheard"). Neither Rasmusson nor SKB took any position as to priority. The sole concern was whether any judgment which issued after vacating the O.C. could be considered a "final" judgment.

**B.    This judgment is "final" appealable decision**

**1.    finality is determined pragmatically**

Finality is required for judicial review. Barton v. Adang, 162 F.3d 1140, 1143, 49 USPQ2d 1128, 1131 (Fed. Cir. 1998). "For purposes of review, an agency action is final if it (1) represents 'a terminal, complete resolution of the case before the agency,' ... and (2) "determine[s] rights or obligations, or ha[s] some legal consequence" (Capital Network System, Inc. v. F.C.C., 3 F.3d 1526, 1530 (C.A.D.C. 1993) (citations omitted). "To determine whether an agency action is to be deemed 'final' for purposes of judicial review, we look 'in a pragmatic way' to whether the challenged agency action is 'definitive' and to whether it has a 'direct and immediate ... effect on the day-to-day business' of the challenger." Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) v. National Mediation Bd., 670 F.2d 665, 668 (C.A. 7 (Ill.) 1981) (citations omitted).

As set forth in Hells Canyon Preservation Council v. Richmond, 841 F.Supp. 1039 (D.Or. 1993):

> [t]he "finality" requirement mandates that a plaintiff identify a "final agency action" and is designed to (1) avoid premature interruption of the administrative process; (2) let the agency develop the necessary factual background upon which decisions should be based; (3) permit the agency to exercise its discretion or apply its expertise; (4) improve the efficiency of the administrative process; (5) conserve scarce judicial resources, since the plaintiff may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) give the agency a chance to discover and correct its own errors; and (7) avoid the possibility that flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures. United States Postal Service v. Notestine, 857 F.2d 989, 993 (5th Cir. 1988) (citations omitted).

**2.    this action is final for purposes of judicial review**

According to 37 CFR § 1.654, "parties will be given an opportunity to appear before the Board to present oral argument at a final hearing" "[a]t an appropriate stage

of the interference." 37 CFR § 1.655 addresses the matters to be considered in rendering a final decision, and reads, in relevant part,

> (a) [i]n rendering a final decision, the Board may consider any properly raised issue, including priority of invention, derivation by an opponent who filed a preliminary statement under § 1.625, patentability of the invention, admissibility of evidence, any interlocutory matter deferred to final hearing, and any other matter necessary to resolve the interference. The Board may also consider whether an interlocutory order should be modified. ... .

### a.  Rasmusson has chosen not to assert a priority or derivation challenge

The fundamental purpose of an interference is to determine priority. 35 U.S.C. § 102(g). Rasmusson has chosen not to assert a priority or derivation challenge.[2]

### b.  interlocutory matters have been heard, decided and the decision reconsidered for possible modification

Rasmusson and SKB have received a decision on their remaining preliminary and miscellaneous motions following oral argument by a three judge panel (Paper 122).[3] No motions have been deferred. Under current practice, three judge panel decisions bind further action during the interference proceeding.[4] Cf. 35 U.S.C.

---

[2] Rasmusson did not serve evidence on the issue of priority or derivation by time period 2, September 8, 2003 (Paper 132, p. 3). Rasmusson's counsel has confirmed at least twice that Rasmusson will not be filing such evidence (see telephone conferences of September 30 and October 3, 2003).

[3] SKB preliminary motion 1 and miscellaneous motion 1 were denied (Papers 29 and 100, respectively). Rasmusson miscellaneous motions 2 and 3 were denied (Paper 60).

[4] According to the STANDING ORDER governing proceedings before the Trial Section (in relevant part),

   20.    Decisions
   20.1   Three-judge decisions govern further proceedings
          An interlocutory order (37 CFR § 1.601(q)) entered by a panel consisting of three or more administrative patent judges generally governs further proceedings in an interference.
   20.2.  Request for reconsideration
   20.2.1 Reconsideration of interlocutory orders
          A party may request reconsideration of any interlocutory order (37 CFR § 1.640(c)).
          A party may request review at final hearing of any interlocutory order (37 CFR §

§ 6(b) (patentability and priority determined by panels of at least three). Rasmusson promptly sought reconsideration of the decision (Paper 127). SKB's views on Rasmusson's request for reconsideration were also "heard" (Paper 133). A decision on reconsideration was issued (Papers 135 and 136).

### c.    no other issues necessary to resolve the interference exist

Neither Rasmusson nor SKB have been able to identify any other issue which remains to be resolved in this interference.

### d.    under these circumstances, this action is final for purposes of judicial review

To the extent that current practice may be interpreted as requiring a final hearing with briefing for purposes of "finality," we deem the hearing on motions to be that "final hearing" and note that matters to be addressed at final hearing (37 CFR § 1.658(a)) have been addressed already. Therefore, we merge our prior decisions on motions (Papers 29, 60, 100, 122, 135 and 136) into a "final" decision.

The proceeding is not being prematurely interrupted. Rather, termination of the interference at this point is consistent with securing "the just, speedy, and inexpensive determination" of the interference by avoiding needlessly subjecting the parties to redundant and unnecessary expenditures of time, effort and money. 37 CFR § 1.601. Indeed, there are no issues remaining for us to decide. In other words, the necessary factual background has been fully developed and the Board has exercised its discretion and applied its expertise. Going forward with a final briefing and final hearing where nothing new is being added and priority is not being determined does not improve the efficiency of the administrative process and needlessly expends the resources of the parties and the Board. Moreover, Rasmusson's request for reconsideration has

---

1.655(a)), but the panel that will conduct the review generally will be the same panel that entered the interlocutory order even if other issues at final hearing are determined by a separate panel. Accordingly, the most efficient way to seek review of an interlocutory order entered by a panel is through a request for reconsideration.
* * * * * *

**20.2.2   Number of requests**
No more than one request for reconsideration may be filed per party per board decision.

presented the Board with the chance to discover and correct its own errors. Finally, there is no apparent denial of due process since all issues fairly presented and fully briefed have been decided by a three judge panel after oral hearing on the merits followed by reconsideration of the initial decision.

> 3.    **this action is without prejudice to either party requesting a final hearing in the event of remand or reversal by our reviewing court**

In the event that a reviewing court reverses and/or remands the merger of our decision on motions and reconsideration thereof into a final action, the parties will not be deemed to have waived their right to a final hearing in accordance with 37 CFR §§ 1.654-1.656. Further, insofar as SKB has taken no position on priority, SKB is deemed not to have waived its right to testimony on the issue of priority.

**C.    Order**

Therefore, in order to secure the just, speedy and inexpensive determination of interference, it is

ORDERED that the ORDER TO SHOW CAUSE issued September 24, 2003 (Paper 138) is vacated.

FURTHER ORDERED that all of the initial decisions on motions, i.e., MEMORANDUM OPINION and ORDER (Papers 29, 60, 100 and 122), DECISION ON RECONSIDERATION (Paper 135) and ERRATA (Paper 136) are merged into this FINAL JUDGMENT.

FURTHER ORDERED that judgment on priority as to Count 2, the sole count in the interference (Paper 123), is awarded against junior party Rasmusson, i.e., GARY H. RASMUSSON and GLENN F. REYNOLDS.

FURTHER ORDERED that junior party Rasmusson, i.e., GARY H. RASMUSSON and GLENN F. REYNOLDS, is not entitled to a patent containing claims 1-8 (corresponding to Count 2) of application 08/460,296, filed June 2, 1995.

FURTHER ORDERED that a copy of this paper shall be made of record in the files of Rasmusson application 08/460,296, of SKB reissue applications 09/964,383 and 09/984,083 and U.S. Patents 5,637,310 and 5,496,556 issued to SKB.

Interference No. 104,646                                                    Paper 139
Johnsor /SKB v. Rasmusson (now Rasmusson v. SKB)                            Page 8

FURTHER ORDERED that if there is a settlement agreement which has not
been filed, attention is directed to 35 U.S.C. § 135(c) and 37 CFR § 1.661.


RICHARD E. SCHAFER                    )
Administrative Patent Judge           )
                                     )
                                     )
                                     )
                                     )
RICHARD TORCZON                       )   BOARD OF PATENT
Administrative Patent Judge           )     APPEALS AND
                                     )   INTERFERENCES
                                     )
                                     )
                                     )
CAROL A. SPIEGEL                      )
Administrative Patent Judge           )

Interference No. 104,646                                         Paper 139
Johnson/SKB v. Rasmusson (now Rasmusson v. SKB)                 Page 9

cc (via fax and first-class mail):

Attorney for JOHNSON/SKB
(real party of interest
SMITHKLINE BEECHAM CORPORATION):

    Herbert H. Mintz, Esq.
    Barbara R. Rudolph, Esq.
    FINNEGAN, HENDERSON, FARABOW
    GARRETT & DUNNER, LLP
    1300 I Street, N.W.
    Washington, DC 20005-3315
    Tel:      202-408-4000
    Fax:     202-408-4400
    E-mail:   mintzh@finnegan.com


Attorney for RASMUSSON
(real party of interest
MERCK & CO., INC.):

    Lead Counsel
        Robert L. Baechtold, Esq.
        Fitzpatrick, Cella, Harper & Scinto
        30 Rockefeller Plaza
        New York, New York  10112
        Tel:      (212) 218-2100
        Fax:     (212) 218-2200
        E-mail:   rbaechtold@fchs.com
    Backup Lead Counsel
        Catherine D. Fitch
        MERCK & CO., INC.
        Patent Department
        126 Lincoln Ave.
        PO Box 2000
        Rahway,  NJ  07065-0907
        Tel:      732-594-4000
        Fax:     732-594-4720
        E-mail:   Catherine-fitch@merck.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HUMAN GENOME SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 07-780-SLR |
| v. | ) | |
| | ) | |
| AMGEN INC. and IMMUNEX CORP., | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWERING BRIEF OF HUMAN GENOME SCIENCES
IN OPPOSITION TO IMMUNEX'S MOTION TO DISMISS**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff
Human Genome Sciences, Inc.*

*Of Counsel:*

Richard L. DeLucia
John R. Kenny
A. Antony Pfeffer
KENYON & KENYON LLP
One Broadway
New York, New York 10004-1050
(212) 425-7200

Dated: February 11, 2008
188104.1

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

SUMMARY OF PERTINENT INTERFERENCE LAW ....................................... 2

FACTUAL BACKGROUND ................................................................................ 5

LEGAL ARGUMENT ........................................................................................ 7

I.      Immunex's Argument Runs Afoul of Common
        Sense and Accepted Legal Practice ............................................................ 8

II.     Because HGS Never Conceded the Ultimate Issue
        of Priority, Immunex's Rule 12(b)(1) Motion
        Should Be Denied ...................................................................................... 12

III.    Because This § 146 Action Is Not an Interlocutory
        Appeal, Immunex's Rule 12(b)(6) Motion Should
        Be Denied.................................................................................................. 15

CONCLUSION................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Conley v. Gibson,*
    355 U.S. 41 (1957).......................................................................................... 15

*Conservolite, Inc. v. Widmayer,*
    21 F.3d 1098 (Fed. Cir. 1994) ..................................................................... 14

*Credle v. Bond,*
    25 F.3d 1566 (Fed. Cir. 1994) ................................................................. 13, 17

*Ellis-Foster Co. v. Union Carbide & Carbon Corp.,*
    284 F.2d 917 (3d Cir. 1960) ......................................................................... 16

*Enzo Therapeutics, Inc. v. Yeda Research & Dev. Co.,*
    467 F. Supp. 2d 579 (E.D. Va. 2006) ........................................................ 7, 8

*Enzo Therapeutics, Inc. v. Yeda Research & Dev. Co.,*
    477 F. Supp. 2d 699 (E.D. Va. 2007) ............................................... 8, 15, 17

*Gould Elecs., Inc. v. United States,*
    220 F.3d 169 (3d Cir. 2000) ......................................................................... 12

*Hosp. Bldg. Co. v. Trustees of Rex Hosp.,*
    425 U.S. 738 (1976).......................................................................................... 15

*In re Mason,*
    94 F.2d 220 (C.C.P.A. 1938) ................................................................. 13, 14

*Ivri v. Ross,*
    Inter. No. 103,704, 2004 WL 77437 (B.P.A.I.
    Jan. 1, 2004)........................................................................................... 13, 14

*Medtronic Vascular, Inc. v. Boston Sci. Corp.,*
    348 F. Supp. 2d 316 (D. Del. 2004) ........................................................... 12

*MBO Labs., Inc. v. Becton Dickinson & Co.,*
    474 F.3d 1323 (Fed. Cir. 2007) .................................................................... 11

*Mortensen v. First Fed. Sav. & Loan Ass'n,*
    549 F.2d 884 (3d Cir. 1977) ........................................................................ 12

*Okajima v. Bourdeau,*
    Inter. No. 104,193, 2000 WL 33347632
    (B.P.A.I. Aug. 9, 2000) ...................................................................... 10

*Okajima v. Bourdeau,*
    261 F.3d 1350 (Fed. Cir. 2001) ........................................................ 10

*Peska v. Satomura,*
    602 F.2d 969 (C.C.P.A. 1979) ..................................................... 13, 17

*Rasmusson v. SmithKline Beecham Corp.,* Inter. No.
    104,646, Order Vacating O.C. and Entering Final
    Judgment (37 CFR 1.658) (B.P.A.I. Oct. 8, 2003) ............................ 9

*Rasmusson v. SmithKline Beecham Corp.,*
    413 F.3d 1318 (Fed. Cir. 2005) ................................................ 7, 9, 15

*Rexam Indus. Corp. v. Eastman Kodak Co.,*
    182 F.3d 1366 (Fed. Cir. 1999) ........................................................ 15

*Schering Corp. v. Amgen Inc.,*
    18 F. Supp. 2d 372 (D. Del. 1998) ................................................... 11

*Schering Corp. v. Amgen Inc.,*
    35 F. Supp. 2d 375 (D. Del. 1999) ................................................... 11

*Schering Corp. v. Amgen Inc.,*
    222 F.3d 1347 (Fed. Cir. 2000) ....................................................... 11

<u>STATUTES</u>

28 U.S.C. § 1331 ...................................................................................... 12

28 U.S.C. § 1338 ...................................................................................... 12

35 U.S.C. § 119 .......................................................................................... 4

35 U.S.C. § 120 .......................................................................................... 4

35 U.S.C. § 141 ........................................................................................ 10

35 U.S.C. § 146 .................................................................................. *passim*

<u>RULES & REGULATIONS</u>

Fed. R. Civ. P. 12(b)(1) ...................................................................... 1, 2, 12

Fed. R. Civ. P. 12(b)(6).................................................................................. 1, 2, 15

37 C.F.R. § 41.201 ...................................................................................... 3, 4

37 C.F.R. § 41.203(b) ................................................................................... 3

37 C.F.R. § 41.207(a)................................................................................... 3

## INTRODUCTION

Human Genome Sciences ("HGS") submits this answering brief in opposition to Amgen and Immunex's ("Immunex") motion to dismiss this case under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). HGS filed this action under 35 U.S.C. § 146 seeking review of the Board of Patent Appeals and Interferences ("Board") decisions in Interference No. 105,240 ("'240 interference"). During the '240 interference, the Board rendered decisions on the parties' motions that defined the "priority" issues in the interference in a way that effectively decided the issue of priority. Accordingly, in order to conserve its resources and those of the Board, HGS chose not to brief the priority issue as defined by the Board, and instead informed the Board that it would accept an adverse judgment of priority in order to allow HGS to seek immediate review of the Board's decisions. The Board entered judgment against HGS, and the present appeal followed.

Immunex's arguments are factually inaccurate and legally frivolous. Under Rule 12(b)(1), Immunex argues that the Court does not have subject matter jurisdiction over this action because the issue of priority is "moot." Br. (D.I. 9) at 9–10.[1] According to Immunex, by choosing not to brief the priority case defined by the Board, HGS has conceded the ultimate issue of priority and therefore cannot appeal. This is nonsense. HGS never conceded the ultimate issue of priority. Instead, as Immunex and its counsel well know, HGS simply accepted adverse judgment under the particular decisions made by the Board that framed the priority contest, and sought review of those final decisions under 35 U.S.C. § 146. In the event that the Board's decisions are upheld, HGS will not argue that it is entitled to priority. However, by contrast, if the decisions are altered on appeal, HGS will seek to prove that it is entitled to priority under a new framework governing the priority issue. This form of review is the very

---

[1]    Defendants' Opening Brief in Support of Motion to Dismiss is cited as "Br."

purpose of § 146.

Under Rule 12(b)(6), Immunex argues that this § 146 action constitutes an "interlocutory appeal" and therefore fails to state a claim upon which relief may be granted. Br. at 14–15. This argument is likewise specious. An interlocutory appeal is an appeal taken in the absence of a final judgment. The Board entered final judgment against HGS in the '240 interference. D.I. 1 at Ex. A (Paper 141). Therefore, there is simply no reasonable argument that the instant § 146 action is to an "interlocutory appeal."

HGS's actions in the '240 interference—*e.g.*, accepting adverse judgment under a particular set of legal determinations in order to appeal those legal determinations—are legally conventional actions of the type that parties take every day in American jurisprudence. As discussed below, the case law demonstrates that parties have accepted adverse judgment in order to seek appeal of Board decisions in exactly this type of situation, with no indication that the issue was moot, no indication that the review sought was "interlocutory," and no indication that the complaint otherwise failed to state a claim. In an analogous situation, parties routinely accept adverse judgment following claim construction decisions in order to seek review of the court's legal interpretation of patent claims. In short, Immunex's arguments under Rule 12(b)(1) and Rule 12(b)(6) are utterly baseless. Accordingly, Immunex's motion should be denied.

## SUMMARY OF PERTINENT INTERFERENCE LAW

In order to provide context, the following is a brief summary of the relevant tenets of interference practice as they relate to this case.

Interference proceedings are intended to determine priority of invention, *i.e.*, which party invented a particular invention first. To accomplish this, the Board divides the proceeding into two phases, the "substantive motions phase" (previously called "the preliminary motions phase")

and the "priority phase." Prior to the substantive motions phase, when the interference is first declared, the Board makes a preliminary determination of, *inter alia*, the actual invention involved in the interference by defining a "count" (which can look like a patent claim) and decides whether to accord either party "benefit" to an earlier patent application filed by the party. 37 C.F.R. §§ 41.201; 41.203(b) (2005). Based on the Board's initial benefit determination, the Board designates the party with the earlier filing date the "senior party," and designates the other party the "junior party." During the substantive motions phase, the parties can challenge the Board's initial determinations on benefit and the count, and the Board issues a Decision on Motions resolving these challenges.[2] This decision is significant to the subsequent priority phase because it defines the parameters for a specific priority contest.

The accorded benefits determine the earliest constructive reduction to practice dates for each respective party and the allocation of burdens of proof for the priority phase. 37 C.F.R. § 41.207(a) (2005) ("Parties are presumed to have invented interfering subject matter in the order of the dates of their accorded benefit for each count."). In this case, because neither party was initially accorded an earlier benefit when the interference was declared, each party was initially presumed to have first invented subject matter within the scope of the count as of its last respective filing date. Based strictly on Immunex's earlier filing date of August 20, 1999, as opposed to HGS's May 4, 2000 filing date, in this case, the Board initially declared Immunex the "senior party," and HGS the "junior party," which means that Immunex was presumed the first inventor unless HGS could show that it should be accorded an earlier benefit date.

---

[2]   For the sake of convenience, HGS focuses primarily on the Board's decision determining benefit, even though the Board makes other determinations during the substantive motions phase. HGS will be seeking review of those decisions.

3

"Accorded benefit" is linked to claiming priority to an earlier filed patent application. *See* 35 U.S.C. §§ 119, 120 (a patent application is entitled to claim priority to an earlier filed applications which describes and enables the claimed invention). Because patent applications may (and often do) depend from earlier filed applications, the Board may accord a party the benefit of an earlier application, effectively replacing the party's actual filing date with the filing date of an earlier patent application for the purpose of determining the ultimate issue of priority.

For example, in the present case, even though HGS's patent-in-interference was filed on May 4, 2000, HGS had filed six earlier and related applications directed to its invention, the first of which was filed on March 17, 1997. During the substantive motions phase, both HGS and Immunex moved to be accorded benefit to their earlier filed applications. Although the Board denied HGS's request and granted Immunex's, if the Board had instead accorded HGS benefit to its March 17, 1997 filing date (or one of its other earlier filed applications), and if the Board denied Immunex any claim to benefit, *the roles of the parties would have switched, making HGS the senior party and Immunex the junior party in the interference.* In that case, HGS would be presumed to be the first inventor and Immunex would bear the burden of proving that it invented subject matter falling within the count before HGS's March 17, 1997 date.[3]

In many interferences, the Board's decisions on substantive motions will dictate the outcome in the priority phase, where the senior party enjoys an overwhelming tactical advantage. The fundamental point is that each priority case is unique to the benefits accorded to the parties. Just because a party cannot prevail on priority under one benefit determination, it does not follow that the party cannot prevail on the ultimate issue of priority based on a different benefit

---

[3]      Specifically, Immunex would have had to proffer evidence that it either (i) conceived of the invention prior to HGS's March 17, 1997 filing date and diligently reduced it to practice, or (ii) actually reduced the invention to practice prior to HGS's filing date. 37 C.F.R. § 41.201. If Immunex met this initial burden, the burden would have shifted back to HGS to prove an even earlier date.

determination.  It is HGS's position that priority would be decided in its favor if the Court

reversed the Board's benefit determinations.

## FACTUAL BACKGROUND

Since its inception in the early 1990's, HGS has engaged in active research and

development of novel protein and antibody therapeutics.  In particular, HGS has identified

several novel "death receptors," proteins on the surface of cells that can induce programmed cell

death, as targets for the modulation of cell death in the treatment of diseases such as cancer and

HIV infection.  Among the death receptors identified by HGS by the end of 1996 were receptors

designated DR3 and DR4.  Prior to March 1997 HGS had identified the fifth member of the

death receptor family, DR5, and on March 17, 1997 HGS filed its first U.S. patent application

describing that discovery.  HGS filed several subsequent applications directed to DR5 which

specifically incorporated by reference each of the previous patent applications.  On May 4, 2000,

HGS filed the application that ultimately issued as the involved U.S. Patent No. 6,872,568 ("the

'568 patent").

On August 31, 2005, the Board declared the '240 interference between HGS's '568

patent and Immunex's pending U.S. Application No. 09/378,045, which was filed on August 20,

1999.  The Board indicated that both parties claimed the same patentable invention.[4]  When

declaring the interference, the Board did not accord HGS benefit to its earlier filed applications,

thereby making HGS the junior party in the interference.  The Board authorized HGS to file a

substantive motion seeking to change the accorded benefit of its earlier applications, and HGS

---

[4]    The Board actually declared four separate interference proceedings involving HGS patents and/or pending patent applications, three involving Immunex, and another involving Genentech.  Two of those interferences are still pending, whereas two are before this Court as § 146 actions.  *See* Case No. 07-526 (SLR).

filed its Substantive Motion 3 on December 7, 2005. Similarly, Immunex also filed a motion to be accorded benefit to its earlier applications.

The Board rendered its decision on substantive motions on July 26, 2007. The Board denied HGS's motion for benefit and granted Immunex's motion for benefit (D.I. 10 at Ex. C), which effectively dictated an incorrect outcome in the interference. HGS believes both of these decisions were factually and legally incorrect and is now seeking review of those decisions in this action under § 146.

To prevail under the Board's benefit decisions, HGS had to prove conception coupled with reasonable diligence from prior to February 13, 1997 (the benefit date accorded Immunex) to May 4, 2000, a period of roughly three and one-half years, which would be both difficult and, if the Board's earlier decisions on benefit were in error, unnecessary. By contrast, if the Board's decisions are reversed and HGS is accorded the benefit of its March 17, 1997 patent application, and Immunex's request is denied (leaving it with a filing date of August 20, 1999), HGS will be the senior party by over two years. In that case, Immunex will have to show that it conceived of an embodiment within the count prior to HGS's March 17, 1997 date, and demonstrate diligence to its August 20, 1999 filing date.[5]

Rather than pursue priority under the Board's benefit determinations, HGS requested entry of judgment, granting priority to Immunex under the Board's benefit decisions, while maintaining that it would seek to prevail on priority if those decisions were ultimately reversed:

> With this request for adverse judgment, ***Ni does not concede the ultimate issue of priority***. To the contrary, Ni provides the above concession to proceed more expeditiously to an action that will

---

[5]     Even under the scenario where both parties' earliest requested benefits were granted—*i.e.*, Immunex was granted benefit to its February 13, 1997 application and HGS was accorded benefit to March 17, 1997—HGS still has a high likelihood of success of prevailing on priority, as it can prove conception coupled with diligence from February 12, 1997 (the day prior to Immunex's earliest date) until March 17, 1997, HGS's earliest constructive reduction to practice.

enable Ni to ultimately obtain judgment on priority and other issues in its favor (*e.g.*, by the reviewing body and/or by the Board after the review of the earlier rulings). [D.I. 10 at Ex. E (emphasis added)].

In its request, HGS specifically noted that it would be filing a § 146 action seeking review of, *inter alia*, the Board's decisions in the substantive motions phase. On October 16, 2007, the Board instead issued an order to show cause why priority should not be awarded to Immunex in light of HGS's decision not to file a priority brief. D.I. 10 at Ex. F, p. 2 (stating "[s]ince this interference has entered the priority phase, and HGS has stated that it does not concede priority, it is inappropriate to enter adverse judgment based upon HGS's request."). In responding to the order to show cause, HGS reasserted that it would be seeking review of the Board's decisions on substantive motions under § 146 after the Board entered final judgment (D.I. 10 at Ex. G), and in the Board's final order, the Board acknowledged that HGS intended to seek judicial review. D.I. 1 at Ex. A.

## LEGAL ARGUMENT

Immunex contends that HGS's decision not to present a priority case under the framework set by the Board's earlier decisions precludes HGS from obtaining review of any of the Board's decisions. This position is devoid of support, and Immunex fails to cite a single case supporting its demand for dismissal. Furthermore, Immunex omits any mention of cases such as *Enzo Therapeutics, Inc. v. Yeda Research & Dev. Co.*, 467 F. Supp. 2d 579 (E.D. Va. 2006) ("Enzo I"), where an interference party requested adverse judgment only to challenge the Board's denial of benefit on substantive motions in a § 146 action, precisely as HGS does here. Similarly, Immunex fails to mention *Rasmusson v. SmithKline Beecham Corp.*, 413 F.3d 1318 (Fed. Cir. 2005), where a party did not file a priority brief and sought final judgment for the purpose of obtaining § 146 review. Under Immunex's theory, parties who receive adverse

decisions in the substantive motions phase of an interference would be forced to brief priority

motions, regardless of how improbable and needlessly burdensome, just to preserve rights for a

later review of the underlying adverse decisions. No such rule exists.

**I.**    **Immunex's Argument Runs Afoul of Common Sense and Accepted Legal Practice**

The crux of Immunex's argument is based on the proposition that HGS's decision not to

pursue priority in the second phase of the interference renders all earlier decisions

unreviewable. However, there is no caselaw which supports this position. In fact, the law is to

the contrary. For example, in *Enzo Therapeutics*, the Board denied Enzo's motion to be

accorded benefit to an earlier filed application. *Enzo I*, 467 F. Supp. 2d at 582–83. In view of

the Board's decision, Enzo requested adverse judgment on priority, and subsequently filed a §

146 action to appeal the Board's benefit decision, naming both the Director of the U.S. Patent

and Trademark Office ("PTO") and Yeda as defendants. *Id.* at 584. The district court did not

dismiss the action out-of-hand (as Immunex's requests here).[6] Reviewing the Board decisions,

the district court ultimately held on summary judgment that the Board had erred in denying

Enzo's benefit motion and remanded the case back to the Board. *Enzo Therapeutics, Inc. v. Yeda

Research & Dev. Co.*, 477 F. Supp. 2d 699, 582–83 (E.D. Va. 2007) ("*Enzo II*"). At the most

---

[6]    Neither the district court nor the parties questioned subject matter jurisdiction or whether Enzo
stated a claim against Yeda. *Enzo I*, 467 F. Supp. 2d at 596. Although the court dismissed the case
against the Director of the PTO, it rejected the Director's argument that the court lacked subject matter
jurisdiction to review a decision the Director characterized as "incidentally involved" in the interference.
*Id.* at 592–94. The court held that it could review all issues during the interference, writing: "Were this
Court precluded from reviewing such petition, it would remain undecided, as would be the question of
unintentional abandonment, and, as a consequence, the question of priority. Such a conclusion would
surely handicap the plain intent of Congress in creating such a right of appeal for dissatisfied parties to an
interference…. [T]he Court will consider all questions of priority, as well as those that are ancillary
thereto, including the Petition to Revive, in reviewing the Board's interference decision, as authorized by
*35 U.S.C. § 146.*" *Id.* at 593–94.

simple level, the *Enzo* case stands for the proposition that, upon obtaining a final judgment on priority—even as a result of specifically requesting adverse judgment—the Board's decisions on substantive motions are subject to review in a § 146 action. This is exactly the situation in the case at bar.

In another case, junior party Rasmusson appealed the Board's decision on substantive motions denying it benefit (just like the Board's decision in this case) after deciding not to assert a priority contest. *Rasmusson v. SmithKline Beecham Corp.*, Inter. No. 104,646, Order Vacating O.C. and Entering Final Judgment (37 CFR 1.658), at *2–3 (B.P.A.I. Oct. 8, 2003) (unpublished decision) (attached as Exh. 1); *Rasmusson*, 413 F.3d at 1322. During the substantive motions phase of the underlying interference, the Board denied Rasmusson's request for benefit to eight earlier filed applications. Left with an impossible priority case and the burden of proof on priority, Rasmusson chose not to assert a priority contest at all. In view of Rasmusson's failure to put forth a priority case, the Board issued an order to show cause why judgment should not be entered against it, but in a subsequent conference with the Board, Rasmusson expressed its concern that "it felt required to file a final brief and request a final hearing in order to have a 'final' decision from the Board for purposes of appeal." *Rasmusson*, Order Vacating O.C. and Entering Final Judgment (37 CFR 1.658), at *3. Recognizing that Rasmusson wished to appeal the Board's decision denying it benefit and that filing a priority brief would not add anything new to the interference, the Board issued a final judgment against Rasmusson on priority and stated:

> The proceeding is not being prematurely interrupted. Rather, termination of the interference at this point is consistent with securing 'the just, speedy, and inexpensive determination' of the interference by avoiding needlessly subjecting the parties to redundant and unnecessary expenditures of time, effort and money. 37 C.F.R. § 1.601. Indeed, there are no issues remaining for us to

> decide. In other words, the necessary factual background has been
> fully developed and the Board has exercised its discretion and
> applied its expertise. *Going forward with a final briefing and final
> hearing where nothing new is being added and priority is not
> being determined does not improve the efficiency of the
> administrative process and needlessly expends the resources of the
> parties and the Board.*

*Id.* at *6–7 (emphasis added). With the final judgment, Rasmusson appealed the Board's

decision denying Rasmusson benefit to the Federal Circuit under 35 U.S.C. § 141. This fact

scenario is also virtually identical to the fact scenario here, and the point is that HGS's decision

to forego the priority phase in order to seek review of the Board's benefit decisions is entirely

conventional and does not result in loss of right to appeal.

In yet another appealed interference case, junior party Okajima moved to invalidate

Bourdeau's claims in view of prior art during the substantive motions phase. *Okajima v.

Bourdeau*, Inter. No. 104,193, 2000 WL 33347632 (B.P.A.I. Aug. 9, 2000). The Board denied

Okajima's motion, and instead, issued an order to show cause why judgment should not be

entered against Okajima on priority. *Id.* at *1. In response, "Okajima stated that it would accept

judgment against it on the issue of priority," which the Board entered. *Id.* Despite Okajima's

concession of priority during the interference, it appealed the Board's decision denying its

motion to invalidate Bourdeau's claims for unpatentability. *Okajima v. Bourdeau*, 261 F.3d

1350 (Fed. Cir. 2001). Again, the point is that accepting judgment of priority after substantive

motions does not preclude review of the Board's decisions on substantive motions.

Analogous situations exist elsewhere—where final judgment is sought to allow review of

an otherwise determinative but non-final decision—most notably in patent law where a claim

construction ruling renders a party's infringement position untenable. After claim construction,

one party often concedes the infringement issue under the court's claim construction in order to

appeal the underlying claim construction decisions to the Federal Circuit. *See, e.g., Schering Corp. v. Amgen Inc.*, 18 F. Supp. 2d 372 (D. Del. 1998) (construing plaintiff-Schering's patent claims narrowly), 35 F. Supp. 2d 375 (D. Del. 1999) (granting plaintiff-Schering's motion for summary judgment that Amgen did not infringe Schering's patent under the district court's claim construction), 222 F.3d 1347 (Fed. Cir. 2000) (appealing the district court's claim construction); *see also MBO Labs., Inc. v. Becton Dickinson & Co.*, 474 F.3d 1323 (Fed. Cir. 2007) (conceding non-infringement based on claim construction and then appealing claim construction). The concession of non-infringement (or infringement) allows the district court to issue a final appealable order, but does not strip the conceding party of the opportunity to obtain review of the district court's claim construction rulings.

A common-sense policy underlies allowing a party to concede a final issue to appeal all earlier decisions in the case. In the situation where a party receives a claim construction under which it has no chance to prevail on infringement, unless it can concede infringement and appeal the claim construction, it would have to litigate its losing infringement claim for months (or even years), and perhaps through trial, until there is a final decision on infringement. Once the faux case is decided, the losing party would then be able to appeal claim construction, and if it were reversed, have to go through an entirely new trial on infringement based on the revised claim construction. Such a regime defies common sense and is not the law. Similarly here, forcing a party to put on a losing priority case simply to preserve rights for appeal would be overly formalistic and unsupported by law. The groundless argument espoused by Immunex should be rejected.

11

## II.    Because HGS Never Conceded the Ultimate Issue of Priority, Immunex's Rule 12(b)(1) Motion Should Be Denied

This Court has subject matter jurisdiction over this action pursuant to 35 U.S.C. § 146 and 28 U.S.C. §§ 1331 and 1338. D.I. 1 at ¶ 2. Immunex nonetheless challenges the Court's subject matter jurisdiction by arguing that: "Having conceded priority HGS has rendered moot all other issues decided in the '240 Interference and eviscerated this Court's subject matter jurisdiction." Br. at 1.[7] Immunex's argument is grossly misleading. HGS never conceded priority in a properly framed priority scenario, and HGS's repeated representations to the Board that it intended to seek review of its benefit decisions and HGS's filing of the present complaint belie any suggestion that HGS conceded all of its rights to challenge Board's interference decisions.

First, Immunex grossly misleads the Court when it states that "[i]t is uncontestable that HGS voluntarily conceded the ultimate issue of priority in the '240 Interference." Br. at 9. HGS never conceded the "ultimate issue" of priority, and in fact, HGS specifically stated the opposite: "Ni does not concede the ultimate issue of priority." D.I. 10 at Ex. E. Although HGS conceded the specific priority case defined by the Board's decisions on substantive motions, it never conceded priority in the event that this Court or the Federal Circuit reverses the Board's decisions on, for example, benefit. If the Board's benefit decisions are reversed, the Board's

---

[7]    Immunex hints that its Rule 12(b)(1) motion challenges jurisdiction facially (based on the legal sufficiency of the claim), not factually (based on the sufficiency of jurisdictional fact). *See Medtronic Vascular, Inc. v. Boston Sci. Corp.*, 348 F. Supp. 2d 316, 321 (D. Del. 2004). In either case, Immunex's motion should be denied. If facial, the Court may assume all of HGS's jurisdictional allegations to be true and draw all reasonable inferences in favor of HGS. However, because Immunex's main argument rests upon its mischaracterization of HGS's request for adverse judgment during the interference—which is neither integral nor explicitly tied to HGS's complaint—Immunex's challenge appears to be factual. Where jurisdictional and substantive facts are intertwined, courts demand less by way of jurisdictional proof for a plaintiff to survive a Rule 12(b)(1) challenge. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891, 897–98 (3d Cir. 1977)).

priority determination is rendered moot and should be vacated, and either this Court must

determine the issue of priority, or the case must be remanded for the Board to determine priority

under the corrected factual scenario.[8]

Second, Immunex misstates the law in arguing that a party's concession can render a

claim moot and thereby "eviscerate" subject matter jurisdiction. Immunex argues that "[t]he rule

for appeals from interference decisions is consistent with the general rule—unilateral concession

of a party moots an appeal." Br. at 8–9 (citing *In re Mason*, 94 F.2d 220, 222 (C.C.P.A. 1938)

and *Ivri v. Ross*, Inter. No. 103,704, 2004 WL 77437, at *1–2 (B.P.A.I. Jan. 1, 2004) (not

published)). Immunex's argument misses the point entirely—HGS did *not* concede the ultimate

issue of priority. In any event, Immunex entirely mischaracterizes the law, and the cases relied

upon by Immunex do not support its position.

In *Mason*, patent applicant Mason sought claims directed to a method for removing

phosphate from minerals. 94 F.2d at 221. Mason had previously been involved in an

interference (No. 68,521) with McCoy, and during the earlier interference, Mason apparently

conceded priority under Rule 125 (which no longer exists), and expressly waived his right to

appeal. *Mason*, 94 F.2d at 222. Nonetheless, a few days after conceding priority in the

interference, Mason assigned his patent application to a third party who then attempted to

prosecute new claims in the Patent Office. *Id.* The Examiner rejected those claims in view of,

*inter alia*, McCoy. The new assignee of the application appealed the rejection to the Board, and

---

[8]     If judgment is entered on priority after decisions on preliminary motions, and if one or more of the preliminary motions affecting priority is reversed, priority must be re-determined and the Board's judgment reversed or vacated. *See, e.g., Credle v. Bond*, 25 F.3d 1566 (Fed. Cir. 1994) (the Board entered judgment of priority against the junior party after denying benefit; the junior party appealed both the denial of benefit and the Board's interpretation of the party's preliminary statement; upon reversal of the latter, the Federal Circuit remanded to the Board to determine priority); *Peska v. Satomura*, 602 F.2d 969 (C.C.P.A. 1979) (the C.C.P.A. found that the Board erred in its benefit decision, and therefore vacated the priority judgment and remanded).

after affirmance, appealed to the Court of Customs & Patent Appeals ("C.C.P.A."), the

predecessor to the Federal Circuit. The appellate court held that Mason's waiver of appeal of the

'521 interference decision precluded him from later challenging a rejection of his claims in view

of McCoy. *Id.* at 223–24. The *Mason* decision stands for the unremarkable proposition that if

one concedes priority in an interference *and does not appeal or seek a review* of the decisions in

that interference, one cannot later reargue the points conceded and not appealed. This is called

"interference estoppel" and it has absolutely no relevance to the case at hand. In the present

case, there is no estoppel because HGS *is appealing* the Board's decisions. The *Mason* case has

no relevance to this case whatsoever.

The *Ivri* case is equally inapposite. In that case, the Board merely noted that, after entry

of final judgment based on a request for adverse judgment, the motions currently pending at that

time were rendered moot for the purpose of the Board's final decision. 2004 WL 77437 at * 1.

In other words, the Board was not reviewing the currently pending motions as the interference

was over. *Ivri* does <u>not</u> stand for the proposition that a review (or appeal) of motions *previously*

*decided*—as is the case here—is mooted by the entry of adverse judgment. There is nothing in

*Ivri* indicating that a losing party could not seek review in a § 146 action, and there is certainly

nothing in *Ivri* indicating that motions previously decided could not be appealed. *Ivri* has no

bearing on the case at hand.[9]

In the present case, Immunex cannot reasonably dispute that the reversal of the Board's

benefit decisions in a § 146 action would engender an entirely new priority case. Numerous

---

[9]    In any event, it does not follow that the issues presented by undecided motions in *Ivri* could not
have been reviewed by the district court in a civil action under 35 U.S.C. § 146. In a § 146 action, a
district court can address all issues raised during the interference, regardless of whether the Board entered
a decision on a particular issue or not. *See Conservolite, Inc. v. Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir.
1994).

cases exemplify this fact. *See, e.g., Enzo II*, 477 F. Supp. 2d at 718–19 (allowing judgment on

priority to be entered and then appealing); *Rasmusson*, 413 F.3d at 1322 (same); *see also Rexam*

*Indus. Corp. v. Eastman Kodak Co.*, 182 F.3d 1366 (Fed. Cir. 1999) (rejecting mootness

argument by Rexam in view of Kodak's concession of priority in another interference).

Accordingly, the issues raised in this § 146 action were clearly not mooted by HGS's actions

taken for the express purpose of seeking § 146 review.

### III.    Because This § 146 Action Is Not an Interlocutory Appeal, Immunex's Rule 12(b)(6) Motion Should Be Denied

Congress specifically enacted § 146 in order to grant interference parties the right to file a

civil action to review the Board's decisions in interference proceedings: "Any party to an

interference dissatisfied with the decision of the Board of Patent Appeals and Interferences on

the interference may have remedy by civil action...." 35 U.S.C. § 146.  Invoking this statutory

right, HGS filed the present civil action seeking a reversal of, *inter alia*, the Board's decisions on

benefits, which would require the Court to vacate the Board's final priority judgment.  D.I. 1 at ¶

14–17, 19.  This Court need look no further in denying Immunex's motion to dismiss under Rule

12(b)(6).  There is no question that HGS's complaint states a claim upon which relief can be

granted.[10]  HGS's decision not to file a priority brief during the interference, and to seek entry of

final judgment, changes nothing.

Immunex mischaracterizes the Board's decisions on substantive motions (*e.g.*, benefit) as

"interlocutory" and states that HGS is effectively seeking an interlocutory appeal. Br. at 15.

According to Immunex: "In essence, HGS is attempting to convert a § 146 action into an

---

[10]    In analyzing a Rule 12(b)(6) motion, courts accept as true all material allegations of the complaint
and construes the complaint in favor of the plaintiff. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *Hosp.
Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976) (stating that such dismissals "should be
granted very sparingly."). Under Rule 12(b)(6), Immunex owes the burden of showing no claim has been
stated.

interlocutory appeal of non-final Board decisions." *Id.* This argument is specious. Immunex cannot possibly dispute that the Board's judgment in the interference is final. D.I. 1 at Ex. A ("ORDERED that judgment on priority as to the subject matter of Count 1 (Paper 135, p. 2) is awarded against Human Genome Sciences, Inc."). There is no further action required by the Board in the interference.[11] Moreover, the fact that HGS requested adverse judgment does not negate the fact that the Board entered a final judgment. HGS could have simply said nothing and allowed the Board to enter judgment against it to the same effect, but instead requested adverse judgment simply to expedite the Board's final judgment.

In its motion, Immunex cites several cases standing for the commonplace proposition that interlocutory appeals from administrative agency decisions are prohibited. *See, e.g.*, Br. at 13, 15 (citing *Ellis-Foster Co. v. Union Carbide & Carbon Corp.*, 284 F.2d 917, 926 (3d Cir. 1960)).[12] None of the cases are relevant because the present appeal is *not* interlocutory. In an interlocutory appeal, regardless of the decisions made, the case will return to the lower body (the Board or the District Court). Interlocutory appeals are disfavored because they can cause inefficiencies in the administration of justice. Although HGS does not contest that interlocutory appeals of Board decisions are disfavored, HGS contends that this proposition of law is

---

[11]    In this case, Immunex has not approached the Board in any manner asserting that the interference is still pending; instead, Immunex behaves as if the interference has concluded. Indeed, HGS filed a Notice of Judicial Review with the Patent and Trademark Office in December 2007, and thus the Board knows that the parties believe the interference is over.

[12]    *Ellis-Foster* does not stand for this proposition. In that case, the Board decided that the senior party lacked support for any claim in its application, but instead of "dissolving" the interference, held against the senior party on "priority." The senior party filed a § 146 action, which the district court dismissed for lack of jurisdiction because the 1960s version of § 146 expressly limited review to the Board's decisions on "priority." On appeal, the Third Circuit held that the Board's decision ancillary to priority—which are today called "threshold issues"—was reviewable in § 146 actions. Today, this question is moot because § 146 was revised in 1984 and no longer limits a district court's review to "priority" decisions. *See* P.L. 98-622, Title II, § 203(c), 98 Stat. 3387, Nov. 8, 1984 (in the first undesignated paragraph, substituted "Board of Patent Appeals and Interferences on the interference" for "board of patent interferences *on the question of priority*").

irrelevant to the case at hand. The posture of this case is such that if all of the Board's decisions are affirmed on review by this Court, then the Board's judgment of priority would be affirmed. However, just as in any other appeal, if the Board's decisions on substantive motions are reversed, and the priority case altered, the Board's judgment on priority would be vacated for further deliberations on a new priority situation (*e.g.*, where HGS is the senior party and Immunex is the junior party). *See, e.g., Enzo II*, 477 F. Supp. 2d at 718–19 (vacating benefit decision and remanding); *Peska*, 602 F.2d at 973 (reversing benefit decision, vacating priority judgment, and remanding); *Credle*, 25 F.3d at 1578–79 (reversing decision on substantive motion, vacating priority judgment, and remanding).

To the extent that Immunex argues it is unfair that HGS should be allowed to appeal the Board's decisions on substantive motions without conceding any substantive rights, Immunex ignores the fact that HGS can only obtain judgment on priority if one of the Board's decisions on substantive motions defining the priority case is reversed.

## CONCLUSION

In Immunex's motion to dismiss, Immunex misrepresents the law and the facts of this case; misrepresents the Board's final judgment as an interlocutory order; and misrepresents HGS's request for adverse judgment as a concession of the ultimate issue of priority. As demonstrated herein, Immunex's arguments are unsupported by law or fact. Accordingly, HGS respectfully requests that the Court deny Immunex's motion to dismiss.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*Human Genome Sciences, Inc.*

*Of Counsel:*

Richard L. DeLucia
John R. Kenny
A. Antony Pfeffer
KENYON & KENYON LLP
One Broadway
New York, New York 10004-1050
(212) 425-7200

Dated: February 11, 2008
188104.1