IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HUMAN GENOME SCIENCES, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMGEN, INC. and IMMUNEX CORP., <br><br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 07-780 (SLR) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION
TO DISMISS COMPLAINT WITH PREJUDICE PURSUANT TO
RULE 12(b)(1) AND RULE 12(b)(6)**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
Chad S. C. Stover (No. 4919)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

PERKINS COIE LLP
Michael J. Wise
Lauren Sliger
1620 – 26th Street
Sixth Floor, South Tower
Santa Monica, CA 90404-4013
(310) 788-3210

*Attorneys for Defendants Amgen, Inc. and Immunex Corporation*

Dated: February 29, 2008

## TABLE OF CONTENTS

**Page**

I. OVERVIEW ................................................................................................................. 1

II. HGS' COMPLAINT MUST BE DISMISSED WITH PREJUDICE UNDER RULE 12(b)(1) BECAUSE THE ISSUES ON APPEAL ARE MOOT AND UNDER 12(b)(6) FOR FAILURE TO STATE A CLAIM ............................................. 2

    A. HGS' Statement that it did not Concede Priority is Not Supported by the Record ................................................................................................................. 2

    B. HGS Has Failed to Prove that the Court has Subject Matter Jurisdiction over the Present Appeal ................................................................................... 5

    C. HGS Fails to Present Any Authority Supporting its Alleged Statement of a Claim Upon Which Relief May be Granted in view of its Concession of Priority ............................................................................................................... 7

    D. HGS' Analogy to an Appeal on Claim Construction in a Patent Infringement Case is Misplaced ....................................................................... 10

    E. Common Sense does not Support this Appeal ............................................... 11

III. CONCLUSION ......................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

Abbott Labs v. Johnson & Johnson,
   524 F. Supp. 2d 553 (D. Del. 2007) .................................................................................... 7

Andrx Labs v. AstraZeneca AB,
   2007 WL 2020927 at *1 (B.P.A.I. July 11, 2007) ............................................................ 2, 4

Credle v. Bond,
   25 F.3d 1566 (Fed. Cir. 1994) ............................................................................................ 10

Enzo Therapeutics, Inc. v. Yeda Research & Dev. Co.,
   467 F. Supp. 2d 579 (E.D. Va. 2006) .................................................................................. 7

In re Mason,
   94 F.2d 220 (C.C.P.A. 1938) ........................................................................................... 5, 6

Ivri v. Ross,
   2004 WL 77437 (B.P.A.I. 2004) ......................................................................................... 6

Kaw Nation v. Norton,
   405 F.3d 1317 (Fed. Cir. 2005); ....................................................................................... 5, 7

Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) ................................ 6

MBO Labs., Inc. v. Becton Dickinson & Co.,
   474 F.3d 1323 (Fed. Cir. 2007) .......................................................................................... 11

North Carolina v. Rice,
   404 U.S. 244 (1971) ............................................................................................................. 6

Okajima v. Bourdeau,
   2000 WL 33347632 (BPAI 2000) ....................................................................................... 9

Peska v. Satomura,
   602 F.2d 969 (C.C.P.A. 1979) ........................................................................................... 10

Rasmusson v. Smithkline Beecham Corp., Int. No. 104,646 .................................................... 8, 9

Schering Corp. v. Amgen,
   35 F. Supp. 375 (D. Del. 1999) .................................................................................... 10, 11

Shustack v. Szum,
   78 USPQ2d 1566 ............................................................................................................. 2, 4

U. S. Postal Service v. Notestine,
 857 F.2d 989 (5th Cir. 1988) .................................................................................... 9

U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship,
 513 U.S. 18 (1994) ..................................................................................................... 5

**Statutes**

35 U.S.C. § 146 .................................................................................................................. 1, 7

37 C.F.R. § 41.204(a) ............................................................................................................ 2

37 C.F.R. §41.127 ................................................................................................................. 6

**Rules**

Rule 12(b)(6) ............................................................................................... 1, 2, 7, 13

Rule 12(b)(1) ..................................................................................................... 1, 2, 13

Rule 125 ............................................................................................................................... 6

DB02:6618487.1                                                                                                                                066549.1002

## I. OVERVIEW

The purpose of an interference is to determine priority, i.e., which party is first to invent the subject matter of the interference ("the count"). In Interference No. 105,240 ("the '240 Interference"), Plaintiff Human Genome Sciences, Inc. ("HGS") affirmatively conceded priority, an unconditional surrender of all rights to the count, and received the adverse judgment it had requested. HGS cannot now appeal any decision from the '240 Interference because all of the issues that HGS purports to appeal, such as HGS' accorded benefit, are relevant only in the context of determining priority. Because HGS has already admitted that Defendants Immunex Corp. and Amgen Inc. (collectively, "Immunex") invented the subject matter of the count first, all other issues in the '240 Interference are moot, negating the Court's subject matter jurisdiction over this appeal of an interference pursuant to 35 U.S.C. § 146 ("Section 146 action") under Rule 12(b)(1). HGS' affirmative surrender of rights makes it impossible for HGS to state a claim under Rule 12(b)(6), since HGS cannot be "dissatisfied" after receiving the precise relief it requested.

HGS' Answering Brief to the Motion to Dismiss (D.I. 20) ("Opp.") fails to squarely address its concession of priority, relying instead on factual misstatements and legal mischaracterizations. For example, HGS argues that it requested adverse judgment only after the Board rendered decisions that "defined the 'priority' issues in the interference in a way that effectively decided the issue of priority." Opp., 1:6-7. HGS fails to mention, however, that at the time it requested adverse judgment, the interference had entered the priority phase because HGS had alleged it could antedate Immunex's accorded benefit date. In addition, HGS denies that it conceded priority even though HGS' express concession appears verbatim in its

interference papers[1] and occurred in response to the Board's warning that a request for adverse judgment made after commencement of the priority phase cannot be granted absent a concession of priority. Moreover, HGS fails to present a single case supporting its basis for this appeal, and instead invokes an unsupported "common sense policy" theory. For these reasons and those set forth in the Motion to Dismiss, HGS objectively fails to prove that it is entitled to invoke the Court's jurisdiction for review of the interference proceeding or that it has stated a claim upon which relief may be granted. Consequently, HGS' Complaint must be dismissed with prejudice.

## II.  HGS' COMPLAINT MUST BE DISMISSED WITH PREJUDICE UNDER RULE 12(b)(1) BECAUSE THE ISSUES ON APPEAL ARE MOOT AND UNDER 12(b)(6) FOR FAILURE TO STATE A CLAIM

### A.  HGS' Statement that it did not Concede Priority is Not Supported by the Record

At the beginning of the '240 Interference, HGS alleged in its priority statement[2] that it was first to invent the subject matter of the count by alleging a conception date of November 14, 1996 coupled with diligence thereafter. HGS' Priority Statement in Interference 105,240, attached as Exhibit A to the accompanying Declaration of Melanie K. Sharp in Support of Reply ("Sharp Decl."). During the substantive motion phase of the interference, the Board's Decision on Motions (Exhibit C to Opening Brief in Support of Motion to Dismiss (D.I. 8) ("Motion"), 54:1-6) accorded Immunex a benefit date of February 13, 1997. Because the Decision on

---

[1] HGS' stated that it "concedes the priority phase as defined in this interference." Conceding the "priority phase" is synonymous with conceding "priority." Andrx Labs v. AstraZeneca AB, 2007 WL 2020927 at *1 (B.P.A.I. July 11, 2007); Shustack v. Szum, 78 USPQ2d 1566, (B.P.A.I. 2005).

[2] 37 C.F.R. § 41.204(a) states: "Priority statement: (1) A party many not submit evidence of its priority in addition to its accorded benefit unless it files a statement setting forth all bases on which the party intends to establish its entitlement to judgment on priority. (2) The priority statement must: (i) State the date and location of the party's earliest corroborated conception, (ii) State the date and location of the party's earliest corroborated actual reduction to practice, (iii) State the earliest corroborated date on which the party's diligence began, and (iv) Provide a copy of the earliest document upon which the party will rely to show conception."

Motions did not render all of HGS' claims unpatentable and because HGS had alleged in its priority statement that it could antedate the benefit date accorded Immunex by the Decision on Motions, the Board ordered that the interference enter the priority phase. Since HGS remained the Junior Party in the interference at the beginning of the priority phase, the Board ordered that HGS be the first party to move for judgment on this issue of priority. However, HGS failed to file its priority brief or a stipulation or motion to extend the time for filing such brief by the deadline set by the Board. Instead, HGS filed a request for adverse judgment and attempted to limit the effects of such a request by including a statement that HGS "does not concede the ultimate issue of priority." Motion, 3:8-6:24 and Motion Exh. E. In response, the Board issued an Order to Show Cause explicitly warning HGS that a request for adverse judgment required a concession of priority: "[s]ince this interference has entered the priority phase, and HGS has stated it does not concede priority, it is inappropriate to enter adverse judgment based upon HGS' request" and "the failure of a junior party to submit a timely priority case may be construed as an abandonment of the contest." Motion Exh. F., 2:16-23. The Board provided HGS a chance to reconsider its decision by filing a response to the Order to Show Cause "why judgment on priority should not be entered against it for failing to present a priority case." Motion Exh. F, 2:24-25. HGS' response to the Order to Show Cause was to expressly concede priority, which resulted in termination of the '240 Interference:

> HGS notes that as a result of the Board's decision on motions in the interference to date, **HGS concedes the priority phase** as defined in this interference and accordingly **the Board should enter judgment against HGS on priority.** ... HGS concedes that based on the Board's decisions on motions the Board will enter judgment adverse to HGS on priority.

(Motion Exh. G, 2:2-4, 11-12, emphasis added.)

A concession of priority is an unconditional, unequivocal surrender of rights in the contested subject matter, which cannot be limited by self-serving statements. Andrx Labs v.

- 3 -

AstraZeneca AB, 2007 WL 2020927 at *1 (B.P.A.I. July 11, 2007); Shustack v. Szum, 78 USPQ2d 1566; Motion, 13:13-14:12. "As the term implies, a concession of priority concedes that the other party to the interference is in fact the first inventor." Rivise, Charles, Interference Practice, §89 (1932), Exh. B to the Sharp Decl.

    In an attempt to avoid the legal consequences of its conduct, HGS repeatedly asserts in its Answering Brief that "HGS never conceded the ultimate issue of priority." Opp., 1:16-17. It cannot be disputed that the Board refused to enter adverse judgment based on HGS' first request wherein HGS asserted that it "does not concede the ultimate issue of priority." Motion Exh. E and F. The Board issued a final judgment only when HGS complied with the Board's admonishment that HGS' first request sought improper interlocutory review of the Board's decision and filed a second request expressly conceding priority. Motion Exh. G and H. HGS now tries to recast the Board's final judgment as "the Board acknowledged that HGS intended to seek judicial review." Opp., 7:14. To the extent that HGS is suggesting that there was implicit Board approval of HGS' tactics when the Board acknowledged HGS' intent to seek judicial review, there is none. The Board merely restated HGS' statement from an earlier paper in the Judgment on the Order to Show Cause: "HGS notes that as a result of the decisions on motions, HGS can not prevail on priority and will seek judicial review." Motion Exh. H, 2:1-3.

    In its Complaint, HGS admits that "HGS requested adverse judgment be entered in the '240 Interference." D.I. 1, p. 4 ¶ 15. However, in its Answering Brief, HGS argues that it did not "concede priority in a properly framed priority scenario." Opp., 12:7-8. There is no support for this distinction. As noted by the Board, the '240 Interference had entered the priority phase and HGS did not file a priority brief. The Board put HGS under an order to show cause "why judgment should not be entered against it for failing to file" such brief. Motion Exh. F, 2:24-25.

The priority scenario could not have been more precisely and starkly framed than it was by the Board's explicit warning that HGS was required to concede priority if it elected to continue to press for an adverse judgment, nor could priority itself have been more clearly and finally determined than by HGS' unequivocal and deliberate election, post-warning, that "the Board should enter judgment against HGS on priority" as "HGS concedes the priority phase." Motion Exh. G.

HGS now contends in its Answering Brief that it did not concede priority "in the event" that an appellate court reverses a Board decision. Opp., 12:16-18. This is nonsensical because HGS, by its explicit request for adverse judgment on priority, has foreclosed the possibility of appellate review. HGS' concession of priority inherently relinquished any rights that it had to the subject matter of the interference, including the right to appeal any decision related to the interference. In re Mason, 94 F.2d 220, 222 (C.C.P.A. 1938). A concession of priority is an unconditional admission that the adverse party to an interference is in fact the first inventor.

### B. HGS Has Failed to Prove that the Court has Subject Matter Jurisdiction over the Present Appeal

While Immunex has shown that a concession of priority in an interference is a waiver of rights which divests the Court of subject matter jurisdiction and moots a district court appeal under Section 146 (Motion, 7:2-11:3 and 13:13-18:6 and Section II(A) above), HGS has failed to present **any** countervailing authority that a concession of priority is a proper basis for a Section 146 action. Since courts look to whether the appellant "caused the mootness by voluntary action" and unilateral concession of a party renders an appeal moot, HGS' unilateral concession of priority has rendered its appeal moot. See Kaw Nation v. Norton, 405 F.3d 1317, 1322 (Fed. Cir. 2005); U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship, 513 U.S. 18, 20 and 24 (1994). HGS, as Plaintiff, has failed to carry the burden of proof that it is entitled to invoke this Court's

- 5 -

jurisdiction and the Complaint should be dismissed with prejudice. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) ("The Court presumes lack of jurisdiction unless plaintiff proves otherwise.")

HGS presents no authority to support the Court's subject matter jurisdiction in this matter, and responds only with unsound critiques of two of the cases cited in the Motion. First, HGS apparently misapprehends and misstates the facts with respect to In re Mason, 94 F.2d 220 (C.C.P.A. 1938). HGS incorrectly states that Mason, a party to an interference, conceded priority "and expressly waived his right to appeal." Opp., 13:14-16. In fact, Mason conceded priority under Rule 125[3] and then the Examiner of Interferences (not Mason) held that Mason had waived his right to appeal: "The said instrument [the concession of priority] is construed as a waiver of the right to appeal, and no time for appeal is therefore set." Id. At 222. In re Mason demonstrates that unilateral concession of priority in an interference renders a Section 146 action moot. Second, in Ivri v. Ross, 2004 WL 77437 (B.P.A.I. 2004), the Board dismissed pending preliminary motions as moot in view of the judgment based on a concession of priority by one of the parties. HGS argues that, because the substantive motions were pending in Ivri as opposed to already decided as in the present matter, the case "has no bearing." Opp., 14: 10-18. Ivri does not support or address this distinction. Without regard to the stage of the interference or status of a decision on a motion, a concession of the ultimate issue of priority moots other issues, including issues raised by substantive motion, such as the designation of benefit. The Court does not have jurisdiction to review a claim which has been rendered moot such as where the ultimate issue is conceded. North Carolina v. Rice, 404 U.S. 244, 246 (1971) ("Mootness is a

---

[3] Rule 125 (analogous to current rule 37 C.F.R. §41.127) set forth three ways to terminate an interference: by decision, concession of priority, or abandonment of the invention. Rivise, Charles, Interference Practice, §88 (1932), Exh. B to the Sharp Decl.

- 6 -

jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions.")

### C. HGS Fails to Present Any Authority Supporting its Alleged Statement of a Claim Upon Which Relief May be Granted in view of its Concession of Priority

Since HGS purposefully and affirmatively conceded the ultimate issue of priority to obtain adverse judgment in the '240 Interference, it cannot complain that it is dissatisfied with the final judgment. Motion, 4:5-6:24 and Kaw Nation v. Norton, 405 F.3d 1317, 1323 (Fed. Cir. 2005). Since 35 U.S.C. § 146 requires that a party be "dissatisfied" with the decision of the Board, and HGS specifically requested the final judgment that it is appealing, HGS' statement that it is "dissatisfied" is a prohibited "unsupported allegation" for the purposes of Rule 12(b)(6). Abbott Labs v. Johnson & Johnson, 524 F. Supp. 2d 553, 557 (D. Del. 2007).

HGS asserts that it is not barred from an appeal. Opp., 8:5-8. But, not a single case cited by HGS addresses a factual scenario where a party concedes priority to obtain an adverse judgment, as HGS did, and then proceeds with an appeal. HGS' actions before the Board, unlike the actions taken by the parties in the case law it relies upon, conceded the ultimate issue of priority, thus waiving a right to appeal.

HGS misstates the facts of Enzo Therapeutics, Inc. v. Yeda Research & Dev. Co., 467 F. Supp. 2d 579 (E.D. Va. 2006), stating: "Enzo requested adverse judgment on priority" and then filed an action under Section 146 to appeal the Board's benefit decision. Opp., 8:8-9:4, quote at 8:10. In fact, Enzo requested adverse judgment on **patentability**, not priority ("Enzo informed the Administrative Patent Judge…that it would file a request for adverse judgment 'solely on the basis of the unpatentability' of its claims." Enzo Therapeutics, Inc. v. Yeda Research & Dev. Co., 467 F. Supp. 2d at 584; 477 F. Supp. 2d 699, 707, fn. 11). Specifically, Enzo (referred to as "Sehgal" in underlying Interference No. 105,293, Sehgal v. Revel) filed a request for adverse

- 7 -

judgment, making "no concessions regarding its priority case against the senior party Revel et al." Exhibit C to the Sharp Decl. In response to Sehgal's request for adverse judgment on unpatentability, both parties to the interference and the Board agreed that there was no need to continue. Board's Order in Sehgal, Exhibit D to the Sharp Decl. The Order specifically stated that "it was appropriate to enter judgment on priority against Sehgal under these circumstances," even without Sehgal conceding priority. Id. at 2, fn.1.

The Enzo/Sehgal case is not analogous to the present case in any manner relevant to the 12(b) Motion. Requesting adverse judgment on unpatentability and reserving rights to priority by the agreement of the parties and with the Board's explicit permission as occurred in Sehgal is completely at odds with HGS' unilateral concession of priority to obtain adverse judgment. The Board appropriately entered judgment on priority against Sehgal and terminated the interference as a result of Sehgal having no patentable claims left in the contest—not because Sehgal conceded priority.[4] In the '240 Interference, HGS had pending claims and had asserted in its priority statement that it could antedate Immunex's accorded benefit date by an earlier conception date coupled with diligence. Hence, the Board ordered a priority phase. HGS made no attempt to obtain an agreement from Defendants and did not seek the Board's permission in the '240 Interference; HGS acted unilaterally in conceding priority.

HGS' citation of Rasmusson v. Smithkline Beecham Corp., Int. No. 104,646 is equally inapplicable, and not "virtually identical" to the present case as HGS alleges. Opp., 9:5-10:12 and Opp. Exh. 1. After completing the substantive motion phase and requesting reconsideration, Rasmusson decided not to file its priority case. Rasmusson at *2. Neither party nor the Board

---

[4] Similarly, in related Interference No. 105,381, now on appeal in the District of Delaware as C.A. No. 07-526, the Board properly terminated the interference after the decision on motions because HGS had no remaining patentable claims.

could "identify any other issue which remains to be resolved in the interference." Id. at *6. The Board then merged its decisions on motions and reconsideration thereof into a final decision for the purposes of judicial review and deemed that the interference had gone through final hearing. Id. The Board found there was no premature interruption of the interference, the necessary factual background had been fully developed, and the Board had exercised its discretion and expertise. Id. at *6.

Unlike HGS, Rasmusson never conceded priority. Also, HGS, Immunex and the Board did not agree that there were no remaining issues to be resolved in the '240 Interference. Quite to the contrary, because HGS alleged that it could prove priority based upon its priority statement, the '240 Interference entered the priority phase. The Board did not have a full opportunity to develop the factual background and apply its expertise, however, because the interference was terminated prematurely by HGS' concession of priority. HGS' attempted circumvention of the Board's process via a "conditional" concession of priority would only encourage "flouting of the Board's administrative processes which could weaken the Board's effectiveness by encouraging people to ignore its procedures." Rasmusson, at *4 (citing U. S. Postal Service v. Notestine, 857 F.2d 989, 993 (5th Cir. 1988)).

Finally, HGS' reliance on Okajima v. Bourdeau, 2000 WL 33347632 (BPAI 2000) is also misplaced. Opp., 10:13-22. In Okajima, Okajima's motion for unpatentability of Bourdeau's claims was denied and Bourdeau's motion for benefit was granted, making Bourdeau the senior party. Because Okajima could not invalidate Bourdeau's claims and was junior party without an alleged date of invention before Bourdeau's effective filing date, the Board entered judgment against Okajima. Id. at *1-2, 10; Okajima Order to Show Cause, Exh. E to the Sharp Declaration. Okajima's statement that it would accept adverse judgment was not an explicit

concession of priority; it was an acknowledgement that all priority issues were decided by the decision on motions. Unlike Okajima, HGS did not "accept adverse judgment," but specifically conceded priority after the priority phase had commenced. In the '240 Interference, HGS' priority statement alleged an earlier date of invention, which left the issue of priority pending for resolution. HGS' concession of priority decided that issue adverse to HGS and mooted this appeal.

HGS cites Credle v. Bond, 25 F.3d 1566 (Fed. Cir. 1994) and Peska v. Satomura, 602 F.2d 969 (C.C.P.A. 1979) as examples of interferences in which benefit decisions were reversed on appeal and priority judgments were vacated and remanded. Opp., 13, 17. These cases fail to support HGS' position because in neither case did the party losing the benefit motion concede priority. Rather, the Board made final priority determinations in both cases because, after the decision on motions, the Board determined that the junior party's priority statement failed to antedate the benefit accorded the senior party, negating the need for a priority phase. Credle, 25 F.3d at 1569-70; Peska, 602 F.2d at 971-72. Here, HGS' priority statement alleged dates of invention which could antedate Immunex's benefit date and the Board ordered a priority phase.

Accordingly, HGS fails to present any authority supporting the propriety of its appeal.

### D.  HGS' Analogy to an Appeal on Claim Construction in a Patent Infringement Case is Misplaced

HGS' attempt to analogize its concession of priority to an appeal of a claim construction ruling in a patent infringement case is unavailing. Opp., 10:23-11:10. In a patent infringement case, claim construction is one of several issues that may be in play amongst related issues of validity, damages, and counterclaims. Priority in an interference is the ultimate issue, which, once decided, moots other issues. HGS relies on Schering Corp. v. Amgen, 35 F. Supp. 375, 377 (D. Del. 1999), a district court case in which the request for judgment of noninfringement after a

claim construction determination was granted only after the court was "presented with the unique situation in which both parties agreed that judgment of noninfringement" should be entered. Id. In the '240 Interference, Immunex did not agree that the matter should be terminated before the conclusion of the priority phase or that the substantive motion rulings determined the outcome of the interference. In Schering, the Court considered the facts of the case and specifically approved the appeal on those facts. Id. Similarly, in MBO Labs., Inc. v . Becton Dickinson & Co., 474 F.3d 1323 (Fed. Cir. 2007), also cited by HGS (Opp. 11:6-7), "MBO agreed that the Becton product would not infringe the RE '885 patent and did not contest Becton's motion for summary judgment of noninfringement." Id. at 1329. In contrast, in the '240 Interference, there was no agreement that the priority phase should terminate and the Board never approved HGS' Section 146 appeal. To the contrary, the Board expressly warned HGS that it could not request adverse judgment without conceding the ultimate issue in the interference—priority.

### E.     Common Sense does not Support this Appeal

Failing to offer relevant authority, HGS' final argument is that a "common sense policy" supports conceding the ultimate issue of priority to "appeal all earlier decisions in the case" because it would be "difficult" to prove its priority case given HGS' position after the Board's decision on benefit in the '240 Interference. Opp., 6:8-11 and 11:11-21. This "common sense policy" relying on "difficulty" is not the standard for any action in an interference. In addition, HGS' allegation that it should not be forced to put on a "losing priority case" is belied by its own priority statement filed at the beginning of the '240 Interference and discussed in Section II(A) above. Based on **HGS' own allegations** in its priority statement, the Board had every reason to believe that HGS could put forth a priority case in the '240 Interference, be it difficult or easy. Accordingly, HGS' assertion that "the Board rendered decisions on the parties' motions that defined the 'priority' issues in the interference in a way that effectively decided the issue of

- 11 -

priority" (Opp., 1:6-7) is unsupported based on earlier HGS allegations that it could prove conception on and diligence from November 14, 1996. The burden on HGS did not change as a result of the Board's decision. HGS remained the junior party and the Board issued an order for HGS to put on the priority case it alleged in its priority statement.

HGS argues that its appeal is not interlocutory. Opp., 16:9-17:14. Immunex agrees. Unilateral concession of priority is final and waives HGS' appeal. There is simply nothing left for the Court to consider.

## III. CONCLUSION

For all of the reasons explained above and in its Motion, Defendants respectfully request that HGS' Complaint in this matter be dismissed with prejudice for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Melanie K. Sharp
_____
Melanie K. Sharp (No. 2501)
Chad S.C. Stover (No. 4919)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

Michael J. Wise
Lauren Sliger
PERKINS COIE LLP
1620 – 26th Street
Sixth Floor, South Tower
Santa Monica, CA 90404-4013
(310) 788-3210

*Attorneys for Defendants Amgen, Inc. and Immunex Corporation*

Dated: February 29, 2008