IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HUMAN GENOME SCIENCES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 07-780-SLR |
| | ) | |
| AMGEN, INC. and IMMUNEX CORP., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Steven J. Balick, Esquire, John G. Day, Esquire and Lauren E. Maguire, Esquire of Ashby & Geddes, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Richard L. DeLucia, Esquire, John R. Kenny, Esquire and A. Antony Pfeffer, Esquire of Kenyon & Kenyon LLP, New York, New York.

Melanie K. Sharp, Esquire and Chad S. C. Stover, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Michael J. Wise, Esquire and Lauren Sliger, Esquire of Perkins Coie LLP, Santa Monica, California.

**MEMORANDUM OPINION**

Dated: May 9, 2008
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Human Genome Sciences, Inc. ("HGS") filed the present action against Immunex Corp. ("Immunex") and Amgen, Inc. (collectively, "defendants") on November 30, 2007, seeking review of a Decision on Motions entered on July 26, 2007 and Final Judgment entered November 20, 2007 by the Board of Patent Appeals and Interferences (the "Board") of the United States Patent and Trademark Office ("PTO") in Interference No. 105,240 ("the '240 interference"). (D.I. 1) Defendants filed a motion to dismiss on January 16, 2008. (D.I. 8) For the reasons that follow, the court grants defendants' motion.

## II. BACKGROUND

### A. Procedural Background

The American patent law system recognizes the first to invent, rather than the first to file. Consequently, there exists a complicated administrative process by which the PTO has jurisdiction in the first instance to determine priority of invention. The process, an "interference," has been described as "tortuous," "arcane," "highly specialized," and "virtually incomprehensible to the uninitiated." Patents and the Federal Circuit, Fourth Edition, Robert L. Harmon, § 15.2 at 724-25 (1999).

At the beginning of an interference, the party that is first to file an application describing and enabling the "count" declared in the interference is designated the "Senior Party," and the second the "Junior Party"; the Junior Party bears the burden of proof during the priority phase. 37 C.F.R. § 41.207(a). "A common two-party interference before the PTO is an administrative proceeding expected to be concluded

in 24 months." General Instrument Corp. v. Scientific-Atlanta, Inc., 995 F.2d 209, 211 (Fed. Cir. 1993). The first phase in an interference is the preliminary motions phase. Because a party may not raise any issue at a final hearing that was not, but could have been, raised by a preliminary motion, "the preliminary motions which a party files or does not file . . . can have far reaching consequences for both the outcome of the interference and subsequent ex parte prosecution." Id. at 212. Consequently, the Federal Circuit has advised that a party's preliminary motions take into account its "long-range strategy with respect to . . . priority and patentability issues in the interference." Id. (alteration in original). Preliminary motions generally are filed to redefine the scope of a contested case, to change the benefit date accorded for the contested subject matter, or for judgment in the contested case. 37 C.F.R. § 41.121 (a)(1). "To be sufficient, a motion must provide a showing, supported with appropriate evidence, such that, if unrebutted, it would justify the relief sought. The burden of proof is on the movant." 37 C.F.R. § 41.208(b).

"If the examiner-in-chief's rulings on the preliminary motions do not terminate the interference," General Instrument, 995 F.2d at 212, the interference moves into the priority phase, wherein the Board receives testimony and evidence and decides the ultimate issue of priority of inventorship. A party dissatisfied with the Board's final decision may request reconsideration of that decision, or it may seek judicial review. With respect to the latter course of action, a party may proceed directly to the Federal Circuit for review based on the record before the Board, or it may proceed to a district court for a "hybrid appeal/trial de novo proceeding in which the PTO record is admitted on motion of either party, but it may be supplemented by further testimony." Id. at 212;

35 U.S.C. §§ 141-144, 146.  "District court review of an interference proceeding under section 146 is an equitable remedy of long standing." General Instrument, 995 F.2d at 214.  As a proceeding sounding in equity, "the district court may, in appropriate circumstances, exercise its discretion and admit testimony on issues even though they were not raised before the Board."  Id.  Generally, however, for an issue to qualify for evidentiary review in a § 146 proceeding, "more is required than passing reference to the subject during the course of the interference proceeding."  Id.

### B. Factual Background

HGS is the owner by assignment of the invention disclosed in U.S. Patent No. 6,872,568 ("the '568 patent").  The '568 patent, entitled "Death domain containing receptor 5 antibodies," issued March 29, 2005 to inventors Jian Ni ("Ni") et al..  (D.I. 1 at ¶ 10)  The '568 patent was filed on May 4, 2000 as a continuation-in-part of U.S. Patent Application No. 09/042,583, filed March 17, 1998, which claims priority to two provisional applications, U.S. Patent Application Nos. 06/040,846 and 60/054,021, filed March 17, 1997 and July 29, 1997, respectively.  Defendants are the owner of U.S. Patent Application No. 09/378,045 ("the '045 application), filed August 20, 1999 and entitled "Receptor that binds TRAIL."  (Id. at ¶ 11)

The Board declared the '240 interference between the '568 patent and the '045 application, with claims 1-6, 8-19, 21-32, 34-45 and 47-52 of the '568 patent being designated as corresponding to the count of the '240 interference.  (Id. at ¶ 13) Defendant Immunex was declared the Senior Party and was presumed to be the first to invent the subject matter of the count.  Both parties moved to be accorded earlier benefit dates based upon earlier-filed applications.  On or about July 26, 2007, the

Board issued its Decision on Motions which held, inter alia, that Immunex was entitled to the benefit of an application filed on February 13, 1997, whereas HGS was entitled to the benefit date of May 4, 2000, the date the application issuing as the '568 patent was filed. (D.I. 10, ex. C at 13-15, 54) In other words, the Board did not afford HGS the benefit of any of its earlier filed applications in the chain because HGS did not sufficiently connect the disclosure of the '568 patent, filed as a continuation-in-part application, to that of the applications preceding it. More specifically, in its July 26, 2007 decision, the Board explained that

> [i]t is not the job of the Board to pour through hundreds of pages of text and sheets of drawings to find disclosure alleged to be "at least the same disclosure as is found in the March 17 and July 29, 1997 priority applications." See United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("[j]udges are not like pigs hunting for truffles buried in briefs"). It is not the fact finder's burden to search through lengthy technology-intense documents for possible evidence which may support Ni's "at least the same reasons."

(Id., ex. C at 12) In more specific reference to the '583, '846 and '021 applications, the Board noted that Ni had

> simply argued that the '583 application contains "at least the same disclosure as found in" the '846 and '021 applications and, therefore, described and enabled embodiments within the scope of Count I. . . . The '583 application includes an abstract, sixty-seven pages of text (including sequences), thirty-four originally submitted claims and seven sheets of drawings.
>
> Ni has failed to provide any guidance as to where the '583 application provides disclosure corresponding to specific disclosures relied upon by Ni in either the '846 or '021 applications. Ni has not explained why "at least the same reasons" said to apply to the '846 and '021 applications are equally applicable to the '583 application. In other words, Ni has not addressed the disclosure of the '583 application in any meaningful way either substantively or procedurally. Ergo, we need not consider whether either the '846 or '021 provisional applications describes an enabled embodiment within the scope of

> Count 1.
>
> Based on the foregoing, Ni has not established that it is prima facie entitled to benefit for the purpose of priority of (i) the 17 March 1998 filing date of the '583 application, (ii) the 17 March 1997 filing date of the '846 application or (iii) the 29 July 1997 filing date of the '021 application.

(Id., ex. C at 14-15)

The interference was redeclared by the Board on August 24, 2007 with the newly accorded benefit dates. (Id., ex. D) On October 5, 2007, the date its priority case was due, HGS instead filed with the Board a paper entitled "Party Ni's Request for Adverse Judgment to Initiate Review under 35 U.S.C. § 146." (Id., ex. E) In its submission, HGS stated the following:

> In order to seek immediate review under 35 U.S.C. § 146 of the decisions rendered in this interference without proceeding with the scheduled priority phase, Ni requests adverse judgment under 37 C.F.R. § 41.127(b), since it is unlikely that Ni will prevail on priority during the scheduled priority phase in this proceeding due to the Board's earlier rulings. Ni concedes no other issue and preserves its rights regarding all issues.
>
> * * *
>
> With this request for adverse judgment, Ni does not concede the ultimate issue of priority. To the contrary, Ni provides the above concession to proceed more expeditiously to an action that will enable Ni to ultimately obtain judgment on priority and other issues in its favor (e.g., by the reviewing body and/or by the Board after the review of the earlier rulings).

(Id.)

In response to this paper, the Board issued a "Miscellaneous" order on October 16, 2006. (Id., ex. F) The Board stated therein that "it appears that HGS requests adverse judgment solely to seek an interlocutory review of the [B]oard's decision on

5

motions without having a decision on priority." The Board further explained:

> The purpose of an interference is to determine the first to invent between multiple parties claiming the same patentable invention at about the same time. While decisions on interlocutory motions may affect the outcome of a priority determination, or even render a decision on priority unnecessary, the principle purpose of an interference is to decide who was first inventor. In other words the "main event" of an interference is the priority determination.
>
> Since this interference has entered the priority phase, and HGS has stated that it does not concede priority, it is inappropriate to enter adverse judgment based upon HGS's request. . . . Accordingly, on or before October 30, 2007, HGS shall show cause why judgment on priority should not be entered against it for failing to present a priority case.

(Id.) HGS did not present a priority case. Instead, on October 26, 2007, HGS filed a response to the Board in which HGS stated the following:

> HGS notes that as a result of the Board's decisions on motions in the interference to date, HGS concedes the priority phase as defined in this interference, and accordingly the Board should enter judgment against HGS on priority. While HGS will initiate a review under 35 U.S.C. § 146 of the Board's decision on motions, if all of the Board's decisions are ultimately affirmed, the priority phase of this interference will not be briefed before the Board and the Board will not have to consider the issue of priority again.

(Id., ex. G) Additionally, HGS stated:

> HGS concedes that based on the Board's decisions on motions the Board will enter judgment adverse to HGS on priority. In its request for adverse judgment, HGS was merely noting that it reserves its rights concerning the decisions on motions and the priority issues that would result from any modification thereof.
>
> The priority issue that was subject to ongoing briefing here is different from the priority issues that would result if HGS's challenges to the decisions on motions succeed in the action under 35 U.S.C. § 146. For example, as a result of the decisions on motions, HGS is the junior party with a constructive reduction to practice date that follows Immunex's constructive reduction to practice date by more than three years . . . . If the decisions on motions are altered, HGS reserves its rights to prove priority in a differently defined priority contest.

6

(Id.)

On November 20, 2007, the Board issued a judgment on its order to show cause, noting that: (1) HGS's priority brief was due October 5, 2007 and was not received; (2) HGS was put under an order to show cause why judgment should not be entered against it; and (3) HGS responded and requested judgment on priority be entered against it. (Id., ex. G) The Board ordered that "judgment on priority as to the subject matter of Count 1 . . . is awarded against [HGS]," that HGS is not entitled to a patent on the claims corresponding to this count and that these claims be cancelled pursuant to 35 U.S.C. § 135(a). (Id.) The instant litigation was initiated on November 30, 2007. (D.I. 1)

### III. STANDARD OF REVIEW

Defendants bring their motion to dismiss under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When subject matter jurisdiction is challenged under Rule 12(b)(1), the party asserting subject matter jurisdiction bears the burden of proving its existence; the district court is to regard the pleadings as mere evidence and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. See Gould Electronics, Inc. v. U.S., 220 F.3d 169, 176-77 (3d Cir. 2000) (holding that the district court did not err by considering matters outside the pleadings in resolving a subject matter jurisdiction challenge); see also Petruska v. Gannon University, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (stating that when considering a factual attack to subject matter jurisdiction, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case").

In considering a motion to dismiss under Rule 12(b)(6), the defendant/movant bears the burden of showing that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The court must accept all factual allegations in the complaint as true and take them in the light most favorable to plaintiff. See Erickson v. Pardus, --- U.S. ----, 127 S. Ct. 2197, 2200 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). Nevertheless, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1964 (2007) (citation omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Id. at 1965 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted).

## IV. DISCUSSION

### A. Applicable Statutes

The Board may take up motions for decisions at its discretion, and "may take such other action appropriate to secure the just, speedy, and inexpensive determination of the proceeding." 37 C.F.R. § 41.125(a). A rehearing may be requested on a decision on motions within 14 days of the Board's decision; a panel may be requested

for the review.[1]  37 C.F.R. § 41.125(c).

A decision on motions without a judgment constitutes an interlocutory decision that is "not final for the purposes of judicial review." 37 C.F.R. § 41.125(b). Only an adverse judgment against a claim may constitute a final action sufficient for the Board to permanently dismiss it. 37 C.F.R. § 41.127(a)(2). "A judgment disposes of all issues that were, or by motion could have properly been, raised and decided. A losing party who could have properly moved for relief on an issue, but did not so move, **may not take action in the Office** after the judgment that is inconsistent with that party's failure to move." 37 C.F.R. § 41.127(a)(1) (emphasis added). This concept is called interference estoppel.

Section 41.127(b), at the heart of the present dispute, states as follows:

> (b) Request for adverse judgment. A party may at any time in the proceeding request judgment against itself. Actions construed to be a request for adverse judgment include:
>
> * * *
>
> (3) Concession of priority or unpatentability of the contested subject matter[.]

37 C.F.R. § 41.127(b)(3). Section 146[2] provides in relevant part that "[a]ny party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences on the interference, may have remedy by civil action[.]"

### B. The Parties' Arguments

Defendants assert that the court lacks subject matter jurisdiction over the present

---

[1] No such rehearing was requested by HGS in this case.

[2] 35 U.S.C. § 146.

9

action because HGS, through its request for adverse judgment, has conceded priority, rendering the subject matter of this appeal moot. (D.I. 9 at 7-11) Additionally, defendants assert that HGS has failed to state a claim upon which relief may be granted because HGS "cannot request adverse judgment on priority, as it did during the '240 interference, and then state that it is dissatisfied [for purposes of 35 U.S.C. § 146] when such relief is granted." (Id. at 14) Defendants challenge HGS's ability to use § 146 to achieve what they deem an interlocutory review of a non-final Board decision, where HGS elected not to proceed with the priority phase.

HGS argues that it conceded priority only under the decisions made by the Board; not under all circumstances ("the ultimate issue of priority").[3] (D.I. 20 at 12) HGS notes that § 146 confers a broad appellate right and analogizes the present appeal to the situation where a party to federal patent litigation concedes the issue of infringement under the court's claim construction in order to appeal the claim construction decision to the Federal Circuit. (Id. at 10-11) In such situations, the concession of infringement allows the district court to enter a final appealable order, but does not strip the conceding party of its opportunity to obtain review of the court's rulings or to re-litigate infringement under a different claim construction. According to HGS, forcing a party to proceed through the priority phase in an interference where it has no chance to prevail "defies common sense" and, ultimately, does not further judicial economy. (Id.)

---

[3] "[J]ust as in any other appeal, if the Board's decisions on substantive motions are reversed, and the priority phase altered, the Board's judgment on priority would be vacated for further deliberations on a new priority situation (e.g., where HGS is the senior party and Immunex is the junior party.")". (D.I. 20 at 17)

10

**C. Analysis**

It is the burden of HGS, as plaintiff, to establish subject matter jurisdiction.[4] In the context of a premature[5] termination of an interference, plaintiff must demonstrate that the entry of a "judgment" pursuant to 37 C.F.R. § 41.127(b)(3) sufficiently confers jurisdiction pursuant to § 146.

The court notes that the plain language of the relevant statutes is broad. A party to an interference is allowed to request judgment against itself, conceding priority or unpatentability of the contested subject matter. 37 C.F.R. § 41.127(b)(3). Section 146 provides that any party to an interference dissatisfied with the decision of the Board may have remedy by civil action. As far as the court can determine, there is no case law commenting directly on whether a party may concede priority based on the Board's decision on preliminary motions, and then appeal what in essence is its concession to a district court, where the record before the Board can be expanded.

The case with the most helpful analysis is Enzo Therapeutics, Inc. v. Yeda Research and Development Co., 467 F. Supp. 2d 579 (E.D. Va. 2006). Unlike the circumstances at bar, the interference parties in Enzo did not contest the district court's jurisdiction to consider the merits of the appeal under § 146 following Enzo's request for adverse judgment. In that case, Enzo claimed a priority date of April 17, 1981 based on

---

[4]Because there are no disputed facts as to what occurred in the interference, as opposed to the legal consequences that flow therefrom, the different standards of review applicable to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) are not material to the court's determination of jurisdiction.

[5]Premature in the sense that a party, rather than the Board, initiated the termination.

the filing date of its "'215 application," which application had been deemed abandoned by the PTO in 1984. In the interference proceeding, Enzo filed a "Motion for Benefit" with the Board requesting the benefit of the April 17, 1981 filing date, and included with said motion an additional petition for revival of the '215 application based on unintentional abandonment. The Board denied the "Motion for Benefit" on the merits, and declined to review the "Petition to Revive" based on lack of jurisdiction.[6] The Board denied the Motion for Benefit and subsequent requests for reconsideration. "Having exhausted the administrative remedies available to it," Enzo then filed a request for adverse judgment "solely on the basis of the unpatentability of its claims in light of the Board's denial of the Motion for Benefit," indicating it would seek review of the Board's decision. Id. at 583-84.

At the district court, motions to dismiss were filed which only concerned whether the Director of the PTO could be properly named as a defendant under the statute. The district court ultimately concluded that "a dissatisfied party to an interference may not initiate a lawsuit naming the Director as a defendant, pursuant to 35 U.S.C. § 146." Id. at 591. In describing the scope of review of the extant § 146 proceeding between the interference parties, Enzo and Yeda, the district court declared that it would "consider all questions of priority, as well as those that are ancillary thereto, including the Petition to Revive [the "abandoned" application], in reviewing the Board's interference decision." Id. at 594.[7]

---

[6]According to the Board, jurisdiction to decide the Petition to Revive was vested in the Office of the Deputy Commissioner for Patent Examination Policy, a different entity within the PTO. Id. at 583.

[7]Although Enzo phrased its request for adverse judgment in terms of patentability, clearly the patentability issue was related to priority, in that the Board had

Despite this assertion of broad jurisdiction, the court ultimately defined the scope of review narrowly and remanded the matter to the Board with instructions that the Board

> provide[ ] Enzo with an opportunity to amend [its] Petition to Revive and submit additional evidence concerning the facts and circumstances of the allegedly "unintentional delay" resulting in abandonment of the '215 application. Principles of equity and due process demand such an opportunity.

Enzo Therapeutics, Inc. v. Yeda Research and Development Co., 477 F. Supp. 2d 699, 718 (E.D. Va. 2007). In its analysis, the district court delineated the scope of its jurisdiction in terms of exhaustion of administrative remedies:

> According to the Federal Circuit, "the public interest in ensuring that only those patents that claim patentable subject matter are issued and maintained is best served when a district court considering review of a decision of the Board resolves all issues of priority and patentability that have been raised and fully developed." By first allowing the Board to make factual and legal findings, the court can take advantage of the Board's specialized knowledge of the complex patent issues in dispute. Remanding to the Board any unaddressed issues in highly technical cases such as the case at bar "would be consistent with the modern scheme of administrative law in which specialized agencies are responsible for initial decisions of complex factual and legal matters but are accountable on review to Article III judges."

Id. at 710 (citations omitted).

In summary, then, although the district court in Enzo allowed an appeal under § 146 to proceed following entry of an adverse judgment, it is clear from the record that the interference defendant (Yeda) had not challenged jurisdiction in the first instance and that Enzo had exhausted its administrative remedies in the second instance, so as

---

declined to consider Enzo's petition to revive an unintentionally abandoned application, which application was necessary to demonstrate priority of invention.

to focus the issues on appeal.

In considering HGS' appeal and the balance of equities in light of the analysis in Enzo,[8] the court concludes that a concession of priority before the Board does not, as a matter of law, moot an appeal pursuant to § 146. The court notes that an interference is such a unique administrative proceeding that a general discussion of mootness provides little fodder for analysis. Moreover, the identified case law that relates to interference estoppel is limited in its application to further administrative proceedings, as opposed to judicial review[9] and, therefore, does not constitute compelling evidence about the scope of review under § 146. In sum, in the absence of persuasive authority that limits the right to appeal under § 146, the court will examine jurisdiction in light of

---

[8] A case relied on by HGS.

[9] See 39 C.F.R. § 41.127 Judgment

(a) **Effect within Office** - -

(1) Estoppel. A judgment disposes of all issues that were, or by motion could have properly been, raised and decided. A losing party who could have properly moved for relief on an issue, but did not so move, **may not take action in the Office** after the judgment that is inconsistent with that party's failure to move. . . ."

(emphasis added) The cases relied on by defendants are not to the contrary. See, e.g., Shustack v. Szum, 78 U.S.P.Q.2d 1566 (B.P.A.I. June 14, 2005) ("The underlined portion of Szum's concession of priority has been accorded no weight and will be accorded no weight in future prosecution by Szum before the USPTO."); see also Andrx Labs, LLC Junior Party v. Astrazeneca AB Senior Party, 2007 WL 2020927 (B.P.A.I. July 11, 2007) (holding that a concession "reserv[ing] the right to raise all challenges and defenses in any other proceeding against Astra's involved patent application" did not avoid interference estoppel) (citing Shustack); In re Mason, 94 F.2d 220 (C.C.P.A. 1938) (although in dicta a concession of priority was "construed [as] a waiver of the right of appeal," there is no indication whether the Court of Customs and Patent Appeals was referring to appellate rights at the Board level or to a reviewing court). None of these references constitute compelling authorities.

the facts of record.

In this regard, it is clear that the fundamental purpose of interference proceedings is to give the Board a full and fair opportunity to determine priority.  It is evident from the record that HGS presented to the Board little more than conclusory arguments.  Indeed, HGS failed to provide even enough information to allow the Board to specifically define the scope of the dispute.  If the court were to allow HGS' § 146 appeal to go forward on this record, it would constitute an effective usurpation of the Board's original jurisdiction to determine priority.  Moreover, HGS' failure to adequately develop the record leaves too much room for mischief in a § 146 appeal, where supplemental discovery can be taken and new evidence proffered to the court.[10]  Although the court is mindful that there is room for debate on these issues and that HGS may not have any administrative recourse if the appeal is dismissed, nevertheless, the court concludes that HGS has not carried its burden to prove that the court has subject matter jurisdiction under 35 U.S.C. § 146.

## IV. CONCLUSION

For the aforementioned reasons, defendants' motion to dismiss (D.I. 8) is granted.  An appropriate order shall issue.

---

[10]Such concerns may be minimized when the appeal is to the Federal Circuit on the PTO record pursuant to 35 U.S.C. §§ 141-144.  See, e.g., Rasmusson et al. v. Smithkline Beecham Corporation, Interference No. 104,646, Paper 139 (October 8, 2003) (D.I. 20, ex. 1) (the Board's decision, ultimately reviewed by the Federal Circuit, Rasmusson v. Smithkline Beecham Corp., 413 F.3d 1318 (Fed. Cir. 2005), was based on a party's request for entry of an adverse judgment).